UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **MEMORANDUM & ORDER** |
| | 06 Cr. 911 (LBS) |
| v. | |
| ALTON DAVIS, | |
| DERRILYN NEEDHAM, | |
| RONALD KNIBBS, | |
| RODERICK GUNN, | |
| Defendants. | |

SAND, J.:

On March 11, 2009, this Court issued an order denying, inter alia, Defendant Roderick Gunn's motions for:  (1) dismissal of Counts One and Eight of the Indictment on double jeopardy grounds, (2) a Bill of Particulars, (3) immediate production of *Brady* and *Giglio* materials, (4) production of grand jury minutes, and (5) suppression of statements made to law enforcement officers.[1]  Defense counsel has submitted a motion for reconsideration of the double jeopardy motion and Gunn has submitted a pro se motion for reconsideration of the other motions listed above.  Gunn has also submitted a new motion requesting a pretrial evidentiary hearing to determine whether statements made by his three co-defendants are admissible under the co-conspirator exception to the hearsay rule, Fed. R. Evid. 801(d)(2)(E).

For the foregoing reasons, we deny the motions for reconsideration and for an evidentiary hearing on the double jeopardy issue.  We also deny Gunn's pro se reconsideration motion on the discovery matters and his request for a pretrial evidentiary hearing on the admissibility of co-

---

[1] The factual context of this case was discussed in the Court's March 2009 Order and will not be repeated herein.

conspirator testimony.  We grant Gunn's request for a suppression hearing relating to statements made at proffer sessions in the absence of counsel.

## I.      Standard for Motions for Reconsideration

Although neither the Federal Rules of Criminal Procedure nor the local criminal rules provides a standard for deciding reconsideration motions in criminal cases, courts in this district have applied the standard of Local Civil Rule 6.3.  *United States v. Leaver*, 358 F. Supp. 2d 273, 277 (S.D.N.Y. 2005).  Under that strict standard, reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp.*, 70 F.3d 255, 256 (2d Cir. 1995).  A motion for reconsideration is not an opportunity to relitigate issues already decided by the Court, and the moving party may not use the motion to advance new facts, issues, or arguments not previously presented to the Court.  *Id.* at 257.

## II.     Double Jeopardy Motion

Gunn's reconsideration motion on the double jeopardy defense raises no legal or factual matters that the Court overlooked.  The motion does not contest that the Court applied the correct test, as set forth in *United States v. Korfant*, 771 F.2d 660 (2d Cir. 1992), to determine whether the current charged conspiracy is the same conspiracy to which Gunn previously pled guilty.  Gunn argues that the Court erred in its application of the *Korfant* factors for two reasons: (1) the Court erroneously identified salient dissimilarities—that is, the fact that not all of the robberies charged in *United States v. Robles*, (04 Cr. 1036 (GEL)), involved police impersonations and that the robbery-homicides charged in this Indictment were byproducts and not objects of the conspiracy; and (2) the Court erred in finding that the robberies were not

interdependent, given that one of the robbery crews in *Robles* was offered the Elmont job before

Davis' crew, on trial in this case, took the job.

      The Court previously considered these factual issues in denying the double jeopardy

motion.  Upon re-examination, we continue to find the arguments unpersuasive.  With respect to

Gunn's first argument, the Court found that the robberies charged in the Information and

Indictment had distinctive modes of operation—most (though not all) of the robberies charged in

the Information involved entry through the use of police impersonation, while neither of the

robberies in this case involved police impersonation.  Gunn's own pre-plea statements confirmed

that at least five out of six robberies charged in the Information involved police impersonation

(Pre-Plea Statements, Ex. to Gov't Br. Opp'n Reconsideration.)  In contrast, neither the

Wickham nor the Elmont robberies involved police impersonations; rather, Davis used brute

force in threatening and killing victims at both Wickham and Elmont.  Additionally, Gunn's

contention that the Court erroneously characterized the murders as a distinguishing feature of the

robberies is without merit.  Regardless of whether the murders were the premeditated object of

the Wickham and Elmont robberies, the fact that murders were committed by Davis establishes

two salient differences between the conspiracies charged in Information and the Indictment:

first, the particular modes employed to further the two conspiracies were distinct, and second,

Davis was the critical non-overlapping participant.  *See United States v. Macchia*, 35 F.3d 662,

670 (2d Cir. 1994).

      With respect to Gunn's second argument on interdependence, we find his factual

distinction to be inapposite.  Gunn attempts to impermissibly relitigate the question of whether

Needham's similar role in both conspiracies demonstrated interdependence.  As discussed above

and more extensively in our previous Order, the Court finds Davis to be the relevant co-

conspirator in the double jeopardy analysis.  Although Needham may have passed information to the robbery crews in both cases, Davis' role as a co-conspirator resulted in the murders charged in the Indictment.  Regardless of whether the availability of the Wickham and Elmont robberies rested on the first refusal of Needham's preferred Puerto Rican robbery crew, the success of the robberies charged in the Information did not have a determinative effect on the outcome of the robberies attempted by Davis' crew.

Gunn does not challenge the Court's analysis with respect to the distinct time frames, the absence of prosecutorial misconduct, and Gunn's attempt to shield himself from any liability by bootstrapping his previous plea agreement (which he violated by withholding critical information) to the larger conspiracy later charged in *Robles*.  Rather than challenging the Court's analysis of the array of factors set forth in *Korfant*, 771 F.2d at 662, Gunn's brief isolates a favorable set of facts that, if viewed alone, better support his claim of double jeopardy.  We find the two conspiracies to be distinct when the facts are viewed in the aggregate and evaluated "with the lively awareness that no dominant factor or single touchstone" controls the analysis. *United States v. Macchia*, 35 F.3d 662, 668 (2d Cir. 1994).  Thus, the Court finds the factual issues raised in Gunn's brief unpersuasive and denies the motion for reconsideration.

Gunn's reconsideration motion also seeks a fact-finding hearing to establish an appropriate record to test the double jeopardy claim.  It is undisputed that after Gunn raises a non-frivolous claim of double jeopardy, the Government has the burden of proving that the conspiracies do not constitute the same offense.  *United States v. Estrada*, 320 F.3d 173, 181 (2d Cir. 2003).  In its previous Order, the Court found that the Government had satisfied its burden. Gunn now relies on the Third Circuit's reasoning in *United States v. Inmon* for his request that the Court hold a pretrial proceeding "in which an appropriate record may be made to test a

double jeopardy claim." 568 F.2d 326 (3d Cir. 1977). Thorough review of the detailed record submitted with the original double jeopardy motion satisfied the Court that the Government had properly charged two distinct conspiracies in the Information and Indictment. We decline to hold an evidentiary hearing based on Defendant's speculation that the Government may possess other evidence that would materially alter our decision on the double jeopardy issue.

Gunn's reliance on *Inmon*, which considered the burden of proof in a pretrial claim of former jeopardy, does not alter our conclusion.[2] The Court finds *Inmon* inapplicable for two reasons. First, Gunn has not referenced any factual disputes that, if further explored through a pretrial hearing, would materially influence the Court's decision.[3] He merely contends that the Government possesses "undisclosed evidence that undermines the court's conclusion of separate conspiracies." (Double Jeopardy Reconsideration Br. at 5.) This generalized assertion does not provide the Court with guidance as to what evidence Gunn hopes to uncover at a pretrial hearing.

Second, the court in *Inmon* had only the two charging documents on which to base its review. In contrast, this Court has been presented with and reviewed a detailed record that includes not only the Information and Indictment but also Gunn's plea documents, notes from Gunn's pre- and post-plea sessions, the transcript from the *United States v. Robles* case, 04 Cr. 1036 (GEL), and the transcript of the plea hearing before Judge Pauley, 03 Cr. 1277 (WHP). Moreover, the charges in the Information and Indictment are not so complex or far-reaching as to prevent the Court from making a double jeopardy determination on the record before us. *See United States v. Stricklin*, 591 F.2d 1112, 1117 (5th Cir. 1979) (reviewing court may decide

---

[2] *Inmon* was decided after the Supreme Court's ruling in *Abney v. United States*, 431 U.S. 651 (1977), which held that pretrial orders rejecting claims of former jeopardy are final decisions that are immediately appealable. In *Inmon*, the Third Circuit explored the procedural consequences of *Abney* and found that because the government has access to the proof it plans to submit in a second trial, the government should bear the burden of proving by a preponderance of the evidence that there are two separate offenses before the defendant can be subjected to trial. 568 F.2d at 332.
[3] Furthermore, pretrial evaluation of a double jeopardy claim "in no way expands or alters" the discovery available to defendants. *United States v. Stricklin*, 591 F.2d 1112, 1118 (5th Cir. 1979).

double jeopardy issue "where the indictments and the record from the previous trial are sufficiently explicit to provide for clear-cut determination of the double jeopardy claim").  Nor does the present case necessitate clarification of ambiguities resulting from a vague indictment, since Counts One and Eight of the Indictment clearly set forth the time period of the conspiracy as well as the co-conspirators and overt acts charged by the Government.  *See id.* at 1118 (reasoning that because "the government controls the particularity of an indictment, it should bear the responsibility for any ambiguities resulting in its vagueness").  The Court had sufficient information to evaluate the claim of double jeopardy and finds that there is no need to hold an evidentiary hearing on the matter.  *Cf. United States v. Olmeda*, 461 F.3d 271, 282 (2d Cir. 2006) (evaluating double jeopardy claim based on the language of the two indictments and record of the plea proceedings in the first case).  Gunn's motion for reconsideration and for an evidentiary hearing on the double jeopardy claim is denied.

### III.   Discovery Motions

Gunn also seeks reconsideration of his motion for a bill of particulars, immediate disclosure of *Brady* materials, and disclosure of grand jury minutes.

#### A. Bill of Particulars

With respect to the bill of particulars, Gunn seeks disclosures regarding the effect on commerce from the Wickham robbery charged in Count Three of the Indictment.  Count Three of the Indictment tracks the relevant statutory language and alleges that on or about January 21, 2003, Defendants "attempt[ed] to commit robbery, as that term is defined in [the Hobbs Act], and would thereby have obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce."  The Second Circuit has held that this level of specificity "meets [the] basic pleading requirements by accurately stating the elements of the

offense charged and the approximate time and place of the robbery that defendants allegedly conspired to commit, thereby providing sufficient detail to allow defendants to prepare a defense." *United States v. Alfonso*, 143 F.3d 772, 776 (1998). Furthermore, the Government has already disclosed that it intends to prove at trial that the targets of the robbery were engaged in interstate drug trafficking, including the purchase of marijuana from California for resale to customers in Manhattan and the Bronx. (Tr. Oral Argument on Jan. 12, 2009, at 26; Gov't Br. in Response to Davis & Gunn Mot. at 9.) Gunn is not entitled to greater detail,[4] and we reiterate that a bill of particulars cannot be used as a discovery tool or as a means to preview the theory of the Government's case. *See United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001); *United States v. Taylor*, 707 F. Supp. 696, 699 (S.D.N.Y. 1989). The reconsideration motion relating to the bill of particulars is denied.

### B. *Brady* Materials

Gunn also requests that we reconsider our denial of his motion for immediate disclosure of *Brady* materials. Specifically, Gunn requests police reports, notes of statements, and ballistic reports from the Wickham robbery, materials which Gunn "believe[s] to be in the Government's possession." (Gunn Pro Se Reconsideration Br. at 2.) The Government has stated that it is unaware of any exculpatory evidence in its possession. The Court cannot compel production of materials that the Government does not possess. We are satisfied by the Government's good-faith representation that to the extent that Defendants have identified specific issues that they

---

[4] Gunn cites *United States v. Peterson*, 236 F.3d 848 (7th Cir. 2001) to support his request for a bill of particulars stating the alleged effect on interstate commerce, the nature of the effect, and the specific "articles and commodities" whose movement in commerce were affected. (Gunn Pro Se Reconsideration Br. at 2.) *Peterson* is not controlling and, in any case, its analysis is inapplicable because *Peterson* addressed the sufficiency of proof at trial of the interstate commerce component of a Hobbs Act robbery, whereas this motion concerns the adequacy of the charging document. Additionally, the government in *Peterson* offered generalized assertions that marijuana was "normally" grown outside of Indiana, which the court found to be insufficient evidence. *Id.* at 855. In contrast, in this case the Government has stated that it intends to prove at trial that the drugs targeted by Defendants traveled through interstate commerce. More is not required at this stage of proceedings.

contend implicate *Brady* concerns, the Government will investigate those issues and will continue to comply with its disclosure obligations.  (Gov't Br. in Response to Davis & Gunn Mot. at 41.)  Thus, we deny this request for reconsideration.

### C.  Grand Jury Materials

Finally, Gunn requests reconsideration of his motion for disclosure of grand jury materials.  Gunn argues that the Government knowingly presented false evidence to the grand jury when the Government charged Gunn in Count Two of the Indictment for attempted robbery of an individual at the Elmont location on October 31, 2002, but later "admitted" in a brief that that Gunn was not present at the location on that date.  (Gunn Pro Se Reconsideration Br. at 3.) It appears that Gunn misunderstands the nature of the charge.  Regardless of whether a defendant is present at the scene of a robbery, he may still be charged for his role in that robbery under various theories—for example, as an aider and abettor or on a *Pinkerton* theory of liability for the acts of his co-conspirators.  *Pinkerton v. United States*, 328 U.S. 640 (1946).  Thus, the Government's statement that Gunn was not present on the day of the robbery does not amount to proof that the Government knowingly presented false testimony or engaged in any other misconduct in the grand jury proceedings.[5]

Gunn also seeks disclosure of grand jury records, pursuant to Fed. R. Crim. P. 6(b)(1), to ensure that the jurors were legally qualified.  However, Gunn does not offer any factual allegations or any evidence of irregularity in the composition or proceedings of the grand jury. Gunn has made only a generalized assertion of his right to a legally-constituted jury, which is insufficient to warrant disclosure of grand jury related information.  *See United States v. Hansel*, 70 F.3d 6, 8 (2d Cir. 1995), *United States v. Jailall*, No. 00 Cr. 69, 2000 U.S. Dist. LEXIS

---

[5] The Court also notes that a grand jury's source of information is widely drawn and "an indictment returned by a legally constituted grand jury, if valid on its face, is enough to call for trial on the merits."  *United States v. Diaz*, 675 F. Supp. 1382, at 1389 (E.D.N.Y. 1987) (citing *United States v. Calandra*, 414 U.S. 338, 344–45 (1974)).

13733, at *5–*6 (S.D.N.Y. Sept. 22, 2000).  We adhere to our prior ruling that Gunn's

speculations of Government misconduct do not amount to particularized proof of irregularities

sufficient to dispel the "presumption of regularity" afforded to grand jury proceedings. *United*

*States v. Torres*, 901 F.2d 205, 232 (2d Cir. 1990); *United States v. Mechanik*, 475 U.S. 66, 75

(1986).  Thus, we deny Gunn's reconsideration motion for inspection of grand jury materials.[6]

## IV.    Co-Conspirator Testimony

Gunn's pro se letter motion dated March 17, 2009 requests a pretrial evidentiary hearing

to determine the admissibility of statements made by his alleged co-conspirators.  Rule

801(d)(2)(E) of the Federal Rules of Evidence provides the following:  "A statement is not

hearsay if . . . the statement is offered against a party and is . . . a statement by a coconspirator of

a party during the course and in furtherance of the conspiracy."  In order to admit a co-

conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), the

Court must be satisfied that there is "evidence [of] a conspiracy involving the declarant and the

nonoffering party, and that the statement was made during the course and in furtherance of the

conspiracy." *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  When the preliminary facts

relevant to the hearsay exception are disputed, the party offering the evidence must prove its

admissibility by a preponderance of the evidence.  *Id.* at 176.

A pretrial hearing on this issue is not required, nor is it customarily conducted in this

Circuit.  *See, e.g., United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969) ("the

practicalities of a conspiracy trial may require that hearsay be admitted "subject to connection").

As the Indictment charges Gunn's participation in a conspiracy, an "admissibility ruling during

---

[6] Gunn argues in his reconsideration brief that he has no means by which to challenge the selection process.  The Court's March 2009 opinion ordered the production of the District's Master Plan for jury selection so that Gunn may challenge compliance with jury selection procedure.  This production satisfies Gunn's statutory right.  (Mar. 11, 2009 Order at 27–28.)

trial is preferable to staging a mini-trial that would significantly prolong the proceedings and afford the defendants a complete preview of the government's evidence." *United States v. Solomonyan*, 452 F. Supp. 2d 334, 356 (2006).  Gunn has provided no reason why we should deviate from this Circuit's customary practice of resolving the admissibility issue at trial.  Thus, the request for a pretrial hearing on the admissibility of Rule 801(d)(2)(E) statements is denied.

## V.      Suppression Motion

Gunn's pro se motion does not seek reconsideration of the Court's denial of his suppression motion relating to two statements made in 2003.  (Mar. 11, 2009 Order at 20–22.) Rather, Gunn seeks suppression of other statements that he made in debriefing sessions conducted after his guilty plea pursuant to a cooperation agreement.  He contends that during debriefing sessions in October 2004, "the government obtained incriminating statements" without a waiver of right to counsel at each session.  Gunn alleges that at these post-plea proffer sessions where his counsel was not present, he disclosed for the first time that he had participated in additional robberies besides those to which he pled in the Information, including the Wickham robbery.  We find that a suppression hearing is necessary to ascertain whether Gunn made a knowing and voluntary waiver of his right to counsel during these debriefing sessions conducted in October 2004.

The Second Circuit has held that cooperating witnesses are entitled to have counsel present at debriefings unless they explicitly waive such assistance.  *United States v. Ming He*, No. 95-1331, 1996 U.S. App. LEXIS 28744, at *30 (2d Cir. Sept. 3, 1996).  In *Ming*, the court exercised its supervisory authority in disallowing the then-standard practice in the U.S. Attorney's Office for the Eastern District of New York of conducting debriefing interviews outside the presence of counsel.  *Id.* at *4.  Although the Second Circuit did not reach the

constitutional question, the court drew on Sixth Amendment case law addressing the importance of counsel in advising cooperating witnesses during debriefing sessions. *Id.* at *17–*20. Although a defendant can waive the assistance of counsel, a waiver finding requires "[m]ore than a failure to request counsel and subsequent conversations with the prosecutor pursuant to a cooperation agreement." *Id.* at *31, *34. In other words, a waiver cannot be presumed from silence and the record must show that the defendant comprehended his rights and made the waiver knowingly and intelligently. *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938).

Gunn contends that he did not make a knowing and intelligent waiver of his right to counsel for his debriefing sessions and that nobody explained to him what rights he was waiving in signing the proffer agreement. (Gunn Suppression Br. at 17–18.) He further contends the information he provided to the Government during these proffer sessions formed the basis for some of the charges against him in the Indictment. The Government acknowledges that counsel was not present during some debriefing sessions. However, they assert that nothing in the initial debriefing sessions suggested that Gunn's cooperation would be put in jeopardy because there was no indication that Gunn had withheld information from the Government about his participation in robberies beyond the ones to which he pled guilty in the Information. When, in a later session, Gunn disclosed for the first time his personal involvement in the Wickham robbery, the Government promptly terminated the meeting and notified Gunn's counsel. Gunn's counsel was present for subsequent proffer sessions. (Gov't Br. at 26–27.)

Although Gunn's cooperation agreement waives his right to assert Constitutional rights to suppress statements made subsequent to the signing of the agreement, it does not explicitly waive his right to counsel. (Gunn Cooperation Agreement at 6, Ex. B to Gov't Br. in Response to Gunn's Pro Se Motions.) *See Ming He*, 1996 U.S. App. LEXIS 28744, at *31 (suggesting that

general waiver of rights in cooperation agreement is not sufficient to establish an explicit waiver of right to counsel). Given the incomplete nature of the record on this issue, the Court will hold a suppression hearing to determine whether Gunn made a knowing and voluntary waiver of his right to counsel during the debriefing sessions conducted in October 2004.

## VI.   Conclusion

Based on the foregoing, we deny Gunn's request for reconsideration and for a hearing on the double jeopardy claim. With respect to Gunn's request discovery requests, we find that he does not raise any controlling case law or facts that we did not consider in our prior Order and deny the motion for reconsideration on these matters. We also deny Gunn's motion for an evidentiary hearing on the admissibility of co-conspirator statements. Gunn's request for a suppression hearing on statements made in the absence of counsel during the October 2004 proffer sessions is granted, and the parties are to contact the Court forthwith to schedule a suppression hearing on this matter.

SO ORDERED.

Dated: April 21, 2009
New York, NY

_____
U.S.D.J.