IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RODERICK GUNN, | ) No. 06 CR 911-WHP |
| Petitioner, | ) |
| | ) No. Civ._____ |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |
| | ) |

MOTION FOR LEAVE OF THE COURT TO FILE A SUPPLEMENTAL PLEADING PURSUANT TO RULE 15(a) AND (d) OF FED. R. CIV. P. AND JOHNSON V. UNITED STATES INTERVENING CHANGES IN LAW RELEVANT TO THE UNDERLYING PROCEEDING

Petititioner Roderick Gunn request leave to file a Supplement to his initial § 2255 Motion in light of the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015), pursuant to Fed.R.Civ.P. 15. This Supplemental Johnson claim relates back to Gunn's claim that count seven's conviction is invalid where it rested on an invalid theory of liability and a general verdict. The Johnson ruling invalidates "conspiracy to commit an attempted Hobbs Act robbery" as a "crime of violence" within the meaning of §924(c)(3)(B). This supplemental pleading is not done in bad faith, and creates no undue prejudice to Respondent.

1.

I. JURISDICTION UNDER RULE 15 OF FED. R. CIV. P.

Federal Rules of Civil Procedure 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Weeks v. New York State (Div. of Parole), 273 F.3d 76, 88 (2d Cir 2001). Recognizing that the instant pleading comes more than one year after the finalization of petitioner's conviction, petitioner assert that the claim raised in this supplement is (1) timely under 2255(f)(1) because it relates back to claims raised in his original § 2255 motion, and (2) based on intervening changes in controlling law, rendering it timely under 28 U.S.C. § 2255(f)(3).

II. COUNTS AND CLAIM SUBJECT TO THIS SUPPLEMENATL PLEADING

This supplemental pleading is limited to counts 6 and 7. Each of these offenses alleges the use of a firearm during the commission of a "crime of violence." The "crime of violence" alleged in each count was "conspiracy to commit a robbery affecting interstate commerce," and an "attempted robbery." Count 6 alleged, in relevant part, "defendants...did knowingly use and carry firearms, during and in relation to a crime of violence..., that is, conspiracy to commit a robbery affecting interstate commerce, as alleged in Count One, and an attempted robbery that would have affected interstate commerce, as alleged in Count Three, in violation of 18 U.S.C. § 924(c)(1).

2.

Count 7 alleged the use of a firearm resulting in death in violation of § 924(j)(1). It also alleged that the firearm use was in relation to a crime of violence...that is, conspiracy to commit a robbery affecting interstate commerce, as alleged in Count One, and an attempted robbery that would have affected interstate commerce, as alleged in Count Three. Each of the alleged counts allege conspiracy as one of the underlying "crime of violence."

Subsection 924(c)(3) defines a crime of violence for section 924(c) purposes. It defines the term "crime of violence" as a felony offense that:

> (A) has an element of the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

The conspiracy to commit Hobbs Act robbery and the attempted robbery underlies the § 924(c) and § 924(j) offenses Mr. Gunn was convicted of committing. The elements of conspiracy are: "(1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the

3

substantive crime." Thus, the essence of conspiracy is the agreement. An overt act in furtherance of the conspiracy is not necessary to prove the crime. However, to constitute a "crime of violence" a statute must have as an element the use, attempted use, or threatened use of force. See, i.e., U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Given these elements, conspiracy fails to qualify categorically as a "crime of violence" within the meaning of 18 U.S.C. § 924(c)(3)(A) as it does not have "as an element the use, attempted use, or threatened use of physical force." Simply put, conspiracy can never qualify under this clause. See e.g., United States v. White, 571 F.3d 365, 369 (4th Cir 2009); United States v. Fell, 511 F.3d 1035, 1037 (10th Cir 2007); United States v. Gore, 636 F.3d 728, 730 (5th Cir 2011); United States v. Chandler, 2015 U.S. App. LEXIS 17702 (9th Cir. Oct. 9, 2015)(order granting joint motion to remand for resentencing because prior state conviction for conspiracy to commit robbery was not a crime of violence under Johnson), following 135 S. Ct. 2926, 192 L. Ed 2d 959 (2015)(vacating and remanding, 743 F.3d 648 (9th Cir 2014); United States v. Gonzalez-Ruiz, 794 F.3d 832, 836 (7th Cir 2015)(dismissing government's cross-appeal after it concedes the crime of conspiracy to commit armed robbery is not a crime of violence in light of Johnson). See also, Chrzanoski v. Ashcroft, 327 F.3d 188, 194 (2d Cir 2003), in which the Second Circuit held that Connecticut third degree assault does not constitute a crime of violence justifying a sentencing enhancement because "there is a difference between the causation of an injury," which is all that the Connecticut statute required, "and an injury's causation by the use of

4

physical force"; <u>Dalton v. Ashcroft</u>, 257 F.3d 200, 207 (2d Cir 2001)("There are many crimes that involve a substantial risk of injury but do not involve the use of force).

Conspiracy to rob has been held to be a crime of violence under the second clause, § 924(c)(3)(B). See eg., <u>United States v. Mendez</u>, 992 F.2d 1488, 1491 (9th Cir 1993). Drawing its reasoning from the Second Circuit in <u>United States v. Chimurenga</u>, 760 F.2d 400, 404 (2d Cir 1985), the Ninth Circuit held, "[r]obbery under § 1951 'indisputably qualifies as a crime of violence' under the force clause though holding that conspiracy to commit Hobbs act robbery qualified under the residual clause."

As discussed next, the constitutionality of subsection 924(c)(3)(B) and Second Circuit's holding in Chimurenga is undermined by <u>Johnson</u>. Therefore, <u>Johnson</u> dictates that the 924(c) and 924(j) counts of conviction Mr. Gunn suffered do not state federal offenses, where the underlying "crime of violence" being a conspiracy to commit robbery.

III.  JOHNSON v. UNITED STATES

The Fifth Amendment's Due Process Clause's "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforecement." <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983). The Court in <u>Kolender</u> recognized that "the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine -- the requirement

5

that a legislature establish minimal guidelines to govern law enforcement.'" [Smith v. Goguen, 415 U.S. 566 (1974)]. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." Kolender, 461 U.S. at 358, quoting Smith, 415 U.S. at 575.

The Supreme Court in Johnson v. United States __ U.S. __, 135 S. Ct 2551 (2015), struck down the Armed Career Criminal Act's (ACCA) residual clause (18 U.S.C. § 924(e)(2)(B)(ii) as unconstitutionally vague. 135 S. Ct. at 2557. The language in ACCA that Johnson held unconstitutional is similar to section 924(c)(3)(B)'s language. The ACCA provision defined a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year...that...involves conduct that presents a serious potential risk of physical injury to another." Importantly, both the provision at issue in Gunn's case, § 924(c)(3)(B) and the ACCA's residual clause, § 924(e)(2)(B)(ii), are subject to the same mode of analysis: a categorial approach which demands that courts "look to the elements and nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime." Leocal v. Ascroft, 543 U.S. 1, 7 (2004). See also, Taylor v. United States, 495 U.S. 575, 601-02 (1990).

The Supreme Court in Johnson began its analysis by explaining that, under Taylor, ACCA requires the categorial approach to determine whether a particular statute qualifies as a violent felony. 135 S. Ct at 2557. Courts must assess whether a crime qualifies as a violent felony "in terms of how

6

the law defines the offense and not in terms of how an individual might have committed it on a particular occasion." Id. (quoting Begay v. United States, 553 U.S. 137, 141 (2008). Johnson further clarified that the residual clause "requires a court to picture the kind of conduct that the crime involves 'in the ordinary case,' and to judge whether that abstraction presents a serious risk of potential injury." Id. (emphasis added), quoting James v. United States, 550 U.S. 192, 208 (2007). The Johnson court held that it was this ordinary case analysis that created one aspect of the statute's unconstitutional vagueness: 'We are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." Johnson, 135 S. Ct. at 2557. But the risk standard also contributed to the vagueness defect. The court explained, "Two features of the residual clause conspire to make it unconstitutionally vague." The first problem rests with the "grave uncertainty about how to estimate the risk posed by a crime. [The residual clause] ties this judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." Id. Secondly, "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony. It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction." Id. Recognizing that the Court had tried in five different cases to give consistent meaning to the residual clause, recognizing that the clause created significant

7

circuit conflicts, the Johnson Court concluded there was no consistent meaning to be had. "Nine years' experience trying to derive meaning from the residual clause convinces us that we have embarked upon a failed enterprise." Id. at 2559.

IV. APPLYING JOHNSON TO COUNTS 6 AND 7 COMPELS DISMISSAL

   A. This Court has the Power and Authority to Dismiss these Courts at this Stage of the Case.

This Court has the power and authority to dismiss these counts at this stage of the case under 28 U.S.C. § 2255. As this supplemental pleading is premised on the 2015 Supreme Court's decision in Johnson, 135 S. Ct. 2551, the claim could not have reasonably been made pretrial. Johnson likewise demonstrates this Court lacked jurisdiction over Counts 6 and 7, as they failed to state a federal offense, when the underlying "crime of violence" being a conspiracy to commit robbery that affected interstate commerce.

   B. Johnson Compels Dismissal of the 924(c) Count, Because It Alleged Conspiracy, Which is Not Categorically a Crime of Violence

The "crime of violence" statutory definition in Section 924(c)(3)(B) is materially indistinguishable from the unconstitutionally vague residual clause of 18 U.S.C. § 924(e)(2)(B)(ii), at issue in Johnson. Section 924(c)(3)(B)

employs the identical technique of picturing the hypothetical "ordinary cause" for categorizing predicate felonies as "crime of violence." Like the ACCA, § 924(c)(3)(B) also requires courts to apply the categorical approach to define the "ordinary case" of a felony statute and to assess the risk involved in that "ordinary case." Comparing the language in the two statutes demonstrates this common nature. Section 924(c)(3)(B) reads:

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

While Section 924(e)(2)(B)(ii)'s residual clause reads:

> (B)(ii)...or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Courts must use the same "ordinary case" analysis in determining whether a felony qualifies as a "crime of violence" under § 924(c)(3)(B)'s clause as under the ACCA's residual clause. Both § 924(c)(3)(B) and the ACCA's residual clause requires courts to classify crimes categorically based on an inherently vague standard of risk. In § 924(c)(3)(B), the focus is on whether the crime involves a "substantial risk that physical force" will be used; while in ACCA's residual clause, the focus is on "a serious potential risk of physical injury." But Johnson's holding did not turn on the type of risk. Rather, Johnson's holding was focused on how a court assesses and qualifies the risk which resulted in the ultimate

9

conclusion "that the indeterminacy of the wide ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." 135 S. Ct. at 2557. As the risk inquiry is the same under both the ACCA's § 924(e)(2)(B)(ii) and § 924(c)(3)(B), both statutes impose identically unconstitutional vague standards. See, e.g., Dimaya v. Lynch, 803 F.3d 1110, __, 2015 U.S. App. LEXIS 18045, *10-*11 (9th Cir 2015). Dimaya considered the "crime of violence" definition found in 18 U.S.C. § 16(b), and concluded "courts considering both § 16 and the [ACCA] residual clause must decide what a 'usual or ordinary' violation of the statute entails and then determine how great a risk of injury that 'ordinary case' presents." 2015 U.S. App. LEXIS, *11. Dimaya concluded that Johnson compels the conclusion that § 16(b) is unconstitutionally vague. 2015 U.S. App. LEXIS 18045, *11-*13.

Under Johnson, a conspiracy to commit a robbery that affected interstate commerce, is not categorically a crime of violence within the meaning of § 924(c)(3), because no element of a Hobbs Act conspiracy "necessarily include[s] the use, attempted use, or threatened use of force" to accomplish that result. An offense that result in physical injury, but does not involve the use or threatened use of force, simply does not meet the definition of a "crime of violence" within the meaning of 18 U.S.C. § 924(c)(3)(A). See e.g., United States v. Melvin, 2015 U.S. App. LEXIS 18766. In Melvin, the court held in a pre-Johnson ruling, that conspiracy to commit robbery with a dangerous weapon is a predicate violent felony under ACCA. However, on June 30, 2015, the Supreme Court

granted Melvin's petition for a writ of certiorari, vacated the judgment and remanded to the Fourth Circuit for further consideration in light of Johnson v. United States, 135 S. Ct. 2551 (2015). See also, United States v. Fell, 511 F.3d 1035, 1039-41 (10th Cir 2007)(holding that a Colorado conviction for conspiracy to commit second degree burglary was not a violent felony because "[a]lthough there is an overt act element, the act need not be directed toward the entry of a building or structure"); United States v. King, 979 F.2d 801, 804 (10th Cir 1992)(explaining that the Tenth Circuit "look[s] only to the elements of the conspiracy crime" and holding that conspiracy to commit robbery does "not necessarily present circumstances which created the high risk of violent confrontation inherent in a completed [armed robbery].").

As noted in United States v. Chandler, 743 F.3d 648 (9th Cir 2013), "[t]he Supreme Court of Nevada addressed the difference between conspiracy to commit robbery and robbery, in Nunnery v. Eighth Judicial Dist. Court ex rel. County of Clark, 124 Nev. 477, 186 P. 3d 886 (Nev. 2008)(per curiam), in order to decide whether "conspiracy to commit robbery is [] a felony involving the use or threat of violence." Id. at 887. The Nevada Supreme Court began by analyzing an earlier case where it decided that solicitation to commit murder is not a violent crime because "in the crime of solicitation, the harm is the asking-nothing more need be proven." Hildalgo v. Eighth Judicial Dist. Court, 124 Nev. 330, 184 P.3d 369, 373 (Nev. 2008)(en banc). The Supreme Court of Nevada then explained that Hidalgo "applie[d] with equal force here" because "conspiracy is committed upon reaching the unlawful

11

agreement." Nunnery, 186 P.3d at 888. Conspiracy is an inchoate crime that do not require completion of the criminal objective. Thus, conspiracy to commit Hobbs Act robbery is not a "crime of violence" within the meaning of § 924(c)(1), and the constitutionality of subsection 924(c)(3)(B) is undermined by Johnson.

Petitioner draws upon the reasoning of Diyama and contends that because § 924(3)(B)'s language is identical to the [ACCA] residual clause, this court should conclude that Johnson compels the conclusion that § 924(c)(3)(B) is unconstitutionally vague.

V. THE GENERAL VERDICT MAKES IT IMPOSSIBLE TO DETERMINE IF THE 924(c) AND 924(j) COUNTS RESTED ON COUNT ONE'S CONSPIRACY, COUNT THREE'S ATTEMPTED ROBBERY, OR BOTH

The indictment allged that the § 924(c) and § 924(j) offenses were committed during a conspiracy to commit robbery (Count One), and an attempted robbery (Count Two). The jury returned a general verdict for Count 7, without stating the theory of liability the verdict rested on. Mr. Gunn was charged as an aider and abettor in Count 7. However, (as argued in the pending § 2255 motion), the jury was never given an entry for "aiding and abetting." The government had argued that even though Gunn was charged as an aider and abettor, the general verdict reflecting the entry of Guilty for Murder is harmless, because an accomplice is liable as a principal. Thus, as part of Gunn's § 2255 claim, he had argued that the verdict for count 7 is unconstitutional, because (1) it is not

supported by the evidence, (2) one theory of liability is constitutionally invalid, and (3) there's no way of telling what theory of liability the jury relied on.

Johnson's ruling invalidate Count One as an underlying "crime of violence, and invalidate § 924(c) where the language in § 924(c)(3)(B) is unconstitutionally vague as that of the ACCA residual clause. Because there's no way of determining what theory the jury relied on--that is, whether the § 924(c) and § 924(j) underlying "crime of violence" was the conspiracy, or the attempted robbery, or both, count 6 and 7 conviction must be set aside.

The fundamental rule that applies when a jury delivers a general verdict that may rest either on a legally valid or legally invalid ground is clear: the verdict may not stand when there is no way to determine its basis. "It has long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside." Sandstrom v. Montana, 442 U.S. 510, 526 (1979); Yates v. United States, 354 U.S. 298, 312; Burks v. United States, 437 U.S. 1 (1978)("The proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supported on one ground, but not on another, and it is impossible to tell which ground the jury selected"); Stromberg v. California, 283 U.S. 359, 368, 75 L. Ed. 1117 (1931)("if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld"). The Supreme Court has determined that a verdict must be set aside in cases such as this where the verdict is legally insupportable on one

ground, yet supportable on another, and it is impossible to tell on which ground the jury relied. Griffin v. United States, 502 U.S. 46, 59, 116 L. Ed 2d 371 (1991).

In petitioner's pending § 2255, he made a showing that it is impossible to determine whether the jury rested its verdict on Principal Liability for Murder, or Aiding And Abetting Liability. Johnson strengthens this general verdict/theory of liability claim concerning Count 7. Simply put, because conspiracy to commit Hobbs Act robbery does not constitute a "crime of violence" within the meaning of § 924(c)(3)(B), in light of Johnson, and the possiblity that Counts 6 and 7 may have rested on an invalid underlying "crime of violence," this court must set aside Counts 6 and 7 convictions under Johnson. The 924(c) and 924(j) offenses were submitted to the jury on alternative theory with the conspiracy or the attempted robbery being the crime of violence. Under Johnson, § 924(c) failed to charge a federal offense, when it charges as an underlying "crime of violence," a conspiracy to commit an attempted Hobbs Act robbery. Neither the Court nor the Government can tell precisely which offense (Count 1 or Count 3), the jury relied on as the underlying "crime of violence."

The conspiracy to commit a Hobbs Act robbery under § 1951 is a separate offense from the Attempted Robbery under § 1951. See United States v. Salameh, 261 F.3d 271, 279 (2d Cir 2001). Therefore, the jury was at liberty to consider either alleged "crime of violence" in its determination on the 924(c) and 924(j) offenses. The jury verdict failed to state upon what conduct or theory its determination for 924(c) and 924(j)

14

rests. Under Johnson's holding, a verdict that rested upon the conspiracy count would be an invalid conviction where conspiracy to to commit robbery is not a "crime of violence" within the meaning of § 924(c)(3)(B). See United States v. Alsondo, 486 F.2d 1339, 1345 (2d Cir 1973)(holding, since we have no way to determine on which theory the jury did in fact convict, we must reverse the conviction on this count).

V. JOHNSON SHOULD BE GIVEN RETROACTIVE APPLICATION TO THE 924(c) AND 924(j) OFFENSES

This Court should give retroactive application to Johnson where its holding forbids the state from prosecuting a § 924(c)(1) offense with a Hobbs Act conspiracy as an underlying "crime of violence." Johnson is retroactively applicable on collateral review because it announced a new, substantive rule. See Shriro v. Summerlin, 542 U.S. 348 (2004). The First, Second, Sixth, Eighth, and Ninth Circuits are granting applications to file second or successive § 2255 motions on Johnson. See Rivera v. United States, No. 13-4654 (2d Cir Oct. 5, 2015)(ECF No. 44). Johnson pronounced a substantive ruling that significantly affects the statutes upon which Mr. Gunn's convictions rests. See, Price v. United States, 795 F.3d 731 (7th Cir 2015)(holding that Jonhson announces a new substantive rule of constitutional law that the Supreme Court has categorically made retroactive to final convictions).

In numerous circuits, the United States has formally taken the position that Johnson is retroactive on collateral review in ACCA cases. See, In re: Kenneth Wayne Fannon, Case No.: 15-

321 (4th Cir) Docket Entry 10; Pakala v. United States, 804 F.3d 139, 140 (1st Cir 2015)(applying government concession that Johnson announced a new rule, retroactively applicable, thus granting leave to file a successive § 2255 motion); Woods v. United States, __, F.3d __, 2015 U.S. App. LEXIS 20136, 2015 WL 7351939 at *2 (8th Cir Nov. 20, 2015)(same). As this motion is premised on the Supreme Court's decision in Johnson, the motion could not have reasonably been made prior, and Johnson's ruling demonstrates that this Court lacked jurisdiction over Counts 6 and 7 as they failed to state a codified federal offense.

WHEREFORE, Mr. Gunn respectfully request that the relief sought in his Supplemental pleading, and his pending § 2255 be granted.

Dated this 18th day of February, 2016.

Respectfully submitted

R. Gunn

Roderick Gunn, Pro-se

# CERTIFICATE OF SERVICE

I, Roderick Guinn, herby certify that I have served a true and correct copy of the following: MOTION FOR LEAVE OF THE COURT TO FILE A SUPPLEMENT PLEADING PURSUANT TO RULE 15(a) AND (d) OF FED.R.CIV.P., AND JOHNSON v. UNITED STATES

Which is deemed filed at the time it was delivered to prison authorities for forwarding, Houston v. Lack, 101L. Ed. 2d 245 (1988), upon the defendant/defendants and or his attorney/attorneys of record, by placing same in a sealed, postage prepaid envelope addressed to:

U.S. Attorney's Office
Attn: Daniel Tracer (AUSA)
One Saint Andrew Plaza
New York, NY 10007

and deposited same in the United States Mail at: U.S.P Atwater
P.O. Box 019001
Atwater, CA 95301

I declare, under penalty of perjury (Title 28 U.S.C. §1746), that the foregoing is true and correct.

Dated this 18th day of February, 2016.

R. Guinn



◇ 55254-054 ◇
Pro Se Office   U.S. District Court
500 Pearl ST    Southern Dist of N.Y.
Room 230
NEW YORK, NY 10007
United States

◇ 55254-054 ◇
Roderick Gunn
United State Penitentiary
P.O. Box 019001
Atwater, CA 95301
United States

