UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. SI 06 CR. 911 (WHP) |
| Respondent, | ) | |
| | ) | MOTION FOR COMPASSIONATE |
| v. | ) | RELEASE OR REDUCTION IN |
| | ) | SENTENCE PURSUANT TO |
| RODERICK GUNN, | ) | 3582(c)(1)(A) |
| Defendant. | ) | |
| | ) | |

## Preliminary Statement

Roderick Gunn ("Gunn"), the defendant in the above-captioned matter, proceeding pro se, hereby respectfully moves this court for consideration of his Motion for Compassionate Release or Reduction in Sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A).

## Statement of Facts

Gunn was convicted for Conspiracy to commit Hobbs Act robbery and Attempted Hobbs Act robbery in violation of 18 USC § 1951 (Counts 1 & 3); Use of a Firearm During and in Relation to a Crime of Violence, in violation of 18 USC § 924(c) (Count 6); and Aiding and Abetting Davis' use of a Firearm that Resulted in Death, in violation of 18 USC § 924(j) and 2 (Count 7); and  Conspiracy to Possess with Intent

to Distribute at least 100 kilograms of Marijuana, 21 U.S.C.
§§ 846, 841(b)(1)(B). Gunn was sentenced to a term of life
imprisonment. The judgment was affirmed by the Second Circuit.
Currently, Gunn's claim under United States v. Davis, 139 S.
Ct. 2319 (2018) is pending before this court in Case No. 16-
cv-4887, pending the Second Circuit's ruling on whether
Attempted Hobbs Act robbery is a categorical crime of violence
for the purpose of § 924(c).

### Standard of Review

Section 603 of the First Step Act changed the process by
which § 3582(c)(1)(A) compassionate release occurs: instead of
depending upon the BOP Director to determine an extraordinary
circumstance and then move for release, a court can now
resentence "upon motion of defendant," if the defendant has
fully exhausted all administrative remedies "or the lapse of
30-days from the receipt of such a request by the warden of
the defendant's facility, whichever is earlier." 18 U.S.C. §
3582(c)(1)(A).

Recently in United States v. Brooker, No. 19-3218-CR,
2020 WL 5739712, at **5-7 (2d Cir. Sept. 25, 2020), the Second
Circuit held that "the First Step Act freed district courts to
consider the full slate of extraordinary and compelling
reasons that an imprisoned person might bring before them in
motions for compassionate release," and "[n]either Application
Note 1(D), nor anything else in the now-outdated version of
the Guideline § 1B1.13, limits the district court's
discretion." Id. at *7. The Court said "Congress clearly did

2

not view this--a break with over 30 years of procedure--as a
minor inconsequential change." Brooker, 2020 WL 5739712, at
*6. The Court concluded that the language of "Guideline
§1B1.13 ... is clearly outdated and cannot be fully
applicable." Id. "In other words, if a compassionate release
motion is not brought by the BOP Director, Guideline § 1B1.13
is not applicable to compassionate release motions brought by
defendants, and Application Note 1(D) cannot constrain
district courts discretion to consider whether any reasons are
extraordinary and compelling." Id.

ARGUMENT

I.   THIS COURT HAS AUTHORITY TO RESENTENCE GUNN UNDER SECTION
3582(C)(1)(A)(i) FOR THE EXTRAORDINARY AND COMPELLING REASONS
PRESENTED HEREIN.

     With the changes made to the compassionate release
statute by the First Step Act, and recent Second Circuit's
precedent, U.S. v. Brooker, this court has the authority to
resentence Gunn for the extraordinary and compelling reason
he'll present below.

II. GUNN HAS EXTRAORDINARY AND COMPELLING REASONS WHY HIS
SENTENCE SHOULD BE REDUCED.

     A. Gunn has properly exhausted his request
     with the Warden of the facility he's housed.

3

Gunn filed a request for a reduction of sentence under the compassionate release statute with the warden of U.S.P. Atwater, California on October 13, 2019. See Attachment A. To present date the BOP has not responded, so Gunn has properly exhausted his claim.

B. Gunn has extraordinary and compelling reasons justifying a sentence reduction.

Gunn's present life sentence presents "extraordinary and compelling reasons" for four reasons: First, Gunn's life sentence is based on his firearms convictions under 18 U.S.C. §§ 924(c) and 924(j) that are now questionable in light of United States v. Davis, 139 S. Ct. 2319 (2018). Second, under Davis' retroactive effect, conspiracy to commit Hobbs Act robbery is a constitutionally invalid predicate for the purpose of § 924(c). Third, the general verdict rule requires that when one of two grounds that were presented to a jury is constitutionally invalid and there's no telling which ground the jury unanimously rested its verdict, the conviction must be reversed. And fourth, Gunn has a remarkable record of rehabilitation showing that, if released, he is no danger to the public.

III. DAVIS' RETROACTIVE EFFECTS CREATES AN EXTRAORDINARY AND COMPELLING REASONS FOR A COMPASSIONATE RELEASE.

With passage of Davis' retroactive effects, and United States v. Barrett, 2019 U.S. App. LEXIS 26461 (2d Cir. Aug.

4

30, 2019), conspiracy to commit Hobbs Act robbery is no longer
a qualifying "crime of violence" within the meaning of §
924(c)(3). With this fundamental change of application of the
law, Gunn's firearms conviction are constitutionally infirm,
when viewed in light of the general verdict rule. Because
Gunn's firearms offenses under §§ 924(c) and 924(j) relied on
either Conspiracy to Commit Hobbs Act Robbery or Attempted
Hobbs Act Robbery, and the jury did not state which predicate
it unanimously rested its verdict, this triggers a Stromberg
violation.

IV. DAVIS' INVALIDATION OF HOBBS ACT CONSPIRACY AS
CONSTITUTIONALLY INVALID, TRIGGERS THE GENERAL VERDICT RULE

    At Gunn's trial, the jury was instructed that it could
consider conspiracy to commit Hobbs Act robbery (Count 1), or
attempted Hobbs Act robbery (Count 3) as the crime of
violence element for Counts 6 and 7. The jury returned a
general verdict without specifying which of the two predicates
it unanimously selected as the "crime of violence." Because
conspiracy to commit Hobbs Act robbery can no longer support a
§ 924(c) offense, and it is impossible to tell which of the two
predicates the jury unanimously selected as the crime of
violence element for § 924(c), this rule trigger a Stromberg
violation. Stromberg v. California, 283 U.S. 359, 51 S. Ct.
532, 535, 75 L. Ed. 2d 1117 (1931).

    In Stromberg, the Supreme Court reviewed the conviction
of an appellant who had been convicted under a state statute
that criminalized several actions. The criminalization of one

5

of these actions, however was ruled an unconstitutional
restriction on free speech. Because it was unclear whether the
appellant's conviction had been predicated upon that
constitutionally protected conduct, the Supreme Court found
that "the conviction could not be upheld." Stromberg, 283 U.S.
at 368. Consistent with Stromberg, the Second Circuit said:
"The Supreme Court decades ago announced the so-called general
verdict rule, that 'a new trial will be required' where 'there
is no way to know that [an] invalid claim ... was not the sole
basis for [a] verdict." Chowdhury v. WorldTel Bangl. Holding,
Ltd, 746 F.3d at 50 (2d Cir. 2014); see also, Garcia supra, at
415-416.

Generally, when a jury returns a general verdict and the
evidence is insufficient to support a conviction on one legal
theory but sufficient to support a conviction on another, then
the reviewing court should let the verdict stand, assuming
that the jury convicted on the factually sufficient theory.
See Griffin v. United States, 502 U.S. 46, 49-50 (1991).
However, when one of the two or more alternative theories
supporting a count of conviction is either (1)
unconstitutional, or (2) legally invalid, then the verdict
must be reversed. See e.g., Yates v. United States, 354 U.S.
298, 312. The Griffin Court restricted the holding in Yates to
cases where one of the alleged theories submitted to the jury
is unconstitutional or legally deficient.

In United States v. Garcia, 992 F.2d 409, 415-16 (2d Cir.
1993), the Second Circuit elaborated on the general verdict
rule stating: "[T]he difference between factual and legal
challenges is significant because 'when disjunctive theories

6

are submitted to the jury and the jury renders a general
verdict of guilty, appeals based on an evidentiary
deficiencies must be treated differently than those based on
legal deficiencies.' If the challenge is evidentiary, as long
as there was sufficient evidence to support one of the
theories presented, then the verdict should be affirmed.
However, if the challenge is legal and any of the theories was
legally insufficient, then the verdict must be reversed."
Garcia, 992 F.2d at 416. See also, United States v. Desnoyers,
637 F.3d 105, 109-110 (2d Cir. 2011); Griffin, 502 U.S. at 59;
BALL Banking Corp., v. UPG Inc., 985 F.2d 685, 702 (2d Cir.
1993)(reversing judgment where unclear whether general verdict
was based on proper or improper submission); Levinsky's Inc.
v. Wal-Mart Stores, Inc., 127 F.3d 122, 136 (1st Cir.
1997)(vacating verdict where unclear on which theory of
defamation jury predicated verdict and finding erroneous
instruction to have "poisoned the general verdict").

   "Legal error is not sufficiency of evidence, but means a
mistake about the law, as opposed to a mistake concerning the
weight or factual import of the evidence." Griffin, 502 U.S.
at 59. Courts has frequently held that the "one good count"
rule did not apply where one of the submitted grounds was
unconstitutional." Griffin, 502 U.S. at 53. Because one of the
predicates presented to Gunn's jury is constitutionally
invalid, and it is impossible to tell which predicate the jury
unanimously selected as the "crime of violence," this created
an "extraordinary and compelling reason for compassionate
release under the general verdict rule. See e.g., Richitelli
v. United States, 2020 U.S. Dist. LEXIS 145938 (S.D. Fla. Aug.

12, 2020)(vacated § 924(c) conviction in light of Davis due to Stromberg's general verdict rule); Williams v. United States, 2020 U.S. Dist. LEXIS 167013 (N.D Ga.. Apr. 1, 2020)(vacated 924(c) in light of Davis and Stromberg's general verdict rule).

Just recently, the Second Circuit has addressed general verdict claims in light of Davis' rule. See e.g., United States v. Ventura, 742 Fed. Appx 575 (2d Cir. 2018). Ventura was convicted for federal arson, drug trafficking and use of a firearm, in violation of § 924(c). On appeal Ventura argued that his § 924(c) conviction must be dismissed because federal arson is not a categorical crime of violence. The Second Circuit held that at trial, Ventura admitted to engaging in drug trafficking, and certain questions from the jury during deliberations indicated that the jury was considering the drug trafficking predicate. The Court concluded that Davis therefore had no effect on Ventura's § 924(c)'s conviction.

Comparing Ventura with Gunn's case, Ventura's is easily distinguished. First, Ventura was charged with his two predicates [arson and drug trafficking] in a single count, while Gunn's predicates were charged in separate Counts. Second, Ventura admitted to the jury that he had engaged in drug trafficking, while Gunn did not admit to the jury that he had engaged in an attempted robbery. Ventura's admission to the jury that he had engaged in the drug trafficking crime foreclosed any claim that the jury considered the federal arson rather than the drug trafficking crime for § 924(c) predicate. See also, United States v. Vasquez, 672 Fed. Appx 56 (2d Cir. 2016)(Vasquez I).

8

Vasquez was convicted for § 924(c) which relied on either conspiracy to commit Hobbs Act robbery and/or Hobbs Act robbery. On appeal, Vasquez raised a challenge to the sufficiency of the evidence regarding the predicate the jury rested its verdict for the § 924(c). The Second Circuit held, "[e]ven if Hobbs Act robbery were not a categorical crime of violence, Vasquez' 924(c) convictions are clearly supported by a narcotics predicate under Pinkerton Liability because, '(1) robbery was an act inextricably intertwined with an, indeed in furtherance of the charged narcotics conspiracy, and (2) the jury found that narcotics conspiracy proved beyond a reasonable doubt.'"

Unlike Vasquez, Gunn's jury was never instructed with Pinkerton Liability, and neither was Gunn's 924(c) offense predicated on a drug conspiracy in the indictment, or the jury instructed on such predicate. Thus, Vasquez is inapplicable here. But also crucially important is that: (1) Vasquez was decided pre-Davis when the Second Circuit had upheld both § 924(c) Residual clause and conspiracy to commit Hobbs Act robbery as a crime of violence as valid; (2) under the Pinkerton Liability theory, the review is based on a preponderance of the evidence (e,g, "reasonable foreseeability"); and (3) Gunn's general verdict claim is not a "sufficiency of the evidence" claim. Rather, it raised a legal deficiency claim that is supported by Stromberg's general verdict rule. This court has addressed a general verdict claim in Gonzalez v. United States, No. 13-cv-6752 (SDNY March 21, 2017)(WHP), and pointed out the distinction of the sufficiency-of-the-evidence challenges. Because Davis'

9

retroactive effect trumps a legal deficiency claim, [NOT] a
sufficiency of the evidence claim, Gunn's claim constitute
extraordinary and compelling reason for compassionate release.
See in particular, United States v. Vasquez, 85 F.3d 59 (2d
Cir. 1996).

In this Vasquez, the Second Circuit reaffirmed Griffin's
distinguished approach where one of the two theories presented
to the jury is legally deficient (evidently not regarding
insufficiency of the evidence as a "legal" deficiency in this
context). The general verdict rule that requires reversal [is
if] one ground relied on by the jury is unconstitutional. See
e.g.; United States v. Rodriguez, U.S. Dist. LEXIS 66715 (SDNY
Apr. 15, 2020). Rodriguez' and Camacho's § 924(c) conviction
was predicated on Count 1, conspiracy to murder, in violation
of § 1959(a)(5) and N.Y. Penal Law, §§ 105.15 and 125.25;
Count 4 for attempting to murder, in violation of §§
1959(a)(5) and N.Y. Penal Law §§ 125.25 and 110.00. Both
defendants were sentenced to a term of 25 years on Counts 1 to
4, and a consecutive 5 year term for Count 5. After the
Supreme Court pronounced its decision in Davis, the defendants
were granted authorization to file a successive § 2255.

The government conceded that conspiracy to commit murder
as charged in Count 1 is no longer a valid predicate for a §
924(c) offense after Davis. However, the government argued
that the firearm convictions and sentences remain valid
because they are "based not just on one, invalid predicate but
also on several additional predicates--murder and attempted
murder in aid of racketeering--which are crimes of violence
under § 924(c) force clause. In granting habeas relief, the

district court said:

> It is impossible to extricate the conspiracy
> charge from the other charged predicates or to conclude
> that the defendants § 924(c) convictions were actually
> based on a valid predicate, and not the conspiracy
> charge--the conspiracy charge infected every aspect
> of the defendant's trial.

The Rodriguez court concluded that the argument is grounded in the general verdict rule. The general verdict rule was developed to determine the viability of a verdict in favor of a plaintiff when alternative theories for imposing liability are given to the jury, but only one of those theories should have been submitted. United N.Y. and N.J. Sandy Hook Pilots Ass'n v. Haleck, 358 U.S. 613, 619 (1959)(reversing a general verdict and ordering a new trial because one of two theories of liability submitted to the jury was invalid and there was "no way to know that the invalid theory was not the sole basis for the verdict."); Morrissey v. National Maritime Union of Am., 544 F.2d 19, 26 (2d Cir. 1976)("The general verdict rule is that when one of the two claims that have been submitted to the jury should not have been submitted, a general verdict ... cannot stand.").

Gunn's argument would fail if the verdict provides a way to know that a valid predicate was the sole basis for the jury's § 924(c) verdict. But because it is impossible for the court to make this conclusion, this is indeed an extraordinary and compelling reason that warrants relief. This is also of

constitutional importance because the Sixth Amendment requires that every element of § 924(c) must be proved "beyond a reasonable doubt." The general verdict failed to give this dual-assurance of "unanimity" and "guilt-beyond-a-reasonable doubt" of the "crime of violence element."

An indictment that listed multiple predicates in a single § 924(c) count allows for a defendant's mandatory minimum to be increased without the unanimity Alleyne requires. For example, half of the jury may have believed that Gunn used or aided and abetted the use of a firearm at some point during the Hobbs Act conspiracy, and the other half that he did so only during the attempted Hobbs Act robbery. Either way, a general verdict of guilty does not reveal any unanimous finding by the jury for Counts 6 and 7. The lack of specificity in the jury verdict added significance because §§ 924(c) and 924(j) increases a defendant's mandatory minimum, plus the overall sentence." See Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013). Alleyne held that because these findings "increase the mandatory minimum sentence," they are "elements and must be submitted to the jury and found beyond a reasonable doubt." Id. at 2158.

The way Gunn's indictment was written and how the jury were instructed, this court can only make a guess on what the jury may have unanimously selected as the "crime of violence" predicate. And even such guess-work doesn't prove unanimity, while Alleyne (and Apprendi) expressly prohibits this type of "judicial fact finding" when it comes to increasing a defendant's mandatory minimum or maximum sentence. Alleyne, supra at 2155. Gunn had raised this lack-of-jury-unanimity in

12

his Rule 29 and Rule 33 Motion. He argued that the court
should have instructed the jury that it had to agree
unanimously on at least one predicate crime underlying his
conviction for carrying a firearm during a crime of violence.
The court stated that the erroneous jury instruction was
necessarily harmless (citing Gomez, 580 F.3d 94, 104 (2d Cir.
2009)). See e.g., United States v. Davis, et al Gunn, 2010
U.S. Dist. LEXIS 86087 (decided Aug. 20, 2010).

Prior to Davis' decision, such erroneous jury instruction
and the general verdict would have been harmless because both
predicates were deemed categorical crime of violence. However,
not so after Davis' retroactive effects on § 924(c)'s residual
clause and conspiracy to commit Hobbs Act robbery. The rule of
Davis and the general verdict rule changed the validity of
Gunn's conviction that constitutes an "extraordinary and
compelling" reason for compassionate release. "Extraordinary,"
because there's a great possibility that Counts 6 and 7
convictions rest on a constitutionally invalid predicate. And
a "compelling" reason as one so great that irreparable harm or
injustice would result if the relief is not granted. Put
differently, it is beyond what is usual to allow convictions
in the face of uncertainty of the jury's choice for § 924(c)
predicate, and uncertainty of Sixth Amendment jury unanimity
on the crime of violence element for Counts 6 and 7. Upholding
these convictions would be in stark repudiation to the
constitution's guilt-beyond-a-reasonable doubt protections,
Alleyne, and Apprendi.

Consistent with United States v. Brooker, 2020 U.S. App.
LEXIS 30605 (2d Cir. Sept. 25, 2020), and United States v.

Zullo, 19-3218-cr (2d Cir. Sept. 2020), Gunn's claims
constitutes an "extraordinary and compelling" reason that
favors compassionate release. As Congress indicated, relief
may be appropriate, inter alia, in "cases in which other
extraordinary and compelling circumstances justify a reduction
of an unusually long sentence, and some cases in which the
sentencing guidelines for the offense of which the defendant
was convicted have been later amended to provide a shorter
term of imprisonment." S. Rep. No. 98-225, at 55-56 (1994).

The Second Circuit further noted in Zullo that a district
court has authority to grant compassionate release or
reduction in sentence if a defendant raised a claim that his
sentence was too long. The Zullo Court explicitly held that "a
district court's discretion in this area-as in all sentencing
matters-is broad. The only statutory limit on what a court may
consider to be extraordinary and compelling is that
'[r]ehabilitation .... alone shall not be considered an
extraordinary and compelling reason.'" 28 U.S.C. §
994(t)(emphasis added). Congress did not define what
constitutes "extraordinary and compelling reasons, but
considered 18 U.S.C. § 3582(a)(1) would act as a safety valve
to allow modification of sentence. However, Black's Law
Dictionary defines Extraordinary as "[b]eyond what is usual,
customary, regular, or common," BLACK'S LAW DICTIONARY (10th
ed. 2014), and extrapolating from its definition of
"compelling need," a compelling reason is one "so great that
irreparable harm or injustice would result if [the relief] is
not [granted]," see Compelling Need, BLACK'S LAW DICTIONARY.

V. THE COURT SHOULD EXERCISE ITS DISCRETION AND RESENTENCE
GUNN TO TIME SERVED.

In considering a motion for compassionate release, the
court is required to take into consideration the factors
enumerated in Section 3553(a). Pepper v. United States, 562
U.S. 476, 491 (2011).

1. Nature and circumstances of the offense and
history and characteristics of the defendant.

The nature of Gunn's underlying offenses are undeniably
serious. There is nothing Gunn can say, but humble his heart
in shame and regrets, and express his remorse for the effects
of his conduct.

As for the history and characteristics of the defendant,
the Supreme Court held in Pepper that evidence of post-
sentencing rehabilitation is relevant to the history and
characteristics of the defendant. Pepper, supra, at 491
(citing § 3553(a)(1)). Other courts have considered similar
accomplishments by an inmate sufficient to establish that
inmate's rehabilitation, favoring a sentencing reduction. See
Brown, 2020 U.S. Dist. LEXIS 87133, 2020 WL 2091802, at * 7
(finding that inmate's rehabilitation cuts in favor of
compassionate release "where inmate has not had a single
disciplinary incident."); Decator, 2020 U.S. Dist. LEXIS
60109, 2020 WL 1676219, at *4 (finding that section 3553(a)(1)
factor favored compassionate release because, inter alia,
"[w]hile incarcerated Decator has participated in extensive

15

education and rehabilitation programming...and has minimal
non-violent disciplinary record."); Redd, 2020 U.S. Dist.
LEXIS 45977, 2020 WL 1248493, at *10 (finding that inmate's
evidence of rehabilitation favored sentence reduction because
inmate "has demonstrated a commitment to self-improvement,
devoting hundreds of hours to vocational programs and
assisting others in their rehabilitative efforts.").

Throughout Gunn's incarceration, he has committed himself
to rehabilitative efforts. He has earned his GED in 2004 prior
to sentencing, and continued with personal improvement, Adult
Continuing Education (ACE) programs, and faith-based
correspondence courses. To name a few, the United States
Department of Labor 4,000 hours "Teacher's Aide I"
Apprenticeship course, Lean Six Sigma Hands-on training, Small
Business Establishment, Release Preparation Program (RPP),
Microsoft Word Processing, Adobe Reader Vocational Training,
and the 90 days Drug Education Program. Gunn has completed the
500 hours Challenge Program as well. Gunn committed himself to
over 5,000 hours of rehabilitation programming even when there
were no incentive to do so. See Attachment B (Programs
Completed & Letter from Treatment Specialist, M. Griggs).

After Gunn graduated from the Challenge Program, he
became a mentor to assist other participants in their
treatment processes--even though Gunn has been mentoring
inmates in the Challenge Program on a day to day basis long
before his graduation. In his mentor capacity, Gunn wrote
curriculums and utilized them at his Rational Self-Analysis
class on a weekly basis. He is the second inmate in the
Challenge Program between 2016 and present to receive the

"Challenger of the Week" award, and the only inmate to receive the "Participant of the Year" award. See Attachment C (Challenge Awards). Gunn is also the Editor-in-Chief of the USP Atwater Newsletter, "The New Visions." He writes and solicits articles that encourages inmates to commit themselves to rehabilitation and successful reentry processes.

Challenge Program Coordinator, Dr. G. Todd wrote in her letter on Gunn's behalf: "Mr. Gunn exemplifies what the Challenge Program ultimately hopes to achieve in each of its participants. I am confident that Mr. Gunn will take the lessons and experiences he has learned so far and apply them to his future experiences.... Mr. Gunn will be a success upon his release not because the road will be easy but because he possessed the necessary skills (along with determination) to make it so." See Attachment D (Letter from Dr. G. Todd). Gunn continued in his mentor capacity under the supervision of the new Coordinator, Dr. Kost who took the position in 2019. See also Attachment E (Letter from Dr. Kost).

Gunn has also completed various Religious programs including the 9-month Threshold Faith-based program, Step-it-Up: Authentic Manhood, and was baptized by a Supervisory Chaplain at USP Atwater on February 18, 2014. The public display of Gunn's Christian faith and leadership is known to both inmates and staff. His leadership role plays a significant part within the Protestant faith community. Such role provides assistance to the Chaplains with weekly services, bible studies, prayer meetings, and outreach events. In a letter written by former Supervisory Chaplain, Reverent C. Gonzalez, the Chaplain states: "Mr. Gunn has shown a high

level of spirituality and honest interest on his spiritual growth. he has demonstrated great ability to communicate with others and an honest concern to help other inmates on their spiritual journey. I have witness the character and lifestyle that Mr. Gunn has displayed as an inmate in this institution. He has served as a model to other inmates." See Attachment G (Letter from C. Gonzalez--Chaplain).

Between January 2012 to March 2018, Gunn tutored four sessions of GED classes Mondays to Fridays, 8-12 students per session. He also facilitated various ACE classes, including the Release Preparation Program, Twice-per-Year Mock Job Fair, Small Business Establishment; he wrote curriculums for GED inmates in the SHU, and performed clerical duties in the Education Department. Education Specialist, Z. Nilan who supervised Gunn from 2012 to 2017 wrote: "Inmate Gunn personifies how a model inmate should conduct themselves as reflected in his clear conduct history and hasn't had trouble following instructions. Inmate Gunn has been a valuable asset to this Education Department and given his skills and abilities, should prove to be a productive member of society upon reentry." See Attachment H (Letter from Z. Nilan). Just recently, Gunn has completed his Blackstone Career Institute 31-exams Paralegal course with "Distinction" and also the Advance paralegal Course. See Attachment F (Blackstone Certification).

Gunn has a strong family support who will assist him upon reentry if this court grants that opportunity. He has remained a central figure in his children's lives, despite his incarceration. Currently his children resides in Florida. In

May, his older son turned him into a grandfather. Gunn's younger son Jordan, was only 18 months old when Gunn was arrested. So Jordan knows his dad the least and was practically raised by Gunn from behind the prison walls. Gunn's older brother resides in the State of Washington, who has vowed to provide full support on Gunn's behalf if he's granted another chance to reintegrate into society.

Both of Gunn's parents resides in Kingston Jamaica with his two sisters. His mother is 72 years old and his father is 76 years old. In a letter addressed to the court, Gunn's mother wrote: "Roderick being so far away, we were only able to visit him once in his sixteen years of incarceration on our visit to the United States. We are extremely worried about him and feel as if he's lost in the system; we do not know what is happening, how is the matter proceeding or if we will ever see him again. This Sir is causing great distress and sleepless nights. His absence affects us very much and we are getting older not younger ... we are getting older and don't wish to die before our son is released."

In June of this year, Gunn's wife has finally lost her glimmer of hope for restoration, and filed for divorce. Thus, a compassionate release could save Gunn's marriage of almost 20 years. In addition, numerous inmates has written letters on Gunn's behalf expressing his selfless efforts to assists them in their personal endeavor to rehabilitate and better themselves. See Attachment I (Letters from family, inmates, and divorce hearing schedule).

    2.  The need for the sentence imposed.

19

Section 3553(a)(2) considers whether a given sentence complies with "the four purposes of sentence: just punishment, deterrence, protection of the public, and rehabilitation." Dean v. United States, 137 S. Ct. 1170, 1175 (2017). The prison door closed firmly behind Gunn on June 25, 2003, but as early as September 2-004, he earned his GED. This is evident that he began his pursuit of rehabilitation before he was sentenced. After the life sentence was imposed, Gunn continued with rehabilitation efforts despite having no realistic hope of release. The time he has served so far exceeds the equivalence of a 20 year term of imprisonment with good conduct credit. This term served has consumed a large part of his life and by any measure represents a very substantial punishment that reflects the seriousness of his offenses, the need for general or specific deterrence, and public safety.

3. To reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense.

A sentence of time-served would be sufficient but greater than necessary to reflect the seriousness of the crimes. It is also a period of time that promotes respect for the law and provides just punishment for his offense. For instance, see United States v. Gluzman, No. 96 Cr. 323, 2020 U.S. Dist. LEXIS 131749 (SDNY July 23, 2020). Gluzman was convicted for murder in violation of 18 U.S.C. § 1952(a)(3) and 18 U.S.C. § 2261 after she and an accomplice killed her husband with an

axe, a knife, and an hammer, and dismembered his body in 63
pieces. Gluzman was sentenced to a term of life imprisonment.
Recently, Gluzman, now 71 years old, filed a motion for
compassionate release. Gluzman suffers from medical
complications and has engaged in extraordinary rehabilitation
and contribution to the prison community. In considering
Gluzman's issues in her motion as extraordinary and
compelling, the court stated:

> Such a lengthy period of time reflects the
> seriousness of the offense, promotes respect for
> the law, and provides just punishment for the
> offense. It also affords adequate deterrence
> to criminal conduct, and that the length of
> Gluzman's sentence served to protect the public
> from further crimes and has provided Ms. Gluzman
> with significant opportunities for education and
> character growth-opportunities that she has seized.
> 18 U.S.C. § 3553(a)(2)(D).

In the face of the government's objection, the court
granted compassionate release, stating that Gluzman's 24 years
served in prison is sufficient to achieve the purposes
outlined under 18 U.S.C. § 3553(a)(1)-(2), and that a longer
sentence would be "greater than necessary." The reasoning in
Gluzman can be applied here. This court can also find that
Gunn's "extraordinary and compelling" reasons presented,
coupled with time he has already served in prison is
sufficient to achieve the purposes outlined under §

21

3553(a)(1)-(2), and that a longer sentence would be "greater
than necessary."

    4. To afford adequate deterrence to criminal conduct

    Gunn has incurred one disciplinary infraction in February
2004 for moving from his assigned top bunk to the bottom
without authorization. Since then, he has maintained a
pristine inmate record. Staff Chaplain, Dr. Kenneth Reid
wrote this about Gunn: "Mr. Gunn reflects the embodiment of
those changes society hopes to experience. He currently serves
in various tutoring positions ranging from GED to College
level courses. To elaborate specifically in the many areas Mr.
Gunn serves his fellow inmates would be a battle in futility.
Mr. Gunn is respected by inmates, CO's and executive staff
alike. As a Pastor, I look for inmates to take full
responsibility for their actions which led to incarceration.
Mr. Gunn reflects the ownership worthy of immediate release."
See Attachment J (Letter of Dr. K. Reid). Equally true is that
Gunn has aged out of criminal intentions. He's two months shy
from his 49th birthday, an age that recidivism is far less
likely. See e.g. Attachment K (The Age-crime Curve for Robbery
in 2014); see also, Pepper, 562 U.S. at 491 ("In
assessing...deterrence, protection of the public and
rehabilitation ... there would seem to be no better evidence
than a defendant's post incarceration conduct.").

    5. To protect the public from further crimes
of the defendant.

Gunn's prison record is strong evidence that he is not a
public safety risk. His prodigious effort to live a rule-
abiding life in prison is demonstrated by his almost 17 years
infraction-free inmate record. Unit Counsel, R. Boudreau,
wrote in his letter: "I have great faith with Mr. Gunn's
integration back into society being nothing but positive and
productive." See Attachment L (Letter of R. Boudreau).

> 6. To provide the defendant with needed education or
> vocational training, medical care, or other
> correctional treatment in the most effective manner.

Gunn has committed himself to self-improvement and has
completed over 5,000 hours of programming for education,
vocational training, and correctional treatment. The only
thing left to provide Gunn with needed vocational training is
to provide an actual vocation, as outlined in Gunn's reentry
plans to give back to society.

> 7.   The kinds of sentences available.

Consistent with Davis' retroactive effects and the
general verdict rule, Counts 6 and 7 should be dismissed. This
would leave Counts 1, 3, and 8, which would be grouped
together under USSG § 3D1.2(a). Counts 1 and 3 base offense
starts at level 20, that can be augmented by a maximum of 11
levels if certain factors relating to both offense and
offender relevant to sentencing are considered. See §

23

2B3.1(b)(3). This would produce a total-combined Base Offense Level of 31 points in CHC III. With the dismissal of Counts 6 and 7, § 2A1.1 would be inapplicable, and § 924(j) no longer dictate Gunn's statutory maximum. Any application of § 2A1.1 would violate Apprendi v. New Jersey, 530 U.S. 466. Rather, § 5G1.1(a) would dictate Gunn's statutory maximum of 240 months. In addition, Gunn submits that because the 924(j) statute or § 2A1.1 no longer dictate his Guidelines exposure, the court can grant a three-point reduction under USSG § 2X1.1 where the conspiracy and attempted robbery charges would now determine his base offense calculation.

For Count 8, Gunn was found guilty for conspiracy to possess with intent to distribute at least 100 kilograms of marijuana. This requires a base offense level of 24 pursuant to Amendment 782. This yields an advisory Guidelines range of 63-78 months, and a statutory minimum of 60 months in light of Alleyne v. United States, 133 S. Ct. 2151 (2013). See e.g., Gunn v. United States, 2017 U.S. Dist. LEXIS 32345 (SDNY Mar. 7, 2017), in which this court said, "[A]pprendi and Alleyne do not mean that any fact that influences judicial discretion must be found by a jury--only those that increase the penalties available for a particular crime, either by raising the minimum sentence or the maximum." (citing Alleyne, 133 S. Ct. at 2163). However, with respect to § 3553(a)(3), incarceration is not the only kind of sentence available here. Noncustodial sentences also curtail prized liberty interests and Gunn will face the harsh consequences that awaits him if he violates the conditions attached to such sentence. A total sentence of 240 months, or the proposed advisory Guidelines

sentences would be sufficient but not greater than necessary to achieve the purposes of sentencing and § 3553(a).

9. Need to avoid unwarranted sentencing disparity.

In Kimbrough v. United States, 552 US 85, 91 (2007), the Supreme Court emphasizes that unwarranted disparities between offenders and the concern that such disparities would result in imposing sentences "greater than necessary" to achieve the objectives of sentencing--was an important factor for district courts to consider." Id. Among various district courts, defendants with similar record and underlying convictions for Hobbs Act offenses were sentenced to terms not exceeding 240 months. See e.g., United States v. Johnson, 98 cr-860 (ARR), 2019 U.S. Dist. LEXIS 138256 (EDNY Aug. 14, 2019)(sentenced to 25 years for conspiracy to commit Hobbs Act robbery, Hobbs Act robbery, Use of firearm under § 924(c), and murder through the use of a firearm under § 924(j); Kornegay v. United States, 2018 U.S. LEXIS 190759 (SDNY Nov. 7, 2018)(sentenced to 180 months for Hobbs Act conspiracy, and three substantive Hobbs Act robberies); Tibias v. United States, 2017 U.S. Dist. LEXIS 131987 (D. Conn., Aug. 18, 2017)(sentenced to 270 months for conspiracy to commit Hobbs Act robbery, substantive Hobbs Act robbery, and § 924(c)); United States v. Pereira, No. 11-20532 (S.D. Fla.)(sentenced to 144 months for Hobbs Act conspiracy, § 924(c), and murder-for hire); United States v. Williams, No. 06-70411, 2020 U.S. Dist. LEXIS 108530 (E.D. Mich.)(sentenced to 276 months for drug conspiracy, § 924(c) and § 924(j)).

It is also noteworthy to mention here that prior to

trial, the government had presented Gunn with a plea deal for
240 months. As part of this plea deal, the government would
have reserved its right to ask for a consecutive sentence with
the 84 months for a § 924(c) offense that was imposed in
Gunn's first case in 03 Cr. 1277 (WHP). In addition, Gunn
would have reserved the right to ask for concurrent terms.
Nevertheless, when counsel informed Gunn that as part of the
deal, he would have to stipulate to participating in the
attempted robbery at 194 Locustwood Boulevard location on
October 31, 2002 when Stephanie Laing was killed, Gunn
declined to accept the deal. At trial, the jury acquitted Gunn
for this offense (Count 2).


   10.  Gunn's Reentry Plans


   After years of rehabilitation, Gunn's thinking process
has been transformed in a very productive way. He has
discovered the meaning and purpose for his life and want to
use all that he has learned to mentor others. Gunn's desire
is to show that "an education can transition one's worldview,
decision-making process, character, attitude, family, and
community. Everyday for the last ten-years, Gunn brainstorm on
ways he can give back to society in an effective manner. This
led to the creation of a rehabilitation workshop curriculum
called "The PATH" for at-risk youths. See Attachment M.
(Overview of "The PATH"). Segments of this curriculum has been
tested in the Challenge Program and proved to be successful in
transforming attitudes and behavior. Gunn would like to
introduce "The PATH" to local, state, and federal law

enforcement departments, and correctional institutions to assists youths and low-level first time offenders with progressive rehabilitation. This includes his desire to get The PATH implemented as a "Pre-Trial Diversion" (PTD) program as an alternative to prosecution for certain types of lawbreakers.

Gunn would like to establish a non-profit entity called "The Adopt-One Foundation." See Attachment N (Summary of Foundation's Mission & Objectives). He has written a children's book titled "Lyrica, the Baby Dragon," for special needs children, and a companion booklet titled, "If Only, But What If?" for parents of special needs children. These books will be supported by the Lyrica Project to assist special needs children. Gunn also has written a book titled, "Keys to the Divine Absolutes" with the central theme on the principles of sowing and reaping. This book will help its readers to become aware of the power and effects of their thoughts-words-actions (good or bad), which are categorized as seeds in the book. By natural law, seeds produce offsprings of their kind. Thus, bad choices can only produce bad results, and good and morally-right choices produces good results. The objective mission of "Keys to the Dive Absolutes" is to help others to practice awareness of what they are thinking about and challenge those negative thoughts before they manifest into words and actions (fruits) and create detrimental effects in the lives of others. Gunn's good, bad, and bitter experiences, and the knowledge he has developed over these 17-odd years, gave him a keen awareness that even in a world filled with evil and the inevitable, each individual can chose his or her

future by the choices they make each day. Gunn also has developed other for-profit business ideas that, if successful, can contribute to society by various means. See Attachment O (Future Business Ideas).

The painful years of Gunn's incarceration has been used as a hammer and anvil duo in God's hand that shaped his character, attitude, and choices. His past decisions and their effects has tormented him with regrets. His only hope of solace is found in his relationship with Jesus Christ, the promise that he has been forgiven, and an opportunity to give back to society, and especially his children. Gunn has become a God-fearing man who strive on a daily basis to live righteously. He's two months away from his 49th birthday, and the man he is today, is not the same person that committed the underlying offenses 18-20 years ago. He has changed immeasurably, despite in a situation that seem hopeless. His wife's filing of a divorce is heartbreaking, and devastating for his children. Indeed, this is a hopeless and painful phase of his life, and a favorable relief could change it.

In a speech to Italian prison guards, prison chaplains, and officials from the Ministry of Justice, Pope Francis states: "If you close hope in a cell, there is no hope for society. While protecting its citizens, every society must also seek ways to rehabilitate those who have committed crimes and find ways to help them to make positive contributions to society." See Attachment P (Pope Francis' visit to Italian prison). This court has the authority to exercise discretion, with mercy.

Gunn also request that the court consider his medical

issues. He suffers from hypertension that places him at high
risk of serve illness from COVID-19; he was diagnosed for
Ocular Hypertension, an ailment in both eyes known as
"suspected glaucoma," which requires long term treatment. He
also suffers from other malaises that are not listed in his
medical records such as, stuffy nose on a nightly basis,
frequent numbness in his fingers, and tingling and numbness in
his toes (which was reported to medical staff). See attached
Medical Record. In United States v. Bary, No. 98-CR-1023
(LAK), 2020 U.S. Dist. LEXIS 186310 (SDNY Oct. 7, 2020),
District Judge Lewis A. Kaplan, presiding over Bary's
compassionate release motion quoted these words from
Shakespeare:

"The quality of mercy is not strained.
It droppeth as the gentle rain from heaven
Upon the place beneath. It is twice blest:
It blesseth him that gives and him that takes.
'Tis mightiest in the mightiest; it becomes
The throned monarch better than his crown.
His scepter shows the force of temporal power,
The attribute to awe and majesty
Wherein doth sit the dread and fear of kings;
But mercy is above this sceptered sway.
It is enthroned in the hearts of kings;
It is an attribute to God Himself;
And earthly power doth then show likest God's
When mercy seasons justice."

Gunn humbly and repentantly submits to the court that he can make a significant difference in society if granted this opportunity. And as Judge Kaplan suggested, this is also a case in which the earthly power of the Court and the United States should allow mercy to season justice.

PRAYER FOR RELIEF

Accordingly, Roderick Gunn, acting pro se, prays that the court grants his Compassionate Release request to 240 months or time-served.

Respectfully submitted on December 7th, 2020.

By: _R Gunn_

Roderick Gunn

CERTIFICATE OF SERVICE

UNDER PENALTIES OF PERJURY and pursuant to 28 U.S.C. § 1746, the undersigned hereby certifies that he served the foregoing MOTION FOR COMPASSIONATE RELEASE OR REDUCTION IN SENTENCE and ATTACHMENT by depositing a copy thereof in the USP Atwater Mail Depository, postage fully paid, addressed to:

Daniel Tracer (AUSA)
U.S. Attorney's Office
One Saint Andrews Plaza
New York, N.Y. 10007

on the 7th day of December, 2020.

R. Gunn

Roderick Gunn
Reg. No. 55254-054
USP Atwater
P.O. Box 019001
Atwater, CA 95301

31

ATTACHMENT A

TRULINCS  55254054 - GUNN, RODERICK - Unit: ATW-D-B

----------------------------------------------------------------------------------------------------

FROM: 55254054
TO: Warden
SUBJECT: ***Request to Staff*** GUNN, RODERICK, Reg# 55254054, ATW-D-B
DATE: 11/14/2019 06:44:14 AM

To: Warden
Inmate Work Assignment: Commissary

I have handed my case manager on Unit 4B a Compassionate Release Request package on 11/13/19. I hereby request that a status update be forwardedto me as soon as it is submitted for consideration. If any additional document, or facts are needed, iwill be more thanwilling to provide such.

ATTACHMENT B



U.S. Department of Justice
Federal Bureau of Prisons

United States Penitentiary
Atwater, California  95301

March 11, 2019

MEMORANDUM FOR WHOM IT MAY CONCERN

FROM:        M. Griggs, Correctional Treatment Specialist

SUBJECT:     Roderick Gunn Reg. No. 55254-054

Mr. Gunn arrived at USP Atwater on May 17, 2011, for service of his
Life sentence.  He has the current institutional work assignment of
Education Tutor, where he receives outstanding work performance
ratings.  Mr. Gunn has maintained clear institutional conduct since
February 2004.  He has demonstrated good rapport with staff and other
inmates.  It appears Mr. Gunn has a strong support system through
family and friends based on correspondence.

Mr. Gunn completed the Challenge Program at USP Atwater on January
19, 2017. It is an intensive three phase, 500-hour residential
treatment program for participants with a substance abuse history
or documented mental health history.  Recovery and treatment are to
be the primary focus at all times for individuals participating in
the Challenge Program.  Participants are encouraged to work and/or
attend school outside of program hours.  Each participant is
required to attend and actively participate in program activities,
complete all assignments and demonstrate treatment progress in order
to advance to the next phase.

Mr. Gunn has excellent education/programming course participation
he completed his GED while incarcerated.  He has also completed a
total of 54 courses to date, to include: a 4000 hour Teacher Aide
Apprenticeship, Adobe Illustration, and VT Office Automation.
Additionally, Mr. Gunn is a GED Tutor, Release Preparation Program
Facilitator, Adult Continuing Education Instructor, and Editor in
Chief for the USP Atwater Challenge Program newsletter.



**Individualized Reentry Plan - Program Review  (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons

SEQUENCE: 01116590
Team Date: 09-12-2019

Plan is for inmate: GUNN, RODERICK  55254-054

| | |
|---|---|
| Facility: | ATW ATWATER USP |
| Name: | GUNN, RODERICK |
| Register No.: | 55254-054 |
| Age: | 47 |
| Date of Birth: | 02-24-1972 |

| | |
|---|---|
| Proj. Rel. Date: | UNKNOWN |
| Proj. Rel. Mthd: | LIFE |
| DNA Status: | ATW01901 / 06-14-2011 |

**Detainers**

| Detaining Agency | Remarks |
|---|---|
| DEPORTATION PROCEEDINGS | null |

**Current Work Assignments**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ATW | USP COMMIS | USP COMMISSARY | 05-01-2018 |

**Current Education Information**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ATW | ESL HAS | ENGLISH PROFICIENT | 10-13-2010 |
| ATW | GED EARNED | GED EARNED IN BOP | 09-09-2004 |

**Education Courses**

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| ATW CHG | C | R6-GRT IDEAS OF PHILOSOPHY 1 | 01-19-2019 | 03-04-2019 |
| ATW CHG | C | R1-HEART HEALTHY LIVING USP | 01-08-2019 | 02-25-2019 |
| ATW CHG | C | R1-ANATOMY 1, USP | 01-07-2019 | 02-25-2019 |
| ATW CHG | C | R1-DIABETES USP | 10-22-2018 | 12-17-2018 |
| ATW CHG | C | R1-BEGINNING NUTRITION USP | 10-22-2018 | 12-17-2018 |
| ATW CHG | C | R2-MOCK JOB FAIR USP | 09-30-2018 | 09-30-2018 |
| ATW CHG | C | R3-FINANCIAL MGMNT SKILLS USP | 08-12-2018 | 08-12-2018 |
| ATW CHG | C | R2-EMPLOYMENT SKILLS RPP USP | 07-29-2018 | 08-05-2018 |
| ATW CHG | C | R2-JOB INTERVIEW SKILLS USP | 07-22-2018 | 07-28-2018 |
| ATW CHG | C | R2-JOB SEARCH SKILLS USP | 07-21-2018 | 07-21-2018 |
| ATW CHG | C | R2-RESUME WRITING USP | 07-15-2018 | 07-15-2018 |
| ATW CHG | C | R2-INTRODUCTION RPP USP | 07-08-2018 | 07-08-2018 |
| ATW CHG | C | R6-TGC GREAT SENTENCES | 07-14-2018 | 09-30-2018 |
| ATW CHG | C | R6-TGC HUMAN PERCEPTION | 05-05-2018 | 06-30-2018 |
| ATW CHG | C | R1-ANATOMY 3, USP | 04-22-2018 | 06-20-2018 |
| ATW CHG | C | R1-ANATOMY 2, USP | 04-22-2018 | 06-20-2018 |
| ATW CHG | C | R1-DIABETES USP | 01-16-2018 | 04-11-2018 |
| ATW CHG | C | R1-BEGINNING NUTRITION USP | 01-16-2018 | 04-11-2018 |
| ATW CHG | C | R1-DIABETES USP | 07-12-2017 | 10-02-2017 |
| ATW CHG | C | R1-IP-MANAGING YOUR DIABETES | 07-12-2017 | 09-03-2017 |
| ATW CHG | C | R6-TUTOR TRAINING CLASS | 08-15-2016 | 08-20-2016 |
| ATW CHG | C | R1-BEGINNING NUTRITION USP | 04-03-2017 | 07-04-2017 |
| ATW CHG | C | R1-ANATOMY 3, USP | 04-17-2017 | 07-04-2017 |
| ATW CHG | C | R1-ANATOMY 2, USP | 03-06-2017 | 03-18-2017 |
| ATW CHG | C | R1-ANATOMY 1, USP | 02-13-2017 | 02-27-2017 |
| ATW CHG | C | R1-TALKING WITH YOUR DOCTOR | 12-03-2016 | 12-03-2016 |
| ATW CHG | C | R4-RAC INTERVIEW | 12-01-2016 | 12-01-2016 |
| ATW CHG | C | R6- EARNING FREEDOM: M SANTOS | 07-22-2016 | 11-10-2016 |
| ATW CHG | C | R1-BEGINNING NUTRITION USP | 09-02-2016 | 10-28-2016 |
| ATW CHG | C | R2-APPRENTICESHIP-TEACHER AIDE | 03-15-2013 | 02-01-2016 |
| ATW CHG | C | R6-TGC BRAIN FITNESS | 04-15-2015 | 01-11-2016 |
| ATW CHG | C | R6-CULTURAL STUDIES 1 | 04-13-2015 | 01-09-2016 |
| ATW CHG | C | LEGAL RESEARCH | 04-11-2015 | 01-09-2016 |
| ATW CHG | C | R6-TGC INFLUENCE | 04-11-2015 | 01-09-2016 |
| ATW CHG | C | R6-POST SECONDARY PREP 101 | 04-11-2015 | 01-09-2016 |
| ATW CHG | C | R2-TGC INVESTMENT | 04-11-2015 | 01-09-2016 |
| ATW CHG | C | R6-SPANISH LEGAL RESEARCH | 04-11-2015 | 01-09-2016 |

# The United States Department of Labor

## Office of Apprenticeship

## Certificate of Completion of Apprenticeship

*This is to certify that*

### RODERICK GUNN

*has completed an apprenticeship for the occupation*

### TEACHER AIDE I

*under the sponsorship of*

## U.S. PENITENTIARY, ATWATER, CALIFORNIA

*in accordance with the basic standards of apprenticeship established by the Secretary of Labor*



_Secretary of Labor_

_Administrator, Office of Apprenticeship_

**FEBRUARY 1, 2016**
_Date Completed_



**MEN S.T.O.P!**

United States Penitentiary Atwater
P.O. Box  019001
Atwater, CA 95301

September, 1, 2012

Because of **Mr. Roderick Gunn** commitment to being the
**Solution To Our Problem**,
I am honored as the founder of the **MEN S.T.O.P!** Program to be
able to write this letter of **COMPLETION**.
**Mr. Gunn** has completed all course requirements and has upheld
the principles    and standard of achievement upon the grounds that
this program was founded.

He has sacrificed time, servitude, knowledge and understand. He
has been steadfast in aiding in the growth and development of
others like himself whom are dealing with the cycles of family
dysfunction, gang affiliation, drug abuse  and peer– pressure.

He is the definition of **positive Change**, a skilled **Leader**, a
**Public Speaker**, armed with the tools to **effectively Facilitate** in
any given situation.  It is with confidence that I recommend that all
those in need of his skills and services as a Mentor and Facilitator
take advantage of this individuals profound ability and experience.
It is my pleasure and honor to state the following that:

   **Roderick Gunn is a official MEN S.T.O.P!**
   **REPRESENTATIVE**

                    Sincerely, Demond A. Jackson
                    MEN S.T.O.P! Founder



*American Bible Academy*
*P.O. Box 1627, Joplin, MO 64802*
*E-mail:  info@arm.org*
*Websites: www.arm.org    www.abarc.org*

Dear Student,

We are so glad that you decided to be a part of the American Bible Academy (ABA) Bible correspondence courses! The ABA only offers eight courses and you have successfully completed them all. Congratulations!

We do not have a "final certificate" (or diploma, as we are not accredited) for the completion of all the studies, nor do we send out award Bibles. Also, there are no plans to produce further studies.

Your transcript is enclosed.

***Please*** let us know if your address changes so that we can keep your student file updated.

You, your family and friends can download a variety of Bible commentaries, textbooks, study guides, and Christian literature from our website. Please visit us on the web at www.abarc.org.

May God bless your efforts as you continue to study His Word!

Sincerely,

*Mrs. Gwen Wadell*

Mrs. Gwen Wadell
Registrar
American Bible Academy

AMERICAN BIBLE ACADEMY
P.O. Box 1627
Joplin, MO 64802

OFFICIAL STUDENT TRANSCRIPT

Roderick Gunn
REG# 55254-054
USP Atwater    Unit 4B
PO Box 019001
Atwater, CA 95301

STUDENT ID:        209634

DATE ISSUED:      8/26/2020

DATE ENROLLED: 11/03/2003

| COURSE NUMBER | COURSE DESCRIPTION | DATE COMPLETED | CREDITS | GRADE |
|---|---|---|---|---|
| 001 | The Gospel of John | 12/23/2003 | NON-CRD | 94 |
| 102-1 | Christian Doctrine, Vol. 1 | 2/24/2004 | 1 | 96 |
| 102-2 | Christian Doctrine, Vol. 2 | 6/01/2004 | 1 | 91 |
| 002-1 | The Book of Acts, Vol. 1 | 10/19/2004 | 1 | 96 |
| 002-2 | The Book of Acts, Vol. 2 | 8/23/2005 | 1 | 91 |
| 104 | The Gospel of Mark | 2/22/2011 | 1 | 96 |
| 105 | Galatians & Philippians | 4/05/2011 | 1 | 96 |
| 107 | Christian Doctrine, Vol. 3 | 8/25/2020 | 1 | 97 |

The Grading system used by ABA is as follows:

| | | | |
|---|---|---|---|
| A+ | 99-100 | C+ | 77-79 |
| A | 95-98 | C | 74-76 |
| A- | 90-94 | C- | 70-73 |
| B+ | 87-89 | D+ | 67-69 |
| B | 84-86 | D | 64-66 |
| B- | 80-83 | D- | 60-63 |
| | | F | 0-59 |

Not valid as an official transcript without the signature of the ABA Registrar or the ABA Director and the raised Seal of the American Bible Academy.

Signature: _Mrs. Steven Wadell_

Please visit our websites www.abarc.org and www.arm.org

ATTACHMENT C



U.S. Department of Justice
Federal Bureau of Prisons

*United States Penitentiary*
*Atwater, California  95301*

January 4, 2019

MEMORANDUM FOR WHOM IT MAY CONCERN

FROM:          F. Porras, STPS

SUBJECT:        Roderick Gunn #55245-054

Mr. Gunn has completed the Challenge Program at USP Atwater. It is an intensive 500-hour residential treatment program for participants with a substance abuse history or documented mental health history.  Program activities are scheduled Monday through Friday with the exception of federal holidays and institutional emergencies.  Program participants are routinely given assignments to be completed outside of regularly scheduled program activity hours.  Recovery and treatment are to be the primary focus at all times for individuals participating in the Challenge Program.  Program participants are encouraged to work and/or attend school outside of program hours.  Personal business needs to be handled outside of program hours.  Each participant is required to attend and actively participate in program activities, complete all assignments and demonstrate treatment progress in order to advance to the next phase.

The Challenge Program at USP Atwater is designed as a Modified Therapeutic Community (MTC).  Not only will Challenge participants learn from all of the treatment staff, but participants will interact and grow by observing their peers, listening to positive and constructive feedback from other community members, and by providing positive and constructive feedback to other community members. Participants interact with each other through a variety of community activities in order to grow and learn the importance of utilizing a support network.  The Challenge program staff members utilize a team approach for positive change; therefore, the Challenge Specialists collaborate on a daily basis.  Additionally, the CTS's use team teaching as a means of bringing program material to participants.

A modified Therapeutic Community is an intensive, long-term residential treatment program which has been modified to meet the special needs/issues of a correctional facility and its residents.  Therapeutic Communities operate from the assumption that substance abuse and criminal behavior are in part due to the belief that a person is or has been isolated/rejected from society.  Through living in a community setting and by utilizing a variety of intense, professionally directed interventions, an individual can learn behaviors that are healthy for one's life.  Healthy behaviors are considered to be the opposites of criminal behaviors.  Some examples of healthy behaviors are responsible, legal, empathetic behaviors and the ability to practice delayed gratification.

United States Penitentiary
Atwater, CA

# PARTICIPANT OF THE YEAR

presented to

*Roderick Gunn*

For his service and dedication to the
Challenge Program

USP Atwater CHALLENGE PROGRAM

December 21, 2016

Dr. G. Todd, Challenge Coordinator

United States Penitentiary Atwater

# Challenger of the Week

for the week of September 11th, 2017 thru September 15th, 2017

is presented to

## RODERICK GUNN

For showing the characteristics that exemplify the Challenge Program.
You have shown a true dedication to change and the community and staff
are better due to your involvement.



Dr. G. Todd, Challenge Coordinator



ATTACHMENT D



U.S. Department of Justice
Federal Bureau of Prisons

*United States Penitentiary*
*Atwater, California  95301*

March 4, 2019

MEMORANDUM FOR WHOM IT MAY CONCERN

FROM:          Dr. G. Todd, Drug Abuse Coordinator
               (Former) Challenge Coordinator

SUBJECT:       Inmate GUNN #55254-054

Mr. Gunn has been at USP Atwater since May of 2011. Since his arrival,
he has expressed interest in participating in the Challenge Program.
The Challenge Program is a 500 hour therapeutic residential treatment
program which focuses on individuals who have a reported history of
substance abuse and/or mental health concerns. Therapeutic
Communities operate from the assumption that substance abuse and
criminal behavior are in part due to the belief that a person is or
has been isolated/rejected from society.  Through living in a
community setting and by utilizing a variety of intense,
professionally directed interventions, an individual can learn
behaviors that are healthy for one's life. I was the Challenge
Coordinator from November 2016 until January 2019.

Mr. Gunn, exemplifies what the Challenge Program ultimately hopes
to achieve in each of its participants. The notion that change can
be difficult though obtainable, and despite making past mistakes you
do not have to be defined by them. I am confident that Mr. Gunn will
take the lessons and experiences he has learned so far and apply them
to his future experiences.

During his time in the program and since his graduation in January
2017, Mr. Gunn has taken an active role in sharing his solid knowledge
of program concepts as well a mentoring other participants in a vast
array of areas. As the Challenge Coordinator, Mr. Gunn played a vital
role in leading inmate facilitated programs and assisting in
leadership roles within the program. These included being a Rational
Self-Assessment (RSA) Facilitator, participant in the Challenge

Educational Resource Committee, Core Director, GED Coordinator, and
Newsletter Editor. Mr. Gunn was the second inmate to be nominated
for "Challenger of the Week" award in September 2017. This award is
presented to someone who has shown dedication to change and has had
a lasting impact on the community. He was also awarded "Participant
of the Year" in 2016. In May 2017, I created and implemented the
"Challenge Mentor Program." Here, a small group of Challenge
graduates who have demonstrated dedication to personal change, would
mentor inmates that were currently going through the program. This
group was approximately 5-6 men to which Mr. Gunn was (and still is)
an active member. Mr. Gunn will be a success upon his release not
because the road will be easy but because he possesses the necessary
skills (along with determination) to make it so.

ATTACHMENT E



U.S. Department of Justice
Federal Bureau of Prisons

*United States Penitentiary*
*Atwater, California 95301*

July 30, 2020

MEMORANDUM FOR WHOM IT MAY CONCERN

FROM:          Dr. M. Kost, Challenge Program Coordinator

SUBJECT:       Inmate Gunn #55254-054

I am writing this letter on behalf of Mr. Roderick Gunn, who is a
graduate and mentor of the Challenge Program at the United States
Penitentiary, Atwater, CA.  This program is an intensive, three
phase, 500-hour residential treatment program for participants with
a substance abuse history or documented history of mental illness.
Recovery and treatment are to be the primary focus at all times for
individuals participating in the Challenge Program.   Participants
are encouraged to work and/or attend school outside of program hours.
Each participant is required to attend and actively participate in
program activities, complete all assignments and demonstrate
treatment progress in order to advance to the next phase.

Mr. Gunn graduated from the Challenge Program in 2017.  In July of
2019 Mr. Gunn was selected to be a mentor in the community.  In the
Challenge Program we consider a mentor to stand out from other
graduates as an experienced and trusted adviser who demonstrates a
high level of integrity.  Mr. Gunn has continually engaged in
organizational citizenship behavior and demonstrates his commitment
to the Challenge community members.  As a mentor, Mr. Gunn is
responsible for serving as a role model and continuously assisting
other inmates in the program.

Mr. Gunn possesses a variety of positive qualities which are
recognized by myself and other treatment staff.  His actions
demonstrate that he has adopted the eight attitudes of the Challenge
Program (Gratitude, Responsibility, Objectivity, Willingness,
Caring, Honesty, Humility, and Open-Mindedness) and demonstrates
them on a daily basis in his interactions with staff and peers.

ATTACHMENT F



# BLACKSTONE CAREER INSTITUTE

1011 BROOKSIDE ROAD, SUITE 300, P.O. BOX 3717, ALLENTOWN, PA 18106-3717

July 7, 2020

Roderick Gunn  55254-054
U.S.P. Atwater
PO Box 019001
Atwater  CA  95301

Dear Roderick:

CONGRATULATIONS!  All of us at Blackstone Career Institute are proud to count you among our graduates.  We are pleased we could be part of your education and hope your time with us so far has been rewarding.  You certainly should be proud of your accomplishment.

As the Director, I know that you have worked hard and made some personal sacrifices to complete this course.  It indicates to me that you are committed to your studies and realize the role educational training can play in attaining your goals.

Our staff is genuinely interested in our students' success.  We appreciate when a graduate writes to let us know they are utilizing their educational training while working in their chosen profession.  As part of our continuing efforts to enhance the standing of Blackstone Career Institute as an important resource for quality education, we seek your insight into how we can improve our course.  If you have not completed the Student Satisfaction Survey I would encourage you to do so.

Included in your graduation packet you should find your certificate for the Blackstone Career Institute program completed along with your official school transcript.

Most of our graduates continue their quest for knowledge as life long learners by taking additional courses from Blackstone. Please see the enclosed offer outlining these courses and the special discount only for our graduates!

Again, congratulations on your completion and best wishes in all your future endeavors.

Sincerely,

Kevin J McCloskey
Director



# Blackstone Career Institute

Est. 1890

Awards this Certificate in

Legal Assistant/Paralegal

with Distinction upon

## Roderick Ricardo Gunn

who has fulfilled all the requirements prescribed by the School and is entitled to all of the honors, rights and privileges thereunto appertaining.

In Testimony Whereof this recognition of achievement is

Given this 7ᵗʰ Day of July 2020

President

Cathryn R. Bible, B.S., M.Ed.
Director of Education



# BLACKSTONE CAREER INSTITUTE

1011 Brookside Road, Suite 300, P.O. Box 871, Allentown, PA 18106-5017

## Student Transcript

### 31 Lesson Legal Assistant/Paralegal Certificate Program

915 Clock Hours

**Student** Roderick Gunn 55254-054
**Address:** U.S.P. Atwater
PO Box 019001
Atwater, CA 95301

**Student Number:** 08041645

**Enrollment Date:** 11/18 2019

**Completion Date:** 07/07/2020

| Text/Subject | Date Completed | Grade | Text/Subject | Date Completed | Grade |
|---|---|---|---|---|---|
| **Lesson: 1** | | | **Lesson: 8** | | |
| • Introduction To Law | 12/09/2019 | 85 | • Law of Private Corporations | 04/15/2020 | 95 |
| • Contracts Part I | 12/09/2019 | 90 | • Law of Partnerships Part I | 04/15/2020 | 100 |
| • Contracts Part II | 12/09/2019 | 100 | • Law of Partnerships Part II | 04/15/2020 | 100 |
| • Contracts Part III | 12/09/2019 | 90 | **Lesson: 9** | | |
| **Lesson: 2** | | | • Constitutional Law Part I | 04/15/2020 | 90 |
| • Law of Torts Part I | 01/22/2020 | 100 | • Constitutional Law Part II | 04/15/2020 | 90 |
| • Law of Torts Part II | 01/22/2020 | 95 | | | |
| • Law of Torts Part III | 01/22/2020 | 95 | **Lesson: 10** | | |
| • Law of Torts Part IV | 01/22/2020 | 100 | • Constitutional Law Part III | 05/22/2020 | 100 |
| **Lesson: 3** | | | **Lesson: 11** | | |
| • Criminal Law Part I | 02/10/2020 | 100 | • Legal Research Part I | 06/08/2020 | 90 |
| • Criminal Law Part II | 02/10/2020 | 100 | **Lesson: 12** | | |
| **Lesson: 4** | | | • Legal Research Part II | 06/09/2020 | 95 |
| • Real Property Part I | 03/03/2020 | 95 | **Lesson: 13** | | |
| • Real Property Part II | 03/03/2020 | 100 | • Employability Skills | 06/29/2020 | 95 |
| **Lesson: 5** | | | **Lesson: 14** | | |
| • Real Property Part III | 03/03/2020 | 95 | • Ethics | 06/30/2020 | 95 |
| • Real Property Part IV | 03/03/2020 | 100 | | | |
| **Lesson: 6** | | | | | |
| • Pleadings in Civil Action Part I | 02/28/2020 | 95 | | | |
| • Pleadings in Civil Action Part II | 02/28/2020 | 100 | | | |
| • Practice in Civil Actions | 02/28/2020 | 90 | | | |
| • Criminal Procedure | 02/28/2020 | 100 | | | |
| **Lesson: 7** | | | | | |
| • Wills Part I | 04/07/2020 | 100 | | | |
| • Wills Part II | 04/07/2020 | 90 | | | |
| • Trusts | 04/07/2020 | 90 | | | |

**Student Average: 95.32%**   ** FINAL **

This Document Issued: 07/07/2020

Blackstone Career Institute

By: *Valerie L. Behrle B.S., M.Ed.*
Registrar

ATTACHMENT  G



U.S. Department of Justice
Federal Bureau of Prisons

*United States Penitentiary*
*Atwater, California  95301*

November 15, 2016

To whom it may concern:

I am the Supervisory Chaplain of the United States Penitentiary at Atwater, CA. I have partially known inmate Roderick Gunn (#55254-054) as member of the Protestant faith group for the last 4 years, and through personal interaction as his Chaplain.

Mr. Gunn has shown a high level of spirituality and honest interest on his spiritual growth. He has demonstrated great ability to communicate with others and an honest concern to help other inmates on their spiritual journey. I have witness the character and lifestyle that Mr Gunn, has displayed as an inmate in this institution. He has served as a model to other inmates.

He has assisted the Religious Services Department, demonstrating a high level of responsibility and dedication on what he is committed to do. During his participation as a member of the Protestant fiath group I have witness his willingness to listen others people perspective and to speak into other lives experiences attaining a common goal to change.

I believe that given the right support system, correct guidelines, faithful mentorship and the necessary resources, Mr. Roderick Gunn, can demonstrate the ability to right his wrongs, and to contribute as a member of our society.

Sincerely,

Rev Carlos Gonzalez
Supervisory Chaplain
USP Atwater
#1 Federal Way
Atwater, CA  95301

ATTACHMENT H



U.S. Department of Justice
Federal Bureau of Prisons

United States Penitentiary
Atwater, California 95301

November 1, 2016

MEMORANDUM FOR WHOM IT MAY CONCERN

FROM:          Z. Niland, Education Specialist

SUBJECT:       Inmate Gunn, Roderick #55254-054

Inmate Gunn, register number 55254-054, is currently a GED tutor at United States Penitentiary Atwater in Atwater, California. Mr. Gunn has been working as a tutor and facilitator of Adult Continuing Education (ACE) courses since January 2013. Consistent with his job description, Mr. Gunn assists other inmates in classroom studies for all GED subjects. Throughout the course of Gunn's employment in Education, he has displayed good work ethics, respect towards staff and peers, and a commitment to promoting the advancement of his personal circumstances as well as those he tutors. He is punctual, transparent in his communication and diligent in completion of assignments. Inmate Gunn personifies how a model inmate should conduct themselves as reflected in his clear conduct history and hasn't had trouble following instructions.

Inmate Gunn has been a valuable asset to this Education department and given his skills and abilities, should prove to be a productive member of society upon reentry.



Certificate of Appreciation

given to

Roderick Gunn

for your dedication as a Tutor to the Education programs at USP Atwater

July 28, 2014

M. Chavez, Supervisor of Education



# Certificate of Recognition

This certifies that

## Roderick Gunn

has satisfactorily instructed

### Small Business Development

Consisting of 80 hours of adult continuing education over 4 semesters.

This certificate is hereby issued this 28th day of November 2014.

M. Chavez, Supervisor of education



Certificate of Recognition

This certifies that

Roderick Gunn

has satisfactorily instructed

MEN S.T.O.P. Leadership

Consisting of 20 hours of adult continuing education.

This certificate is hereby issued this 22nd day of November, 2013.

M. Chavez, Supervisor of Education

ATTACHMENT E

June 24, 2019

Hermelyn Gunn
7 Davidson Drive
Kingston 20,
Jamaica

## TO THE HONOURABLE JUDGE

Dear Sir:

**Re:**   Roderick Gunn
Reg. No 55254-054

___

My name is Mrs. Hermelyn Gunn, mother of Roderick Gunn, who has been in lock up for sixteen (16) years. Sir, I am a 70 years old mother with numerous medical issues, Roderick father is 75 years who has hypertension as well as glaucoma; we are both living on daily medication.

Roderick being so far away, we were only able to visit him once in his sixteen (16) years of incarceration on our visit to the United States. We are extremely worried about him and feel as if he's lost in the system; we do not know what is happening, how is the matter proceeding or if we will every see him again, this Sir is causing great distress and sleepless nights. His absence affects us very much and we are getting older not younger.

As such, we are pleading for a review of his case and consideration be taking that Roderick has been in the system for 16 years; we are getting older and don't wish to die before our son is released; his eldest son as loss years with him and got married without his father at his side, wish caused him great pain and unhappiness; while his youngest son as since graduated from high school and now working to help take care of himself.

Sir I beg of you, could you be lenient and give Roderick Gunn, clemency.

Kind regards,

Hermelyn Gunn

Mother

Rupert Gunn

father

1 | Page

*7Davidson Drive*

*Kingston 20*

*St. Andrew*

*Jamaica W.I*

**June 24, 2019**

Dear Sir/Madam

RE:Roderick Gunn

Reg,No. 55254-054

This serves to confirm and inform you that Roderick Gunn affectionately known as Gary is my younger brother whom I love dearly.

I have known Gary all my life and we had a close relationship. He is very caring, determined, kind, helpful and considerate. He is always willing to assist whenever anyone is in need. He is always there to lend support to his family members whenever in need and loves his children with all his heart.

Since he has been locked away his children have been affected immensely where they lack a father figure in growing up, it has impacted them as what little memories they have him is fading and they keep wishing he was around to see them grow. It is really heart breaking to see the impact it has on their ability to function academically and socially without wishing he was there to see them.

I really miss spending quality time with Gary as he is a fun loving and jovial individual who always put a smile on my face. There are days where I cannot function at work just thinking about him and his current situation. It is really stressful not being able to communicate with him as often as I use to and I would be very grateful if you could show favour in your review of his case as I look forward to getting some quality time with him again.

I know he has regrets with all that has happened to put him to put him where he is now and I am sure if given the opportunity he would not put himself through this ordeal as he has learned his lesson well and has gain more knowledge and understanding of life.

I am hoping that this letter this letter regarding my brother in his case will act as a positive and contributing factor when the court considers his case and will grant him the opportunity to be with his family again.

Yours sincerely,

Maxine Walters (Miss)
**Sister**
**Accounting Clerk**

25 Foresythe Avenue
St. John Heights
St. Catherine
Jamaica

Dear Sir:

Re:   Roderick Gunn
      Reg. No 55254-054

---

I am writing this letter on behalf of Roderick Gunn, Registration number 55254-054, my brother, and an inmate at USP Atwater.

It is so difficult at this time to think that sixteen (16) years has passed and we have never laid eyes on each other.  Sixteen years have gone by and so much had happened, the bond that we had has only continued only on paper.

I write this letter pleading for pardon for my brother, whilst he had made some mistakes in life, he was a great brother to me, always there willing to assist his smaller sister to get by.  I remember relocating to the United States for a short while for work, through the Ministry Labour and Social Security, Jamaica; it was the very first time I was ever travelling, going to an area where I had no family, total strangers and a new job.  I truly missed my brother at that time more than ever, as I know if he was around I would not have had to stumble through the first couple of months, in a strange place, around persons I don't know and, in a system, and climate that was totally new to me.  He would have been there as my guide right through.

My brother absence has affected me in so many ways, it is hard to explain; he is willing, jovial, creative, a shoulder to lean on and someone who would basically stop everything to take care of you, to ensure that you are ok, ensure that you are getting by.  Sixteen years have gone by so quickly, leaving an endless gap, marriages and births have taken place without his input and physical presence.  He is a leader in his own right and everyone admired his character and spiritual walk.

Roderick, affectionate know as Gary, as grown even more over the years, thus far shown a steadfast and resolute demeanor in moving past his mistake in a constructive and successful manner.  He was strengthening his relationship with the Lord and is now leading many other

inmates in that directions. He has learnt from his mistakes and uses all that he has learnt to guide others in the right path.

He is inspirationally and very motivating, and every chance he gets will offer his encourage in areas of my life where I needed it the most, I missed seeing his face, missed being able to hang out with him; I wished he was around to teach my son to dance, football, riding a bike and just simple games. I missed what Roderick takes to the family gathering, his humour, his smile, his general sweet demeanour.

I do plead that consideration can be given for clemency/pardon to Roderick Gunn, he has served sixteen (16) years away from his family and friends and I know that this has changed him tremendously, it has allowed him to value what is most dear, his children, his wife, his parents, his family and his friends. He has changed for the better and would be more of an asset to our community to encourage and motivate young men to stay on the right path, to teach of the impact a mistake can make on one's life and to instill good values.

Please reconsider his case, we all need him and wish he was out not just to be a father, brother, uncle or friend, but to be able to have the moments with our parents who are over their 70's and struggling physically.

Thank you.

Sincerely,

Karen Gunn-Lewis
Sister

Letters from Inmates

November 1st, 2020

From:

Raymond Lee Clifton

Fed. Reg. No. 00888-089

USP Atwater

P.O. Box 019001

Atwater, CA 95301

IN RE RODERICK GUNN, 55254-054:

    TO THE HONORABLE FEDERAL DISTRICT JUDGE:

        { <AND/OR TO WHOM IT MAY CONCERN>}

Dear Judge Pauley:

    My prayer is that this letter finds You sailing in "The Harbor of Success" with the grace of the American Eagle in the exercise of the weightier matters of the law: Judgment, Mercy, and Faith.

    First, I wish to tell you that, to the best of my knowledge, memory and belief, I have never written any letter of commendation for ANY prisoner [state or federal] in my forty years of incarceration with the United States Bureau of prison, or elsewhere.  Notwithstanding, I am not hesitant to write such a letter and present it to you in the case at bar at the present time for the special person coming before you known to me affectionately as: "Pastor Gunn."

*1.*

As my "yoke fellow," he far excels not only ALL the men I have known in prison for the last forty years--but also, ALL those men I have known outside of prison in the twenty-four years preceding. To my chagrin and shame, Pastor Gunn far excels me by integrity and meekness, also....

Before I came to prison in 1982 [for multiple counts of "armed bank robbery"], I was an Honorably Discharged veteran of the U.S. Navy [drafted from reform school called "Jordonia" located in Nashville, Tennessee]--who served his country with pride during the Viet Nam Era--as well as in the subsequent Israeli Yom Kippor War of October 1973--then later in the 1974 Cypriot War [between the Greek (Christians) & Turks (Moslems)--aiding and abetting in the recovery of the ambushed and assassinated deceased body/bodies of our distinguished American Ambassador and his retinue:  The Honorable Roger P. Davies, et. alli; later I was involved in the Iran/Contra Affair....

I do not boast my own glories or short-comings, but rather, present this inferior history to You, Honorable Sir, to permit You to exercise already enlightened ability in applying credence to the verity of my opinion about this beloved young man I know as "Pastor Gunn."

2

I have known Pastor Gunn many years now {nine years I think it is--I grow feeble in my memories} at this place we call: USP Atwater.  Although I CANNOT tell You why--or who or what event it relates to--I can tell You that Pastor Gunn has saved numerous mens' lives while at this prison myriad times-- even at the point of presenting and subjecting his own life to extreme harm and peril in the protection and preservation of others....

Not only has Pastor Gunn stood against the unrighteous acts of many within this place, he has caused many to become righteous in this place through the things he believes in and that he has taught--thus not only protecting human bodies--but transforming human spirits as well.

He was, and is, a wonderful tutor in all matters educational--has taught so very many of which I have personally witnessed--not just in matters secular--but matters biblical and spiritual--to the benefit of Your's Truly, also.

I do not exaggerate or bloviate--rather, I inadequately extrapolate--You may believe what You wish....

I do not know the causes nor judgments that led Pastor Gunn to my location--nor do I care what they were.  We have a saying here:  "It is not what others say about you when you

3

come to prison that is important or that truly matters; it's ONLY what they say about you when you leave prison that is...."

Here's what I say about Pastor Gunn:

"If I should die here in this dark place from COVID-19, or some other cause(s) or acts of God--I am okay with that. However, IF I have ever earned any right to ask for an award from my country for my inferior service to it in times past, I would ask ONLY this one thing: `Allow this young man { <Pastor Roderick Gunn> } to return home to his wife and children--to his terrestrial family--Yours and mine....'"

This humbly prayed-for-remedy would truly make my last years "Golden" and give a special meaning to the epitaph of my own miserable life. Permit me to smile before my death here...

I truly am not an eloquent man--nor do I seek to impress You with my vociferous verbosity--but ONLY to convey upon You my deep feelings and affections for this wonderful, young man {Pastor Gunn}--who I love as my own son. On the one hand, I'd hate to see him go--but on the other I would rejoice--knowing that the country we call America still possesses that spirit of compassion and mercy that I am yet willing to sacrifice my life for--even now....

I remember a time {some thirty years ago

4

approximately} when certain persons convicted of first-degree murder served on the average thirteen years, six months in prison before being granted parole. Very few ever came back to prison again. I know this to be fact [as expert witness] because I have been here these many years within these congregations of the condemned-- entitled The Department of Justice [falsely-so-called in my opinion]. I am reminded that many major drug traffickers serving life sentences are now having their sentences shortened to time served--I have watched them leave.

If You asked The American People WHO they would choose to leave prison and return to the community: Pastor Gunn or myself--they would choose Pastor Roderick Gunn.

In ancient times, another person could choose to serve another man's sentence. If there are those people who believe Pastor Gunn still owes a debt to society for his crime { <if imprisonment could ever be sufficient or just recompense to any victim--I trow not> }, then permit me to volunteer to pay it. Place Pastor Gunn's remaining debt on my account--I will pay it. As I said, under the ancient law of proxy-conscription, such remedies were permitted under law [See, Gospels of John 18:38-40; Matt. 27:15-26 {same}; Luke 23:1-25; Acts of the Apostles 2:13-15 {same}; The Epistle of Paul to Philemon Chptr 1, verses 10-21 (Hebrew Law recognized and adopted by the Romans); cf. Book of Isaiah, Chptrs. 53:1-12, inter alia]. Perhaps this ancient law of compassion and mercy still exists for the federal courts to authorize and exercise

5

to permit such agreement under the common law [28 USC § 1651;
FRAP 23(a-d)]?  If so, I permit such judgment upon myself in
Roderick Gunn's place, and set my seal herein to this effect.
I pray that his debt be placed on my account....

I close praying as always that You, Honorable People,
as God's Judge(s) upon the earth I believe You to be--continue
to exercise righteous judgment, mercy, and trust--with the
power, the strength, and the might of the American Mountain
Lion { <which I know you always do and shall> }--....

I remain Your servant and nothing else,

/s/ Movant and Affiant

FURTHER AFFIANT SAITH NOT AT THIS TIME....

Witness: _Mateo R. Morales #09022-041 MM_

Witness: _B. C. Left #17319-091 S.c.p._

6

Dear Judge,

My name is Dennis Capps an inmate at USP Atwater. I am writing this letter on behalf of Mr. Gunn. Mr. Gunn is a fellow inmate here at USP Atwater USP. I know it is not customary for another inmate to write on behalf of another inmate, but I feel led by God to write to you.

Mr. Gunn is not your ordinary inmate. I would rather call him a brother in Christ for the way he carries himself. I met Mr. Gunn at our Chapel here where he is an inmate pastor almost five years ago. The way he spoke of God and the relationship he shares with Jesus drew me to him. He has one of the most genuine relationships I have ever seen. He has become one of my dearest friends.

Mr. Gunn has helped lead many to Christ and he treats every race the same which is rare in prison. Mr. Gunn spends every minute of his time when he isn't at work helping others. He has been a key leader in our church as well as a role model.

Mr. Gunn wears many hats here. He was my mentor in the Challenge Program, Activity Director, Editor in Chief of the Challenge Newsletter, Life Coach, Paralegal, GED tutor, RSA instructor, Re-entry class, and many other classes he taught. I don't know how he manages to do all he does. I list just a few of these to show how Mr. Gunn spends his time.

Mr. Gunn spends every minute of his time bettering himself and helping mentor those around him. Mr. Gunn is the most respected inmate here at Atwater. Mr. Gunn has the respect of inmates as well as staff. His integrity and his walk with God is known by staff as well as by all the inmates.

Mr. Gunn has made me want to be a better parent and has helped me with being a better parent. Mr. Gunn has shown me how to bridge the gap that prison can put between a father and his children. I hope someday my children and I can have a relationship like he has with his. Mr. Gunn has led his children to Christ and is more involved in their lives than most parents that are outside with their children.

Mr. Gunn has shown me how to be a better man and a better f ather through prayer and example. If anyone here deserves to be home with their family it is Mr. Gunn. As much good as I have seen him do here, I can only imagine what God has for him out there. I hope and pray one day I can be as good of a father, husband, and servant for Christ a him.

I too have a lengthy sentence and spend every minute of my time to better myself and return home to be with my family. I pray Mr. Gunn's impact on my life and countless others shows he is a worthy man of integrity and deserving of a second chance. May God Bless you and Yours.

Dennis Capps

39049-044

Brother Gunn

This is what God put on my heart to write for you. It was a powerfull experience.

I know I have a lot more work to do surrendering to the Lord. I have anger and pain. But there is less now after this recent issue.

I hope I see you again. You are more than my Christian Brother You are my friend.

Love & Respect
Travis

Your Honor

      I met Mr. Gunn "AKA" Brother Gunn
in march of 2019. Brother Gunn is a black
man. I am a white man with an Aryan
gang member past. Ive been in the B.O.P
for 10 years and I have gone to church
and sought God the whole time. I have
seen a lot of racisim in the chapel
from black christians with an agenda.
Brother Gunn is not a racist. Brother
Gunn is not only my christian brother,
he is also my friend. And the only
agenda Brother Gunn has is Jesus
Christ and obediance to God.
      God's Holy Spirit dwells in Brother
Gunn. And those are not casual, cliche
words. It was June, maybe July 2019.
I got word that a rival/enemy was
comming on the next bus. I told my
cell mate that I was going to ambush
the man and smash him as soon as
he hit the compound. Definantly not
the christian way, but this is the
U.S.P. and smashing this dude was the
safest, easyest way to deal with the
situation.
      A couple hours later I got
a message from Brother Gunn to meet
him on the yard that night. Brother
Gunn almost never goes out the yard

2

So I met Brother Gunn that night and he baptized me with the Holy Spirit right there on the yard. And that's a good thing Cause I needed that. After praying and reading the Word, I asked Brother Gunn if he knew what was going on with me. He did NOT know. No one knew about my situation except me and a couple other white men.

So I told Brother Gunn that I had an enemy comming on the bus and I was going to smash him when he got here. Brother Gunn said, Absolutely not! Brother Gunn told me to trust the Lord and have faith ~~that~~ that God would work this out. So I trusted God and me and that former enemy no live peacefully and respectfully togethe here at U.S.P Atwater.

I believe this incident is an example / a practice run for what God Almighty wants to do with Brothe Gunn out there on the Streets where it really matters.

Brother Gunn is a true man of God. He loves the Lord and he loves his nieghbor. But Brother Gunn is no push over. There is no lying cheating, stealing or worldly sinful

3

foolishness with Brother Gunn. If you are out of line with God's word Brother Gunn is gonna let you know about it. And Brother Gunn leads by example. He is obedient to Gods word and all the rules and regulation of the facility.

Whatever Mr. Gunn was in the past, he is not that anymore. Brother Gunn is a man who God trust to lead others on the path of righteous ness in this evil U.S.P. And I believe the work that Brother Gunn has done here in this prison is training to prepare him for more important things.

With respect
Travis Dally

Oct, 23, 2020

Your Honorable Judge:

I am not sure if my name is at all relevant as much as my character, as this letter isn't about me as much as it's about the character for whom I would even bother to take the time and effort to write for. I do, however, think it important to give you a hint of the mindset of the writer. I have been in prison for Hobbs Act robbery for the past 24 years and more than halfway into my 25th, during that time, I have had my faith in man challenged to the breaking point. I have become a rot of cynic, believing the worst of people, due to my experiences in the last quarter century, which has been spent in the highest security prisons. These places are inherently violent and dangerous, places where you watch every person with an air of skepticism and wariness. I met Rodrick Gunn almost five years ago and viewed him with that same skepticism and wariness that has become second nature to me. However, my skepticism didn't take long to dissolve and my wariness vanished. I would find myself wondering how he found himself in this situation. I've met many of con artist, but the truth always comes out in the details, those seemingly innocuous acts that reveal a person's true self. This also occurred with Mr. Gunn. Since being able to observe and eventually befriend Mr. Gunn, I've developed an admiration and respect for his character. He has been a model and inspiration of where I would like to be, as a person. It is my belief that "character" is what gives quality to a persons goals and achievements. Strong character can make a good criminal, if such a thing can exist, or strong character can make a special

friend, father and community leader. Rodrick Gunn has a strong character and there is no question in my heart or mind that he stands for his faith in God, the love for his family and children, and he has shown leadership of men in the community that he has found himself in. He's been these things without expectations of compensation. Just the satisfaction of doing what he believes is right. I would hope that you will extend a fraction of the kindness and faith in Mr. Gunn as I have witness him show to the people whom he comes in contact with every day.

Sincerely yours, Stacy M.

Haynes

-2-

DEAR JUDGE:

MY NAME IS QUESTER STERLING AND I'M WRITING THIS LETTER IN REGARD OF RODERICK GUNN. I HAVE THE PLEASURE TO KNOW MR. GUNN FOR THE PAST 9 YEARS AND I'M MOST GRATEFUL TO CONSIDER HIM A FRIEND, A BROTHER AND A MENTOR. DURING THIS PAST 9 YEARS SINCE I KNOW HIM HE AD HELP ME OUT IN DIFFERENT SITUATIONS IN MY LIFE HE'S BEEN A SPIRITUAL LEADER TO ME AND HELP ME MAKE BETTER DESITIONS IN THIS ENVIROMENT AND IT IS WITH GREAT HONOR THAT I SAY THAT PEOPLE LIKE HIM ARE THE PEOPLE THAT CAN SEE THE BETTER IN PEOPLE LIKE ME AND I FEEL BLESSED TO COUNT ON MR GUNN AS ONE OF MY FRIENDS. HE IS THE TYPE OF PERSON THAT TAKE THE EXTRA MILE TO HELP A PERSON IN NEED AND NEVER ASK FOR NOTHING IN RETURN. AND ALL I CAN SAY IS PEOPLE LIKE THAT ARE TO LITTLE IN THIS WORLD AND I BELIEVE THAT WE NEED MORE PEOPLE LIKE MR. GUNN IN THIS TIME OF NEED SO PEOPLE LIKE ME CAN HAVE THE HOPE TO MAKE IT IN THIS DIFFICULT TIMES. WITH ALL THIS I JUST WANT TO SAY IS THAT I'VE BEEN BLESSED IN KNOWING AND HAVING MR. RODERICK GUNN IN MY LIFE AND CALL HIM MY BROTHER.

WITH MY MOST SINCERE RESPECT
THANK YOU!

QUESTER STERLING SUAREZ

PROVERBS 17:17

A FRIEND LOVETH AT ALL TIMES,
AND A BROTHER IS BORN FOR ADVERSITY.

October 30, 2020

Joseph Reeves, Reg. No. 10293-036

USP Atwater

P.O. Box 019001

Atwater, CA 95301

RE: USA v. RODERICK GUNN, REG. NO. 55254-054

      Dear Honorable Judge,

      Hello, my name is Joseph Reeves. I am a prisoner incarcerated at USP Atwater, CA with a man most other people and staff refer to as "Brother Gunn."

      I don't know the man he was years ago-I've never met that man-though, I've heard he was a lot different back then. In my 22 years in the BOP, I've seen a lot of men I would not want to live around me or my family or loved ones back home. I was once a dangerous man myself.

      However, with that being said, there are men who with time and the proper mindset, environment, mentoring, and will to succeed, can do more to become an asset to society.

      I personally believe Brother Gunn is of the individuals-rare men-that will be an asset in the real world. Through his faith in God, rehabilitation, participation in the Challenge Program as a Mentor and Staff Writer for the Prison Newspaper, he has gained the respect and trust from both the staff and fellow prisoners.

      Please consider Brother Gunn for release, if you please. I thank you for your time and attention.

Kindly,

*Joseph Reeves*

Joseph Reeves

November 17, 2020

Dear Judge:

I am writing on behalf of Mr. Roderick Gunn. I met Mr. Gunn here in U.S.P. Atwater Education Department. He was then a G.E.D tutor and also the law clerk for that department. We both later graduated from the challenge program and later became mentors to help continue teach the program's philosophy and principles to our community peers.

As an inmate here in U.S.P. Atwater and also a mentor, Mr. Gunn always stood apart from other peers--largely due to his commitment to the program principles and his faith in Christianity. By being the pastor here, he would dedicate his time outside the Challenge Unit to the Chapel to conduct the Christian service. he also introduced me to the Christian faith, and it helped me immensely as I needed it to help me to go through some of my tough times. I will always be grateful to him, and still for his teaching and guidance on keeping me focus and continue on the path.

I have never witness him to be disrespectful or inappropriate to anyone, whether staff or inmates alike. On several occasions he would discuss his love for his family with humility and vulnerability. He has good family support and they are everything to him. Everyone like him here and among the community peers knows to go to him for any advice or to just talk so they could leave with some wisdom. We all look to him as our pastime role model.

He also displayed initiative by helping create a new peer-run resource group from inception. The program, C.O.R.E.,

To whom it may concern

      I am a 31 year old Black male from San Francisco, Ca. I grew up in an urban neighborhood. Its not often that i've been able to see a good positive role model. Since the time i met Mr. Gunn his behavior has been exemplary. He has gone out his way to help me and mentor me. Mr. Gunn is a man of faith and strictly abides by the law of christianity. That is very difficult while being in prison and the enviornment and culture prison provides.

      Mr. Gunn assisted me with my law work and struggles. I had no idea about the law but he sat me down and gave me his time, energy, and effort. He owed me nothing and i had nothing of monetory value to offer him, but yet and still out of the kindness of his heart he helped me. I appreciate him greatly. I am a better man today because i met Mr. Gunn. Here at Atwater (USP) we call him "Brother Gunn". A story that reminds me of "Brother Gunn" is found in the Holy Bible in the Book of Luke chapter 10 verse 29-37. Whether a christian or not Brother Gunn shows love and support for all races, age groups, cultures, and religious beliefs. His kindness and love is a rariety in prison. Thank you for allowing me to express a short

version of my outlook, on a great humble man.
My name is Reginald Elmore #14399-111

Respectfully,
Reginald Elmore
R. Elmore

October 27, 2020

Dear Judge:

I have known Brother Gunn for about two years, both in and out of church. The man I am writing to you about is not only one of the best Christians I know, but hands down one of the most genuine, caring, and selfless individual that I have ever met.

In church Brother Gunn opens our services with ten to fifteen minutes of inspiring thoughts that sets the tone for our weekly services, then asks one of the brothers for a opening prayer before turning the time over to the Pastor. On Tuesdays, it is much the same when outside volunteers come in. When we had volunteers come in for Kairos, a weekend revival, Brother Gunn was the one who's in charged to support volunteers set up, pass out snacks, meals, and clean up.

There has never been a time when I had a question about the gospel that my friend didn't have an answer or know where to find it. Outside of church, Mr. Gunn was a mentor in the Challenge Program when I got there. Not only was he a mentor to a hand full of guys, he also taught at least one class for the education department, gave challenars and worked eight hours a day in the commissary. On several occasions I have asked for Gunn's advice and never was he too busy to take the time to give an honest answer even if it wasn't the answer I wanted to hear.

In closing, I would like to say that I am grateful to know Roderick Gunn. I am thankful for all that he has done for

me and what he has taught me. I can honestly say that I am a
better man, a better father, and a better Christian as a
result of the influence of Brother Gunn.

Thank You For Your Time

Aaron Blake

November 17, 2020

Dear Judge:

I am writing on behalf of Mr. Roderick Gunn. I met Mr.
Gunn here in U.S.P. Atwater Education Department. He was then
a G.E.D tutor and also the law clerk for that department. We
both later graduated from the challenge program and later
became mentors to help continue teach the program's philosophy
and principles to our community peers.

As an inmate here in U.S.P. Atwater and also a mentor,
Mr. Gunn always stood apart from other peers--largely due to
his commitment to the program principles and his faith in
Christianity. By being the pastor here, he would dedicate his
time outside the Challenge Unit to the Chapel to conduct the
Christian service. he also introduced me to the Christian
faith, and it helped me immensely as I needed it to help me to
go through some of my tough times. I will always be grateful
to him, and still for his teaching and guidance on keeping me
focus and continue on the path.

I have never witness him to be disrespectful or
inappropriate to anyone, whether staff or inmates alike. On
several occasions he would discuss his love for his family
with humility and vulnerability. He has good family support
and they are everything to him. Everyone like him here and
among the community peers knows to go to him for any advice or
to just talk so they could leave with some wisdom. We all look
to him as our pastime role model.

He also displayed initiative by helping create a new
peer-run resource group from inception. The program, C.O.R.E.,

is an original concept in an effort to support other community members in mastering treatment verbiage and philosophies. Mr. Gunn became the lead facilitator and maintained a keen sense of tailoring the program to specific styles and language barriers.

Additionally, since the COVID-19 modified operation here at U.S.P. Atwater, the Warden moved all the essential workers to one Unit. Mr. Gunn, who is one of the U.S.P. Commissary worker is among the essential workers to move to such unit. While there, he was able to maintain and support the Challenge community by his continuation of providing articles for the Newsletter and editing it for publication on the Bulletin Board. Mr. Gunn also encourage other inmates to get involved in writing articles geared to rehabilitation. He never fails to send us words of hope, resilience from a story that inspire us to do better, and become a better person.

As the Editor in Chief of the Newsletter, his thoughtfulness and his creation of the newsletter have a profound effect on the community. Mr. Gunn will have left an enduring, positive impact on the Challenge Program and everyone that knows him.

Respectfully,

Piyarath Kayarath

To: Whom It May Concern:

Re: Roderick Gunn

My name is Kevin Pearson, and I got here at USP Atwater in
March 2018. Being a man who is trying to change and rearrange
my life through the love of God, it was hard for me to focus
due to the lock-downs and the nonsense that goes on in the
prison. I got saved in 2017, so that God could control my life
because me being in control wasn't working at all. I started
going to church to focus on the things that matters most,
which is serving God and others. That's where I met Mr. Gunn
who is a God-fearing and honest man who is good at legal work
and doesn't mind helping all people, no matter what was going
on. He always show love and respect to all due to the things
that were going on in his life. I understand that God had full
control of him, and he didn't seem to stress or worry about
anything.

I have so much love and respect for him and all he's done for
me. His positive talk and energy is infectious and i thank God
each and everyday for bringing him into my life; he is truly
an amazing man of God who goes above and beyond for all and
never complains. He has helped me in so many ways and to say
that I appreciate him more than words could say would be an
understatement.

I know for sure that when God frees him from this place
that he's going to be a blessing to this world and I'm honored
to have met him, and I pray that when I'm released in 2021,
that I see him because he's being a blessing in my life and

1

I'm very grateful.

Mr. Kevin Pearson

10/28/2020

Dear Judge:

In regards to inmate Roderick Gunn, he's a good man and a
mentor. he has helped me with my GED class and he taught me
Small Business Courses, and I can refer to him at any time
about school or business or religion because he is a god
fearing man. From my observation of him, he's a genuine
person, always willing to help everybody; he is a good
listener, and offers sound advice on any subject. I've known
him for four years and I can't think of one person who would
have any bad thing to say about him. So I believe some
compassion is required for good people, please help him.

Raymond Smalls

Dear Judge:

My name is Sean Nichols and I am currently an inmate at USP Atwater. I am a Christian and am working very hard at becoming the person God meant for me to be. I firmly believe that He has a purpose for my life and orchestrated circumstances in order to help me grow into a better person, even using the consequences of my mistakes for good purpose.

I am writing this letter on behalf of Mr. Gunn. Due to a bad decision I made in FCI Tucson I ended up in USP Atwater. Because of Mr. Gunn, what was a devastating consequence of my action turned out to be an incredible blessing from God. Mr. Gunn has been a shining light in this darkness of Atwater. I have never met a better teacher of not just the word of God, but life lessons in general.

I have known Mr. Gunn for almost 2 years and he has greatly inspired me to do better and to be better from the first time I heard him speak. He has done the same for countless others. He truly has a God given gift to make people believe in God and themselves. Mr. Gunn is one of the most respected and trusted inmates at Atwater by both staff and inmates. He is completely selfless with his time and spends most of it for the benefit of others teaching them about God, preparing and teaching numerous classes, or helping with legal work.

Mr. Gunn is an inmate preacher and one of the most inspirational speakers I've ever heard. I thank God everyday that He put Mr. Gunn in my life because I am most definitely a better person for it. He has been instrumental in giving me the confidence that I can stay out of prison. I can only

imagine the awesome good he could accomplish in this world if given the freedom to do so if anybody deserves to go home it is Mr. Gunn.

Sincerely,

Sean Nichols

Dear Judge:

First and foremost I would like to thank you for taking the time to read this letter and giving me the chance to elaborate on how important Mr. Gunn is to me and many others at this institution.

My name is Gian J. Douglas, #17393-064. At one point in my life I was an active gang member. I was uneducated and never thought life was a gift. My only job and focus was to survive. I have been in and out of prison my whole life and never once have I got the message that Mr. Gunn has given that influenced my life on a daily basis now that I'm rehabilitated and believe in change.

The message and lesson that I require was respect. Mr. Gunn lead by example. The way he conduct himself at church is the same as in the class room where he help inmates study for G.E.D. Mr. Gunn is active in many different areas at this institution; he works in commissary and always have a positive energy about himself.

Gian Douglas

10/29/20

Dear Judge

I hope this letter reaches you in the best of spirit and
health. I'm reaching out to you in regards to brother Roderick
Gunn, to try to express the integrity, humility, and
kindhearted nature that he has displayed to myself and others
since the five years that I've known him. Being in a United
States Penitentiary, where violence is rampart, its hard for
young man like myself to find or look for someone to whom
could and would be a mentor or good role model.

I can honestly say that, for myself, Brother Gunn is
both. I first met Brother Gunn during Sunday church service.
The passion he displayed during the service when he speak of
the Lord really made me take notice and watch how he carried
himself. I later mustered the courage to ask Brother Gunn
about helping me fight my case on appeal, because of all the
other inmates I heard about him helping. Brother Gunn never
asked or accepted money from me for his services.

Brother Gunn's integrity when helping others is taken
seriously amongst men within the prison. He tells us to put
God first, always, and never sugar-coats what he can and can't
do to help. I've known a lot of men that put their lives and
freedom in Brother Gunn's hands. I think that says a lot in
this environment when most men have been taken advantage of,
hurt, and hopeless. The humility among inmates and staff has
earned Brother Gunn that utmost respect that he gives and
receives.

Brother Gunn was one of the reasons why I enrolled and

Page 1

completed the Challenge Program. There were times when I was frustrated and going through things and felt like signing out of the program, until I would see how motivated and moving with purpose Brother Gunn was. So I kept at it and accomplished that goal. Brother Gunn's kindhearted spirit and words of wisdom keeps a lot of people around here, including myself, going and pushing through. I trust and believe in my heart that any blessings that are directed in Brother Gunn's direction, he deserves it.

He has blessed so many around him that it is just a matter of time before he is able to truly spread his word and knowledge, while enjoying the presence of his loved ones and making them proud at the same time. If anyone deserves relief it's Brother Gunn. He has not only changed at how he evolved but will be an asset to any community. With a chance Brother Gunn will become a true champion! Thank you for your time Your Honorable. Have a blessed day.

    Respectfully,

        Dominique Martin

        #18572-111

Page 2

October 23, 2020

USP Atwater

P.O. Box 019001

Atwater, CA 95301

IN RE: RODERICK GUNN, NO. 55254-054

Dear Honorable Judge,

I am writing this letter of character reference on behalf of Inmate Roderick Gunn, Federal Inmate No. 55254-054, USP Atwater, Atwater, CA.

Mr. Gunn was a participant in my financial literacy Adult Continuing Education (ACE) course here at USP Atwater, since 2018. Mr. Gunn was always on time, paid attention to detail, and was always kind and courteous to fellow inmates as well as staff.

In addition, Mr. Gunn was an ACE Instructor with his own courses entailing Release Preparation and others.

Mr. Gunn is a kind and gentle spirit. If there were more inmates like Mr. Gunn, the days would certainly be more enjoyable! I pray the Court will find it noteworthy to consider Mr. Gunn and his significant contribution to the prison community as a snap-shot of the contribution to come in society-at-large upon his eventual release.

I thank you for a moment of your busy schedule to peruse this letter.

Kindly,

Anthony Johnson, PhD(c)

USP Atwater

Letter of Charter

To: Whom it may concern,

My name is Wilbert McKreith, I am writing concerning my friend and Brother Mr. Roderick Gunn, who is within the church of our Lord Jesus the Christ. I have known brother Roderick Gunn for over three years, and to me he has always demonstrated a man of Godly charter. Roderick Gunn has taken time to help me personaly in becoming a better man, he has made a good impression on me. Roderick Gunn is my role modle when it comes to man of charter. I do not know what he has done in the past, however I am a living witness and can testify that Roderick Gunn is a strong man in his faith, walk, talk and in good charter with me and others. I am proud to call Roderick Gunn my friend and Brother in Christ.

Roderick Gunn is a speaker at my church and has been for the three years I have known him, he is an excellent speaker. I have never heard any bad talk about brother Gunn. People do change, people do repent, people do turn around for good and stay that way. I can testify to this fact, Roderick Gunn is a law abieding man and has a deep conviction within his soul to do what is right, and how do I know this, I can feel it and see it when I am around him. Once again I must say Roderick Gunn is an up standing man in my community, I am proud to know him.

I wish him the best in life, he is a success, I know Roderick Gunn is following the right order in life and will be a blessing to others, as he has done for me over these three years. I thank you Roderick Gunn, thank you for changing my life for the better and I will like the world to know, it is because of you and your prayers for me, why I am a man of good charter in the community. I thank Roderick Gunn for being an up standing role modle to me always, I fine no fault in him!

Yours truly

Wilbert McKreith

Wilbert McKreith 2021

Quincey Pearson

P.O. Box 019001

Atwater, Ca 95301

11-04-2020

Your Honor,

I am writing this letter on behalf of a man known to
me as Brother Gunn. My name is Quincey Pearson and I have had
the absolute pleasure of knowing Mr. Gunn for about 2 yrs and
during that time both he and his legacy here have left a great
impression on me. The reason I say this is because here in
Jail much like in society when you attach labels to your name
you become more scrutinized. However, unlike society the
penalties for falsehood are a bit more extreme. When Men such
as Mr. Gunn allow themselves to be called Brother then the
population automatically  thinks he's hiding something dark
from his past so they look for chinks in that armor and I can
attest that this man has few if any and they are un noticed. I
met Mr Gunn here in the challenge program. I was having some
legal issues that needed to be brought before the court. I was
introduced to Mr. Gunn by and he immediately welcomed me with
open arms. He helped me file the correct paperwork and respond
to the Government which led to a sentence reduction on my
behalf. Mr. Gunn has made a very positive influence on not
only the inmates here but the staff as well. All his work is
done Pro-Bono and to my knowledge he neither request nor
accepts payment. I'm unaware of the length of time he's been
here but I myself have known him almost to years. Once I got
into this program I had a meeting with the Head Doctor Dr.

(1)

Kost and I asked her what would be required of me to obtain a
favorable recommendation and for placement once I graduated
the program and she stated to me that If I was serious and
Modeled the actions of Mr. Castro or Gunn then she would have
no problem with my request and that's why I say Mr. Gunn has
made an impression upon the staff as well. He has authored
several positive articles about being locked up and pursuing
positive change. He Speaks at the Graduations and is always
available for positive enlightenment. He also teaches the
release preparation class. I can sum it all by simply saying
Mr. Gunn is someone I look up to and inspire to be more like.
Even though I've known him only a brief time he is someone
that I have grown to admire and enjoy. I've never really
spoken with him about his crime however his actions speak
volumes about his readiness for society and I would have
absolutely no problem introducing him to family or leaving my
children with him.

Sincerely,

Quincey D.

Pearson

Dear,

Your Honor

I am writting this to you on behalf of Mr. Roderick Gunn. There is so many things I can say about him. But I will speak on my expirences with him. He has always been my go to guy. His door is always open. I have learned so much from him. He is my mentor in the Challeng Programs. He showed me how my Criminal Thinking led me to a life of Crime. Showed me the tools to change my thinking errors. I is not a time when I needed him and he wasn't there. I am about to go home. The things that Mr. Gunn showed me I have implemented and I am going to continue to use in my life. I will no longer take up your valuable time. But I ask you to really look at Mr. Gunn. If there is anybody who deserves a second chance Mr. Gunn does. Thank you for taking the time to read this.

Sincerly yours,
Erick D. K
Erick D. King

Erick D. King #15860-033
U.S.P. Atwater
P.O. Box 019001
Atwater, CA
95301

To Whom It May Concern. My name is J.C. Collins, inmate number 23428-009. This letter is in regards to my very close friend and Brother in Christ, Mr. Gunn. I met Mr. Gunn several years ago here at Atwater in the Chapel we have here. I noticed he wasn't only an inmate, he was a mentor and a true follower of Christ, a speaker for the Chapel, whose knowledge of the Lord has bee a gift to us all.

He opens the Chapel with his words of inspiration and speaks to us with a full heart. I look up to him and to be honest I've learned so much from him. I've never met a man who can speak, and with his words they gave me hope. I am very religious and turned my life around and am a child of God.

Mr. Gunn is someone who when you go to church, you can't wait to go back to sponge more of his knowledge of the word of God. I've had an experience with him that made my hair stand up on the back of my neck. Right then, I knew this man has the gift of the Holy Spirit in him. He is a godly man who in his presence you can feel that feeling. I don't know the full extent of his reason of incarceration. But I can tell you this, no matter what it is, if you knew this man you would know that he deserves another chance. And I tell myself when I speak to God, that I want to be like him.

This man is worthy and if given another chance, I can guarantee you he will change peoples lives like he did mine if given that chance to reintegrate into society. I promise you, you will not regret in doing so. And I pray for his freedom.

1

Thank You

J.C. Collins

November 6, 2020

Dear Judge:

My name is Jacoby Walker and I am writing this letter in
reference to Mr. Roderick Gunn. First, I must say thank you
for giving me a moment of your time to speak about Mr. Gunn. I
have known him for a little over two years now, and what I
have found out about him for myself and through other inmates
around this  prison is that he is a caring person and would
give  you the shirt off his back.

Since I have known him he has done nothing but try and
help me to better myself while helping me to get out of
prison. I mean he didn't really know me, but he is a good
friend of my codefendant when my codefendant was housed here
at USP Atwater. Your Honor, I understand that we are  here in
prison because at some point in our lives we committed a
crime. I have seen the growth in Mr. Gunn since we have
become acquainted. One thing I know, he is a God-fearing man
who deserves another chance at life. I am almost sure if you
see him in your courtroom, it wont be because he is in trouble
again. It will be because he has become a paralegal and
always helping someone else. Mr. Gunn is a small frame man
with a big heart. It is a wonder he carries that big heart in
that small frame.

Mr. Gunn is also a mentor to myself and to others in this
prison. I have learned from him how not to be angry, but to
check myself in different situations and how to deal with a
matter in a more calm manner. Mr. Gunn carries himself in a

Christian like manner. I am a Muslim, but has learned from Mr. Gunn's mentoring, that made me look at myself and see when I am wrong and not to blame every situation on others. But look at myself and how I could have handle the problem in a better manner. I pray that you decide to grant Mr. Gunn some relief. There isn't a better or kinder person who deserve a second chance at life more than Mr. Gunn. God bless you.

Sincerely,

Jacoby Walker

# 03723-027

[In Regard to a motion for sentencing reduction pending in
Your Court, case no. SI O6 Cr. 9II (WHP)    ]


Your Honor

My name is Mark Anthony Clearman, and I have been incarcerated
since April of 1991. I am serving a life sentence for
violating Title 21, §841(b)(1)(a) conspiracy to distribute. No
guns or violence charges, however 2 prior state convictions
used as sentencing enhancements. Judge If i were going to
court today", I would be receiving a 5 to 7 year sentence. I
am now age 64, 5-21-56. I wonted you to know a little
something about me before I get to the point of this letter,
which is Mr Gun.

Mr Gun asked me if I would right a letter to You as a
reference for him. Judge my immediate reaction was to laugh
out load!. My thoughts were what could someone like me in my
situation, possible say to a Federal Judge that could be
beneficial to this man. But out of gratitude and respect for
Mr Gun i agreed to try. Judge I can say this in all honesty, I
have been incarcerated close to 30-years and I've met over a
thousand prisoners. Yet I have met under 10", that I believe
are truly remorseful for their past illegal transgressions,
and that have spent all of their incarceration bettering
themselves through education and spiritual growth, and in
service helping others. For the past 8 years that I have known
Mr Gun at USP Atwater, he has worked for the Education

Department as a GED Tutor, He is a Paralegal, and a Minister
in the Chapel. He is also a mentor in the Challenge Program
which is a 500-hour live in self improvement program, and one
of the BOP's premier programs. Mr Gun has always tried to lead
others by setting a positive example, and assisting others in
anyway he can. Judge if you knew the effort he has put forth
in rehabilitating himself over the past numerous years, and
see his daily efforts in such a negative environment "as I
have, Judge you would have very little doubt, "If any", that
if given the opportunity Mr Gun well be a humble law abiding
citizen, and a grateful asset to free society.
Judge i was convicted for sales of illegal drugs, and I and my
family are paying a extremely heavy price for those actions.
Whatever, I am not a habitual liar, nor a con man. I say what
i mean" and mean what i say. If i did not completely believe
that what i am saying to be true about Mr Gun, Judge I
wouldn't be saying it, and wasting your time or mine.. Thank
you your Honor for taking the time to read this letter.

Respectfully submitted
Mark Anthony Clearman
95638-012, USP Atwater
PO Box 019001 Atwater
CA 95301

*Mark Clearman*

*11 - 21 - 2020*

8:30 am
10-18-20

Mr. Gunn

How are you doing Brother U pray Blessed I am writing this letter
for you and to even it my Concern about how much of an amazing
Man, Father, Friend and Mentor you there been to people than) out you
Life and the time you have been in Prison, I met you 5 yrs ago
in Church I knew i had to be around you an listen and learn from
you once we got closer our friendship, relationship took off iseen
all the love, Kindness, Meekness you and that's very hard to

First in a Place like This you have Impacted my life and my family's.

an Other in a very Special way with all the Love an Support

you Help People with Education Dept, The Challenge Programs, Church

really list Goes on. We all here at Atwater Prison Pray that you

get your Fair chance in the Courts to get those Charge's over-

turned So you Can Get Home to your Loving family that

Has been missing you. Love you Brother Gunn God Bless you

Vincent Hudson

November 2nd, 2020

Re: Mr. Roderick Gunn

Your Honor,

When I first met Mr. R Gunn, I didn't know he had the time he has. Why, because he didn't act like it. He is always upbeat, positive, helps others for nothing in return and lives his life by Faith and Righteousness from what I have witnessed and experienced.

Since meeting Mr. Gunn, he has had a profound affect on my outlook, my thinking process and my life in general. I am able to talk to him about anything and not worry about being judged or ridiculed. I can ask him for advice or his opinion and know that he will give me righteous advice with no ulterior motives.

He has inspired me to join him in writing in the Challenge Newsletter, which is a newsletter in which we write encouraging articles in hopes of inspiring the men of USP Atwater to change their lives, their attitudes and better themselves in order to become better men, fathers, sons, husbands and upon release productive members of society and leave their criminal lifestyles in the past where they belong.

Your Honor, there are people who we meet in the course of our lives we wish we would have met a lot earlier because of what that person brings to it. Mr. Gunn is one of these individuals and I believe had I met him sooner I would have avoided a lot of the pit falls, bumps and scrapes that I have

been through during my incarceration. Why do I say this, because he is always positive, gives sound advice, sets a great example to follow, has integrity, is honest, and the most important thing to me is that his righteous talk actually matches his walk. It is rare in these confines to find a Brother (and I don't use that word loosely) who talks righteousness and lives it in his daily life and anyone who crosses paths with Mr. Gunn will be better for it as I have.

I whole heartedly believe Mr. Gunn deserves to be given a second chance at life. Not just because he has helped me and countless others, but because he talks the talk and actually walks the walk. I believe he will be a great asset to society at large and to those he will be able to help with his Adopt One Foundation and Lyrica Project; which I hope to be able to assist him in anyway possible.

In short there are those who I have seen released and I think to myself "He'll be back. He hasn't learned a thing nor has he changed." Mr. Gunn is not one of those individuals. He falls into the category of those who are released and you know they will be successful because they have used their time incarcerated to better themselves, change their mind-set, attitudes, lives, learned their lesson and have a desire to help others and be productive members of society. Mr. Gunn falls into this group and deserves an opportunity

I pray you will find it in your heart to give him a second chance to make amends and help keep others from following the same path he, I, and countless others have taken, and be an example to the rest of us who are still incarcerated that if we dedicate our time incarcerated to real

rehabilitation we can and will change for the better and will be recognized for it and possibly rewarded with our freedom.

Thank you for your time.

SINCERELY AND RESPECTFULLY,

Kofi Orleans-Lindsay

Nov. 12, 2020

Your Honor,

I am writing in reference to Mr.Roderick Gunn, I have known Mr.Gunn for 5 years. For two of those years he was my mentor in The Challenge Program and I have come to know Mr.Gunn as a man of integrity and for having a strong will for dedication. In the time that I was blessed to be in his presence, he has shown me how to be a strong individual who is capable of shouldering immense responsibilities. For example, Mr.Gunn wrote numerous articles for and edited the prison newsletter while maintaining a work detail and maintaining his responsibilities as a senior mentor within the program. If not for Mr.Gunn's encouragement and support I may never have stepped outside of my comfort-zone and shared my thoughts within the pages of the newsletter.

Mr.Gunn has proven by example that we are in control of the narrative of our future, and to get assure a positive future we have to make positive decisions. He remains cheerful in the face of daunting obstacles and has ceaselessly offered assistance without pay. A rarity here. Like the time when a challenge community member was frustrated with his lack of understanding for legal jargon, Mr.Gunn sacrificed his Saturday mornings to aide this man. The guy had never

experience that type of kindness and was unable to express his gratitude. I should know because that guy was me.

Furthermore, Your Honor, if there is a person more deserving of a second chance, it is Mr.Roderick Gunn.

Respectfully Sent,

Burie Garrett

#06065-007

P.O.Box 019001

Atwater, CA 95301

To whom it may concern,

This is a letter intended for the purpose of prospective character analysis on behalf of a one Mr. Gunn. Coming from not only a fellow inmate but someone who has come to know Mr. Gunn on a level of relativity to some common hardships. My name is Dominique Wells and I have come to know Mr. Gunn through fortuity, when I just so happen to be talking to a gentleman about some questions I had regarding my appeal that no one seem to have any explanation or even clarity on. So the gentleman mentioned another gentleman that is well respected around the prison by both executive staff, officers and inmate alike, in that he is very knowledgeable in depth in subjects of law with an astute comprehension also, and he is a pillar in the church and in this community, and whats more is he is well versed in Hobbs Act and 924c's, that I should talk to him. So I asked how can I find him, he responds, "just ask around," now I must note that I have 1,354 months or 112 years for Hobbs Act and 924c's and my appeal was in abeyance at this time and there seem to be that a lot of laws and bills were passing that I discern would be of help to me. Turns out that Mr. Gunn also has Hobbs Act. Everybody I asked had nothing but wonderful things to say about Mr. Gunn and with a sort of fervent respect and admiration for him for any number of reasons. Some if not most seem eager to say that he has helped so many mitigate the complexities of comprehending the art of practising law. Among others, relationship upheaval, hardships, family troubles, giving the voice of sound reason when conflicts arise, call to account those who were wrong or telling who was right without taking sides just to name some—

I personally know of, from both staff, officers and inmate the same.

So, the time came for commissary and a gentleman comes and asks my name, I tell him, and he introduces himself as Brother Gunn and as the commissary came to an end, he already heard that I was looking to seek his counsel. So he produced three or four pages of notes that were his answers to my questions that I had not even had the chance to ask, but were clearly meant for me and addressed to me and whats more, he also had case law for me to study but was relevant to my case and potentially compel relief. Didn't even know the man, have never spoken to him either, but he took the time to write some notes to clarify what I was looking and asking. That was the first time, then came my personal troubles. So there I was, getting off track, going to the S.H.U., came out and was despondant, irrational, blaming everything else. He helped me to look back on things and help give me an understanding that can only be looked at as Holy. from that day on, I had a more spiritual view and got to reading the Bible and even went to church. That was a hand when I was only looking for a finger.

So later down the line, with his help and advise and at the behest of his instructions, and a few letters to the Ninth Cir., my appeal came back denied in part and remanded in part for a resentencing.

I know I perhaps wont be able to change minds, but my hope is to give insight into the character of Mr. Gunn and perspective to just keep in mind. This is just a small token to show my gratitude. in the form of this letter with the prospect

that it will get the chance to reach the right hands and eyes and plant seeds in the right minds, for a man that has put in the time, given back to so many, and devoted his time to helping and giving to others, three fold. He has put his life the long way to the lord and in His hands and thinking not of himself but was and is compelled with an almost zealous resolve to help others as if from a higher calling. And it is sincere, not for a profit, but from his heart.

That is not even an iota of what I can write on Mr. Gunn about his character. Just a brief cognizant telling of an experience with a gentleman I have come to have a deep rooted respect for.

for when the time comes that he will get relief.

Sincerely and Respectfully

Dominique Wells #49353-048

X Dominique Wells    This 23rd day of november 2020

Uncontested Divorce Hearing



**CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND**

401 Bosley Avenue, P.O. Box 6754
Towson, MD 21285-6754

Main: 410-887-2601
Fax: 410-887-3062

**To:** RODERICK GUNN
1 FEDERAL WAY, INMATE 55254
UNITED STATES PENITENTIARY
ATWATER, CA 95301

| | |
|---|---|
| **Case Number:** | C-03-FM-20-002068 |
| **Other Reference Number(s):** | |

**JANET GUNN VS. RODERICK GUNN**

Date: 10/28/2020

## NOTICE OF HEARING/TRIAL

Please be advised that the following events have been scheduled in this case:

| Date | Time | Type of Proceeding |
|---|---|---|
| 12/18/2020 | 09:00AM | Hearing - Uncontested Divorce |

Remarks:   *THIS HEARING MAY BE HELD REMOTELY*

Any postponement request must be filed in accordance with MD Rule 2-508 and addressed to the court address above.

Attorneys/parties shall notify this court immediately when a case settles before a scheduled event.

CC-008 (Rev. 08/2012)                    Page 1 of 1                    10/28/2020 3:26 PM



**CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND**
401 Bosley Avenue, P.O. Box 6754
Towson, MD  21285-6754

Main: 410-887-2601
Fax: 410-887-3062

**To:**  RODERICK GUNN
1 FEDERAL WAY INMATE 55254
UNITED STATES PENITENTIARY
ATWATER CA  95301

**Case Number:**    C-03-FM-20-002068
**Other Reference Number(s):**

JANET GUNN VS. RODERICK GUNN

Date: 11/13/2020

## NOTICE OF REMOTE UNCONTESTED DIVORCE HEARING

The following hearing has been scheduling in **the County Courts Building, 401 Bosley Avenue, Towson, Maryland**:

Date    DECEMBER 18        Time    9:00 A.M.

---

### To join the hearing:

Go to https://www.zoom.us/ OR dial-in using the phone number 833-568-8864

Meeting ID: 160 389 5585
Passcode: 05866733

To appear by video on Zoom, you will need to have an electronic device with an internet connection.  If you do not have access to internet connection, you may still participate using audio only on your phone.

You may use a smart phone, iPad/tablet, or webcam/built in camera with sound and video.  You will also need to install the free Zoom App before the conference begins.

Additional information on how to join can be found at: https://support.zoom.us/hc/en-us/articles/201362193

---

All parties are to bring all necessary documentation, which may include Md. Rule 9-206 Child Support Guidelines Worksheets and/or Md. Rule 9-207 Joint Statement of Marital and Non-Marital Property, to the hearing.

**Please refer to the Information Desk or the Assignment Boards on the first floor of the Courthouse for your Hearing Room designation.**

**\*ATTENTION ALL ATTORNEYS AND PARTIES:  If for any reason this matter is now a Contested Divorce action, or if you have any questions regarding this Notice, please call the Civil Assignment Office at (410) 887-2660.**

**PLEASE NOTE:**    **Postponement Policy:** All requests for postponement of this hearing must be submitted in writing to the Civil Assignment Office, with a copy to all counsel/parties involved.

# ATTACHMENT J



**U.S. Department of Justice**
**Federal Bureau of Prisons**

---

*Office of the Chaplain.*                          United States Penitentiary
                                                   Atwater, California 95301

                                                   June 18, 2019

MEMORANDUM FOR ALL CONCERNED

FROM:    K. Reid, Staff Chaplain

SUBJECT:   Inmate Character Reference

My name is Rev. Dr. K. Reid. I have the distinct honor of
serving at USP Atwater as a Staff Chaplain. I came to the Bureau
of Prisons (BOP) after serving nearly 11 years of Active Duty as
an Army Chaplain. I joined the Army immediately following 911.
Anticipating a conflict in the Middle East, I availed myself and
civilian ministry to serve our nation's finest Soldiers on the
Battle Fields of Iraq and Afghanistan. Presently, I serve in the
Army Reserves where experience has afforded me the opportunity
to humbly wear the rank of Major.

I came to USP Atwater in February of 2016. As a Staff Chaplain I
regularly preach, counsel and interact with inmates on a daily
basis. As a re-entry staff member, we look for those inmates
that have clearly taken ownership of their previous actions and
put into practice the numerous re-entry courses we have to
offer.

A number of years ago, Mr. Gunn, entered the Prison System and
received the Registration number of 55254-054. The Penial System
deemed it necessary to remove Mr. Gunn from society, family and
close friends in hopes of "Rehabilitating" his Cognitive,
emotional and psychological instability.

Mr. Gunn reflects the embodiment of those changes society hopes to experience. He currently serves in various tutoring positions ranging from GED to College level courses. To elaborate specifically in the many areas Mr. Gunn serves his fellow inmates would be a battle in futility. Mr. Gunn is respected by inmates, CO's and executive staff alike.

As a Pastor, I look for inmates to take full responsibility for their actions which led to incarceration. Mr. Gunn reflects the ownership worthy of immediate release. If given the opportunity to experience life beyond the confines of these institutional walls, Mr. Gunn will restore dignity to himself, his family name and positively impact the young man in his community going forward. Release NOW! None of us would regret that decision.

Respectfully,

Rev. Dr. K. Reid

Staff Chaplain, USP Atwater

# ATTACHMENT K

Ashley Nellis:



Marc Mauer and Ashley Nellis/*The Meaning of Life: The Case for Abolishing Life Sentences*

As the chart makes clear, a person's propensity to commit a crime — in this case, a robbery — is at its highest around 20 years old. But it drops quickly after that. In his 30s, a person's chances of committing a robbery drop to 25 percent of what they were at 20. In his 40s, the chances drop to less than 12.5 percent. In his 60s, the risk nearly vanishes.

There are exceptions, like lifelong serial killers. But they're few and far between.

Virtually no one in criminology disputes the age-crime curve. Nancy La Vigne, vice president of justice policy at the Urban Institute, **previously told me** it's "pretty well established in the literature."

This shouldn't come as a surprise to most people, particularly those already in their 30s, 40s, or above. Think about how likely you were as a teen to break the law, with underage drinking, using illegal drugs, shoplifting, getting into fights, and so on. Now think about how likely you are to do that today, assuming you're older. Regardless of whether you got caught in your teen years, you are likely an embodiment of the age-crime curve.

John Pfaff, a criminal justice expert at Fordham University and the author of ***Locked In: The True Causes of Mass Incarceration and How to Achieve Real Reform***, **previously told me** there are a few reasons for the age-crime curve.

"Some of it is physical and hormonal: Testosterone levels go up, testosterone levels go down; violence goes up, violence goes down. Some of it is purely physical: Even if I was as aggressive now as I was 20 years ago, I'm 44 — things are slow, things ache a bit more," he

explained. "But some of it is also social: Getting married is a pathway out of crime; finding a career is a pathway out of crime. So the longer we keep people in prison, the longer we tend to undermine the ways these people mature and age out of crime as they get older."

Other evidence backs this up. In 2017, David Roodman of the Open Philanthropy Project conducted an **extensive review of the research** on longer prison sentences. He **concluded** that "tougher sentences hardly deter crime, and that while imprisoning people temporarily stops them from committing crime outside prison walls, it also tends to increase their criminality after release. As a result, 'tough-on-crime' initiatives can reduce crime in the short run but cause offsetting harm in the long run."

In short, longer prison sentences can actually make people more likely to commit crimes in the long term.

At the same time, locking people up for long periods of time is very costly. There's the actual financial cost of putting people in prison, which the Prison Policy Initiative **estimated** at $182 billion for the US in 2017. There's also the social cost of people being ripped away from their families and communities; as one example, the New York Times **calculated** in 2015 that for every 100 black women not in jail or prison in America, there are only 83 black men — what amounts to 1.5 million "missing" men who can't be there for their kids, family, or community while incarcerated.

It's these kinds of costs, along with the evidence that long prison sentences are ineffective, that's led some criminal justice reformers, including Booker, to propose limiting if not totally ending life imprisonment.

# ATTACHMENT L



U.S. Department of Justice
Federal Bureau of Prisons

_____

*United States Penitentiary*
*Atwater, CA  95301*

October 31, 2016

TO WHOM IT MAY CONCERN

     I am the 4B Counselor, United States Penitentiary Atwater, CA. I am writing this letter on behalf of Roderick Gunn.  Mr. Gunn has been at USP Atwater since May 2011 and a member of the Challenge Program since December 2015.  He has completed several programs while here to include completing 4000 hours as a teacher aide, Smart Business, Money Smart, Victim Impact and Drug Education to name some with many more completed.  He has also been able to remain Discipline Free since February 2004 including being Discipline Free his entire time here at USP Atwater providing an exemplary Role Model for the institution and Challenge Program.  In my time as his Counselor I've been extremely impressed with his positive and professional attitude dealing with everything in his daily regiment within the Penitentiary.  He presently works as a GED Tutor and RPP facilitator in education.  I have great faith with Mr. Gunn's integration back into society being nothing but positive and productive.  I greatly appreciate your time, and, consideration concerning this matter.

R. Boudreau
Counselor
Federal Bureau of Prisons
United States Penitentiary
Atwater, California

ATTACHMENT  M





THE PATH

The PATH Program is an interactive workshop designed to challenge irrational and criminal thinking errors, and cognitive behavior. It is divided into four the components, Plan - Action - Tact - Harmony (PATH) that addresses participants behavioral errors to minimize the propensity to commit crimes. The program is methodically structured to help participants develop social skills, mental health, and criminogenic needs.

The PLAN component consists of three phases that will be facilitated in groups in CIRCLES to encourage positive face-to-face discussions and constructive feedback. This component will require at least three sessions.

The ACTION component will help participants to create incremental action-steps towards the fulfillment of their visions. This component will require at least three sessions.

The TACT component will help participants to develop synergy and people skills for relationship building and maintenance. This component will require at least three sessions.

The HARMONY component will help participants to create lifestyle balance through commitment and accountability. This component will require at least three sessions.



FACILITATORS GUIDE FOR P.A.T.H.

GOAL

All four components of PATH
explains how to restructure
ones life with intentional
PLANNING through ACTION-STEPS,
and how to become TACTFUL and
HARMONIOUS with personal
and social responsibilities.
It covers a wide variety of
subject-matter areas dealing
with character, attitudes,
beliefs, and thoughts
to counter negative behaviors.

SUMMARY

This is a user-friendly guide
to help facilitate, using the
PATH Interactive Journal.

FACILITATOR'S GUIDE FOR P.A.T.H.

Podium Exercises:  Podium exercises are exactly like Rounds, but you have the participant stand in front of the group. This is useful for breaking the ice at the first group session. Podium Exercise can also be utilized at the end of each component of PATH to afford participants the opportunity to share what they have learned throughout that component.

CIRCLES Exercise:  CIRCLES exercise should be utilized for face-to-face group sessions to help participants overcome anti-social behavior and fear of self expression. CIRCLES exercise will create an atmosphere of for interaction, transparency, trust, open-mindedness, and constructive feedback. It will also eliminate sidebar talking. CIRCLES is also designed to allow self-expression and to create a comfortable environment to share ones heart. Facilitators, be reminded: People don't care how much you know until they know how much you cares.

Open Discussion:  Ask the group a target question and facilitate an Open Discussion around that question. However, Open Discussions can quickly get off track, particularly with larger groups. Facilitators must make effort to keep discussions within the parameter of the targeted question as

it relates to the curriculum.

Key Concepts and Skills:  Key concepts and skills are the most important items participants learn throughout the program. Whenever you see the key icon, be sure all participants understand the concept and can perform the skill before proceeding.

Retrieve Form: The Retrieve Form icon reminds facilitators to remind participants to locate a specific Form relating to the subject being discussed. In the alternative, facilitators will be equipped with Forms to hand out if Forms are not accessible by participants.

Self-Examination Questionnaire:  After the facilitator explains the ground rules and the Program Agreement, participants must do the Self-Examination Questionnaire (Pretest). Then at the end of the Harmony Component, participants must do the Self-Examination Questionnaire (Post-test).

Facilitator's PLAN Guide

Phase 1:  My Life Now & My Life Later:

At Phase 1's first session, facilitator must give participants
a copy of the Program Agreements and go through them
individually. In addition, the facilitator must also explain
the following ground rules:

1)   Time consideration for each person to speak
2)   One speaker at a time
3)   Full participation

Facilitator must initiate the ice-breaking by introducing
himself by name, and state a goal he would like to achieve in
life, an error he regrets, and something he love to do. Then
participants should do likewise. This can be done in CIRCLE
format or behind the Podium. After the ice-breaking segment is
completed, participants must be allowed to do the Self-
Examination Questionnaire (Pretest).

Because Phase 1 will be conducted in CIRCLE format,
facilitator must allow participants to express themselves
freely, but within the guidelines established. Use day-to-day
events that participants can relate to as interaction topics.

Program Agreements

Punctuality - I agree to attend group and workshops in a
timely manner.

Confidentiality - I agree to keep confidential whatever is
discussed in group meetings and workshop gathering.

I-Statements - I agree to speak from the standpoint of my
personal experiences and opinions. I will not speak on behalf
of others or force my opinions and beliefs on them.

Feedback - I agree to give positive and honest feedback, as
well as being willing to receive feedback from others.

No Put Downs - I agree not to put down anyone or make fun of
another person's input. I will treat everyone with respect and
dignity, as I want to be treated.

ATTACHMENT N

THE ADOPT-ONE FOUNDATION

By: Roderick Gunn

October 1, 2020

A.   INTRODUCTION

Recidivism is a major topic among the three branches of Government, State, Local authorities, and society on a whole. There's a well accepted and proven fact that majority of those sent to prison reentered society with more witty ways to commit crimes. After 17-odd years incarcerated behind the walls of the federal prison, and my day-to-day experience and observation of inmates rebellion and defiance to authority, violence, and criminal activities that infested even the prison atmosphere, I can say "to change is indeed a choice, yet a very difficult choice to make in prison." Inmates are bombarded with peer pressure, fear of bodily injuries if demands are not met. This caused most inmates to give in to the pressure.

Federal and State law enforcement bodies pivots great focus and resources on rehabilitation, sentencing reform, and Criminal Justice Act Bills. Yet, based on the experience I have developed in the heart of the federal penitentiary, I have discovered that "prevention fares better and more effective than rehabilitation."

B.   PROBLEM STATEMENT

Today the absence of men from the average home has contributed significantly to family breakdown, social disorder in communities, crimes and imprisonment rates, unplanned pregnancies, drug abuse, and pre-mature deaths. More stunning

is the absence of godly men from the home, men who are aware of their responsibilities and accountability to God. This missing link has created an undeniable domino effect in society. It is also one of the main causes of countless demoralized activities in our communities, schools, and work-force.

The root of the criminal mindset is within, and sprouting is given greater opportunity in single parent or abusive homes where there are no godly and moral standards, or godly authority to nurture and shape children's character, attitude, perspective on money, relationships, and submission to authority. As a result, we have family breakdown, increase in crime rates, and ripples of destructive vices throughout communities and society at large. Children are in pursuit of their identities, meaning and purposes in life, but are traveling along unguided paths in this quest. They unwisely chose to follow sources that provides a skewed concept of truth and success. Their lives are being shaped by ideologies, biases, discriminative narratives, and veiled realities. They developed expectations from imagery desires and when such goes unfulfilled, they plummeted along mental and emotional paths of disappointments and emptiness. They they seek solace in drugs, violence, and self-infliction to soothe the pain or fill the voids. Over time, generational consequences are produced.

The decisions children and youths makes in the present will shape aspects of their family, community, and nation in the

2

future. If we commit ourselves to invest in the lives of the
fatherless, abused, and vulnerable children and youths today,
our efforts will effectuate changes in families, communities
and the nation's future in productive ways.

C.   THE BUSINESS DESCRIPTION AND MISSION OF THE
     ADOPT-ONE FOUNDATION

The Adopt-One Foundation will help to reduce family
disfunction, social disorder, crime, and incarceration rate.
Our vision includes locating specific categories of
children/youths such as fatherless, at-risk, abused, and those
vulnerable and are targeted for gang membership. We will
locate these children/youths and help them to fulfill their
God-ordained destinies. We will team them up with godly men,
known as "Substitute Fathers (SF) who will cultivate
relationships to help them in the growth and development
process in becoming responsible men of society. Our Substitute
Father-son relationships will continue until these young men
have developed the tools and experience necessary to venture
out on their own as young adults. By pursuing fatherless,
abused, vulnerable, and at-risk children/youths for manhood
development, the outcome will produce stronger family bonds,
rebirth of youths aspiration, and make the nation's vision of
a better society a reality. The Adopt-One Foundation will be
established as a non-profit organization.

The categories of children/youths targeted will be located
through data collection from local and state departments,

youth centers, churches, and community organizations. We will establish Adopt-One Centers and provide opportunities for Christian fellowship, career and trade workshops, and other extra-curriculums. Our Substitute Fathers (SF) volunteers are committed and godly men who knows the intrinsic and extrinsic value of fatherhood. Their personal experiences, achievements, and commitment to God, makes it possible to accomplish our objectives. We will also partner with other local organizations in the field of education, career, trade skills, business establishment, personal grooming, morals, ethics, and family matters.

D.   THE ADOPT-ONE SUBSIDIARIES

As part of the Adopt-One Foundation's mission, we will establish additional ministerial entities to reach other categories of the younger generation not included in the categories mentioned above.

   1.   The Lyrica-Project

In 2016, while attending our protestant service, a Christian brother shared a testimony about his four year old granddaughter, Lyrica, who was born with multiple heart defects and complications. When I saw her birth-photos, my eyes welled up with tears. The size of her body was incredibly small. She was so tiny and delicate, that for each heart-surgery the doctors had to enter from her back to perform surgery on her heart. Yet when I saw her later photos, my

4

heart was in awe of the miraculous sight.

I developed a vision to write an animated children's book
titled, "Lyrica, the Dragon Princess." The concept of the book
is to encourage special needs children that they are indeed
special in God's eyes, and are created for a divine purpose
regardless of their birth defects. Lyrica, the Dragon Princess
is about a baby dragon that was born with disabled wings.
After her parents left to seek wisdom for the reason their egg
was different from other dragon eggs, Lyrica's egg cracked and
she went in search for her parents, her identity, and her
purpose in Miracle Garden. Lyrica eventually developed mutual
friendship with the residents (animals, birds, insects, and
plants) in miracle garden who taught her about God, and helped
her to discover her gifts and purpose for her existence.

This animated book is designed with story-breaks called
"Interlude" that allows parent-child interactions. At each
story-break, a parent can communicate with the child with
subject-matter guides, questions, and suggestions along the
story line on that page. In addition, I have written a
supplemental book for parents with special needs children,
titled "If Only, But What If?" This booklet is designed to
help parents to see their children's condition from God's
perspective--that is, with meaning and purpose. "If Only, But
What If?" focuses on parents frequently asked questions about
their child's birth defects, and God's Sovereignty over the
formation of every child in the womb, and God's unlimited power
to fulfill His divine purpose in the lives of every

5

child--every human being. The purpose of this booklet is to help parents to embrace their children's life even with a birth defect, as a blessing from God and with that understanding, the parent will be in a better position to help the child to rise above their physical defects. Parents will be empowered to invest at greater levels in their children's lives in collaboration with God.

The mission of the Lyrica-Project is to show God's kindness to children with disabilities. To accomplish our mission, the following will be established:

*   Adopt-One Centers with equipment and programs to aid children with disabilities in the areas of education, career, trade skills, and leisure activities. This will include computer centers, music labs, libraries fitted with materials for the disabled.

*   Geographical family sporting events.

*   Specially designed transportation to aid the disabled in their daily commute.

*   Emotional and medical support for those struggling with disability.

Likewise, as part of the Lyrica-Project, disabled children and parents will be afforded opportunities to travel nationwide to share their story and ways they are making effort to fulfill the meaning and purpose of their existence. This will help other disabled children (and parents) to alleviate themselves out of the pit of depression. Every disabled child between the age of 3-15 will be issued an autographed copy of Lyrica, the

Dragon Princess. Parents who allow their children to
participate in the Lyrica-project missions, will be given a
free copy of "If Only, But What If?" Additional aspects of the
Lyrica-Project are:

* We will make effort to help disabled children to meet their
favorite celebrities or sports personalities.
* The project will make effort to meet at least one wish per
year for each child enrolled in the project.
* A Psalm 139 placard will be freely issued to parents with
disabled or special needs children. Placards will be developed
in various sizes such as card format, wallet size or wall
plaque design.
* All the characters from Lyrica, the Dragon Princess will be
manufactured as toys and presented to disabled and special
needs children as birthday gifts, Christmas gifts and gifts of
encouragement.

    2.   The Gift-Box Project

The mission of the Gift-box project is to assist children in
dire need of certain necessities regarding education, medical
equipment, food, clothing, and also to assists less-fortunate
teen mothers with financial and provisional aid. Files will be
created with pedigree information for children in need of
clothing, food, education and medical equipment. In fulfilling
our mission, the Project will provide gift boxes of various
sizes. In each box, a child's autobiography (with consent of
parent) will be available for donors to get an understanding

of the child's needs. The Gift-box project will hold monthly campaigns in communities to solicit assistance to meet each child's needs. An online platform will be created to inform potential donors of time and place of our 2-day monthly campaigns, and a detailed list of the items needed. This will be done without displaying the children's names, photos, or contact information online.

During campaigns, donors will be allowed to donate cash, or tangible items to fit each gift-box. An electronic Bulletin Board will be used at campaign sites to highlight the items requested per month, or quarterly. Because campaigns will run for a duration of 20days, donors can return with items they pledge to give and the recipients can pick up the items at the campaign sites with proper identification. Donors will also be allowed to mail in their donations to the foundation's local offices, or schedule dates and time, a Gift-box volunteer can pick up the item.

The Gift-box project will partner with various Children organization such as, but not limited to, Social Services, Juvenile agencies, Boys and Girls homes, and Foster Care agencies. The project will also adopt young teen mothers financial needs to support the new born baby and assist the mother to acquire her education, career, or a skill to secure employment.

In fulfilling our mission for teen mothers, every month we will issue a gift-box to teen mothers in need of items for

their babies. Financial support will be provided in the form of gift cards, and will be monitored to prevent abuse or misuse. Misuse gift-cards will require counseling sessions between young mothers and assigned Substitute Mother-figures from the local churches. If misuse of financial gifts continues, young mothers will be assigned trustees who will exercise authority over the financial affairs that Gift-box has adopted.

THE ADOPT-ONE FOUNDATION

"Change our Children, Changes our Future"

\*\*\*\*\*\*

ATTACHMENT O

TauTona Enterprise: This will be established as a Profit-entity that will promote and distribute child friendly products. Items 1-6 has already been completed and awaits professional editing and publishing. For item 6, I have developed a catalogue with over 200 female attire from elegant wear to causual wear, along with a few male garments and foot wear. Items 8-12 has been developed as ideas, but require professional review for the purpose of programming, specifications, and prototype development, and performance testings to prove their effectiveness.

1)  Paws Attack: Animation movie script (authored)

2)  God Laughs: Animation movie script authored)

3)  Delete: Action movie script based on a Navy Seal's pledge of loyalty and efforts to protect country from a biological weapons attack (authored)

4)  The Secrets of the Divine Absolutes (Book: authored)

5)  Lyrica, the Dragon Princess (Children's Book: authored)

6)  If Only...But What If?  (Book: authored)

7)  ANANI: Clothing Line with a difference.

8)  eScribe: A handheld device

9)  Palm 66: A handheld device for Christendom

10) VTec: Auto security system.

11) Dual-X: Cubicles with dual computer monitors for space-sharing, Dual-X Video Game console and accessories

12) iTab: Computerized touch-screen table for corporate offices

13) Outstretched Arms Ministry: An organization that will collect unwanted items from residents, refurbish and redistribute to those in need.

ATTACHMENT P

# Life without parole is not a solution to crime, pope says

## Sep 16, 2019



*Pope Francis poses for a photo during an audience with members of the Italian Prison Police in St. Peter's Square at the Vatican Sept. 14, 2019. The pope told prison guards, chaplains and officials that life sentences in prison without the possibility of parole are not the solution but a problem to be solved. (CNS photo/Vatican Media)*

Sentencing someone to life in prison without the possibility of parole is "not the solution to problems, but a problem to solve," Pope Francis told Italian prison guards, prison chaplains and officials from the Ministry of Justice. "If you close hope in a cell, there is no future for society," the pope told thousands of guards, chaplains, volunteers and their family members Sept. 14 during an audience in St. Peter's Square.

Among those present were two detainees who are serving life sentences, but are engaged in a formal process of recognizing the gravity of their crimes, making amends as far as possible and preparing to apply for parole. While protecting its citizens, the pope said, every society also must seek ways to rehabilitate those who have committed crimes and find ways to help them make positive contributions to society.

Making someone pay for the "errors of the past" cannot mean "cancelling their hope for a future," he said. In fact, everyone has "the right to hope." Saying he wanted to address all inmates, Francis said he had one word for them: "courage."

Have courage "because you are in God's heart, you are precious in his eyes and, even if you feel lost and unworthy, don't lose heart," the pope said. "You who are detainees are important to God who wants to accomplish marvels in you." Even behind bars, he said, "never let yourselves be imprisoned in the dark cell of a heart without hope; don't give in to resignation. God is bigger than every problem and he is waiting for you in order to love you." "Put yourselves before the crucifix, under the gaze of Jesus, before him with simplicity and sincerity," the pope told prisoners. "There, with the humble courage of one who doesn't lie to him- or herself, peace will be reborn, and trust in being loved and the strength to go on will flourish."

Francis was not speaking only figuratively. During the audience, he blessed the "cross of mercy" made by detainees in the Paliano prison, which the pope visited in 2017. The tall crucifix is decorated with "biblical scenes of liberation, ransom and redemption" and will be taken on pilgrimage to prisons throughout Italy.

Speaking to prison police, prison guards and prison staff, Francis publicly thanked them for their work, which is often hidden and poorly paid. "I know that it isn't easy," the pope said, "but when, in addition to watching over security, you are a presence close to those who have fallen into the web of evil, you become builders of the future, you lay the foundations for a coexistence that is more respectful and, therefore, for a society that is safer."

If a prison sentence has the ultimate aim of preparing detainees to return to society and contribute to their community as upstanding citizens, Francis said, then the guards who spend the most time with them must be models of treating others with dignity and respect. "I thank you for not only being vigilant, but especially for safeguarding the people entrusted to you so that in recognizing the wrong they did, they will accept avenues of rebirth for the good of all," the pope told the guards. "You are called to be bridges between the prison and civil society," he told the guards. By "exercising a correct compassion, you can overcome the mutual fears and the drama of indifference" that separate the inmates and wider society.

Medical Record

**Bureau of Prisons**
**Health Services**
**Health Problems**

Reg #: 55254-054                     Inmate Name: GUNN, RODERICK

## Current

| Description | Axis | Code Type | Code | Diag. Date | Status | Status Date |
|---|---|---|---|---|---|---|
| Unspecified unsatisfactory restoration of tooth<br>07/19/2010 10:59 EST  Patel, Dinesh DDS | III | ICD-9 | 525.60 | 07/19/2010 | Current | 07/19/2010 |
| Alcohol Use Disorder: Mild<br>12/15/2016 16:27 EST  Todd, Greta PhD/Challenge Coord<br>   by history, In Sustained Remission, In Controlled Environment | I | DSM-IV | F10.10 | 12/15/2016 | Current | |
| Cannabis Use Disorder, Mild<br>12/15/2016 16:27 EST  Todd, Greta PhD/Challenge Coord<br>   by history, In Sustained Remission, In Controlled Environment | I | DSM-IV | F12.10 | 12/15/2016 | Current | |
| Unspecified glaucoma<br>07/17/2020 14:25 EST  Vue, Pahoua Optometrist | | ICD-10 | H409 | 07/17/2020 | Current | |
| Myopia<br>07/17/2020 14:25 EST  Vue, Pahoua Optometrist | | ICD-10 | H5210 | 07/17/2020 | Current | |
| Astigmatism<br>07/17/2020 14:25 EST  Vue, Pahoua Optometrist | | ICD-10 | H52209 | 07/17/2020 | Current | |
| Essential (primary) hypertension<br>06/17/2019 16:56 EST  Giron, Leonardo MD<br>   New, will repeat BP tomorrow 06/18/2019 | | ICD-10 | I10 | 06/17/2019 | Current | |
| Abrasion of teeth<br>12/05/2019 17:01 EST  Cheung, Shirley DMD/Chief Dental<br>   Officer | | ICD-10 | K031 | 12/05/2019 | Current | |
| Follicular cyst of the skin and subcutaneous tissue, unspecified<br>06/17/2019 16:56 EST  Giron, Leonardo MD<br>   Tendon Cyst, Dorsum of the Left hand | | ICD-10 | L729 | 06/17/2019 | Current | |
| Injury  muscle/fascia/tendon at forarm level<br>02/13/2020 12:49 EST  Paltenghi, Richard MD, CD<br>   de Quervain's tenosynovitis, Right | | ICD-10 | S56909 | 02/13/2020 | Current | |
| Screening for unspecified condition<br>06/23/2015 13:45 EST  Dyer, Birgit FNP | III | ICD-9 | V82.9 | 06/23/2015 | Current | 06/23/2015 |

Generated 08/24/2020 13:01 by Bettencourt, Marlene RDH