UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
:
UNITED STATES OF AMERICA,                    :    **ORDER DENYING MOTION**
                                             :    **FOR COMPASSIONATE**
         -against-                           :    **RELEASE**
                                             :
RODERICK GUNN,                               :    06 Cr. 911 (AKH)
                                             :
                              Defendant.     :
                                             :
------------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

      Petitioner Roderick Gunn moves to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* ECF No. 325, 330, 339. Gunn contends that changes in applicable law, his efforts toward rehabilitation, current health conditions, and the COVID-19 pandemic constitute "extraordinary and compelling" circumstances warranting compassionate release. The Government opposes, arguing Gunn has not demonstrated "extraordinary and compelling" reasons justifying compassionate release, and that the 18 U.S.C. § 3553(a) sentencing factors weigh against a reduction in sentence. For the reasons discussed below, Gunn's motion is denied.

## BACKGROUND

      In August 2007, Gunn was charged on six counts in an eight-count indictment that charged Gunn and three co-defendants with engaging in a string of armed robberies, murder, and trafficking of narcotics. Specifically, Count One charged conspiracy to commit Hobbs Act robbery; Counts Two and Three charged separate attempted Hobbs Act robberies; Count Six charged using a firearm in furtherance of a crimes of violence set forth in Counts One and Three; Count Seven Charged aiding and abetting murder through the use of a handgun to kill an

individual in relation to Counts One and Three; and Count Eight charged conspiracy to distribute more than 1,000 kilograms of marijuana.

The indictment stemmed from Gunn's involvement with a group of individuals, including co-defendants Alton Davis and Derrilyn Needham, who committed armed robberies and attempted robberies of narcotics traffickers to steal drugs and money from the victims. Beginning in at least 2001, Gunn and some of his co-defendants carried out a series of armed robberies. In particular, the subject of Count Three was an attempted robbery, referred to as the "Wickham Robbery," that took place on January 21, 2003 at 4385 Wickham Avenue in the Bronx. During the Wickham Robbery, Gunn and his codefendants attempted to rob Mark Wright and Gary Grey. Ultimately, the robbery was unsuccessful because Gunn and his codefendants did not recover any money or narcotics from the premises and Mark Wright escaped. However, during the attempted robbery, Davis shot and killed Gary Grey while Grey was restrained with plastic straps. In addition to the robberies, Gunn and his co-defendants engaged in trafficking and distributing more than 1,000 kilograms of marijuana.

Originally, Gun was arrested and charged with certain specific robberies in 03 Cr. 1277. In that case, Gunn reached a cooperation agreement with the Government and as part of that agreement disclosed his participation in, and plead guilty to, certain robberies that included co-defendant Derrilyn Needham and others. However, before he was sentenced in 03 Cr. 1277, the Government learned that Gunn failed to disclose his involvement in other crimes, such as the Wickham Robbery, that involved co-defendant Davis. The Government then declared Gunn in breach of his cooperation agreement and charged him in 06 Cr. 911 with the crimes he failed to disclose.

2

On May 3, 2010, a jury acquitted Gunn of the Count Two attempted robbery but found him guilty of each of the other charged offenses in 06 Cr. 911. Judge Pauley sentenced Gunn to life imprisonment on the Count Seven murder charge; 20 years' imprisonment on each of Counts One, Three, and Six; and 40 years' imprisonment on the narcotics distribution count, all to be served concurrently.[1] Gunn was also sentenced to a life term of supervised release. He is currently serving the life sentence and concurrent prison terms.

On August 8, 2012, the Second Circuit affirmed Gunn's convictions and rejected his arguments on direct appeal. Gunn then sought habeas relief pursuant to 28 U.S.C. § 2255. *See* 06 Cr. 911, ECF No. 246; 14 Civ. 3228, ECF No. 1. After the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), Gunn filed a placeholder motion to vacate, set aside, or correct sentence on June 23, 2016. *See* 06 Cr. 911, ECF No. 271; 16 Civ. 4887, ECF No. 1. On March 7, 2017, Judge Pauley denied Gunn's petition for habeas relief on all grounds identified in his original habeas petition, but reserved judgment on the arguments pursuant to *Johnson*. *See* 06 Cr. 911, ECF No. 280. On September 6, 2019, Gunn, via counsel, requested leave to withdraw his habeas petition pursuant to *Johnson* and Judge Pauley approved the request the same day. *See* 16 Civ. 4887, ECF Nos 13–14.

Gunn is now in custody at USP Atwater. On October 13, 2019 Gunn filed a request for compassionate release with the warden of USP Atwater. On December 8, 2020, Gunn moved for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), though the motion was not added to the docket until June 28, 2021. *See* ECF No. 339. Gunn also filed a request to place the case on the docket for review, *see* ECF No. 334, and supplemented his motion two

---

[1] At the time, Gunn was already in prison for the charges to which he plead guilty in 03 Cr. 1277. Gunn has now completed serving the prison terms imposed in that case.

3

times. *See* ECF Nos. 330, 349. The Government opposes Gunn's motion for compassionate release. *See* ECF No. 340.

## DISCUSSION

### I. Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F.Supp.3d 613, 614 (S.D.N.Y. 2020). Section 3582 of Title 18 of the U.S. Code provides one such exception by permitting a court to modify a term of imprisonment "upon motion of the defendant" if the defendant has exhausted certain administrative requirements. 18 U.S.C. § 3582(c)(1)(A). Under these circumstances, a court may reduce the defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In so doing, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). "Application of the § 3553(a) factors requires an assessment of whether the relevant factors 'outweigh the "extraordinary and compelling reasons" warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence.'" *United States v. Daugerdas*, --- F. Supp. 3d ---, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations in original) (quoting *United States v. Ebbers*, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020)).

In the Second Circuit, the policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release, section 1B1.13 of the Sentencing Guidelines, "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). "However, courts

4

remain free—even after *Brooker*—to look to § 1B1.13 for guidance in the exercise of their discretion." *United States v. Burman*, 2021 WL 681401, at *5 (S.D.N.Y. Feb. 21, 2021) (internal quotation marks omitted); *see also United States v. Seng*, 2021 WL 961749, at *2 (S.D.N.Y. Mar. 15, 2021).

The relevant policy statement provides that a reduction is permitted if "[e]xtraordinary and compelling reasons warrant the reduction" and "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. So far as is pertinent here, the Application Notes to that policy statement provide that a defendant can make a showing of an "extraordinary and compelling reason" by demonstrating severe medical infirmity as follows:

(A) Medical Condition of the Defendant.—

> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover.

5

U.S.S.G. § 1B1.13, Application Note 1. Additionally, the Notes state that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.*, Application Note 3. The moving party bears the burden of proving that extraordinary and compelling reasons exist. *See United States v. Ebbers*, 432 F. Supp. 3d 421, 426–27 (S.D.N.Y. 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *see also United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) ("[I]f the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.") (quoting *Butler*, 970 F.2d at 1026); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

## II. Exhaustion of Administrative Remedies

A defendant seeking compassionate release must demonstrate that he has exhausted administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A). In the absence of a motion by the Director of the Bureau of Prisons, Section 3582 requires a defendant to make a request to the warden of the defendant's facility and wait at least 30 days before filing a motion for compassionate release. There is a split among courts in this district as to whether section 3582(c)(1)(A) requires a defendant to exhaust administrative remedies with respect to each issue raised in a motion for compassionate release. *See United States v. Salemo*, 2021 WL 4060354, at *2 (S.D.N.Y. Sept. 7, 2021) (Rakoff, J.); *see also id.* at *3 ("The Second Circuit declined to impose an issue-exhaustion requirement for asylum claims on the basis of similar language in the Immigration and Nationality Act") (citing *Lin Zhong v. United States DOJ*, 480 F.3d 104, 121–22 (2d Cir. 2006)). I agree with Judges Stein and Rakoff that the compassionate release statute "does not require that specific 'arguments' or 'claims' be raised." *United States v. Torres*, 464 F. Supp. 3d 651, 654-57 (S.D.N.Y. 2020) (Stein, J.).

6

The Government acknowledges that Gunn first filed a request for compassionate release on October 13, 2019 but argues that because Gunn has not provided evidence regarding the substance of that request, he has not sufficiently exhausted his claim. There is no dispute that Gunn filed the required application for compassionate release with the warden of his facility, or that far more than 30 days has elapsed since he filed his first request. Accordingly, I find that Gunn has satisfied Section 3582's administrative exhaustion requirement, even if his motion presents issues not raised with the Bureau of Prisons.

### III. A Sentence Reduction is Not Warranted for Gunn

Gunn is unable to meet his burden to show that "extraordinary and compelling reasons" and the Section 3553(a) factors warrant reducing his sentence. To begin, Gunn has failed to articulate a sufficiently extraordinary or compelling reason why his sentence should be modified. In support of his motion, Gunn argues that (1) the invalidity of certain of his convictions after *United States v. Davis*, 139 S. Ct. 2319 (2018); (2) COVID-19, (3) his medical history; and (4) his efforts toward rehabilitation constitute extraordinary and compelling reasons justifying release. None of these factors—taken individually or collectively—constitutes an extraordinary and compelling rationale for a reduction in sentence.

### A. Validity of Convictions after *Davis*

A motion for compassionate release is not the appropriate vehicle for Gunn to raise a challenge to the validity of his conviction. *See United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020). To the extent Gunn believes that *Johnson* and its progeny—including *Davis* and *United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020), *cert. granted*, 141 S.Ct. 2882 (U.S. July 2, 2021) (No. 20-1459), which is currently before the Supreme Court—justify his release, he should raise those arguments in a habeas petition. Indeed, he previously filed such a petition, though it has since been withdrawn. If Gunn wishes to advance his *Davis* argument, he

7

may do so through a habeas petition that complies with the applicable procedural requirements. However, even were I to consider Gunn's argument, I would likely reject it for the same reason I have rejected similar claims in other cases: "When a § 924(c) conviction rests upon both a conspiracy to commit Hobbs Act robbery and a separate valid § 924(c) predicate offense, the conviction remains valid, even after *Davis* and [*United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019)]." *Simmons v. United States*, 2019 WL 6051443, at *2 (S.D.N.Y. Nov. 15, 2019) (citing *United States v. Walker*, 789 Fed.Appx. 241, 244–45 (2d Cir. 2019)).

### B. Gunn's Rehabilitation Efforts

Gunn argues that he has taken responsibility for his actions and used his time in prison to rehabilitate, including by earning his GED before sentencing, participating in Adult Continuing Education (ACE) programs, and completing various religious programs. While I commend such efforts, rehabilitation through participation in prison programs and religious organization does not constitute an "extraordinary and compelling" justification for release. *See United States v. Torres*, 2021 WL 1131478, at *3 (S.D.N.Y Mar. 24, 2021) (finding enrollment in GED and other courses were not extraordinary and compelling basis for relief); *United States v. Reyes*, 2020 WL 5518483, at *3 (S.D.N.Y. Sept. 14, 2020) (finding completion of "dozens" of BOP programs and GED, without more, did not "support the extraordinary and compelling relief of compassionate release"). Of course, rehabilitation alone cannot constitute an extraordinary and compelling reason for release, *United States v. Sanchez*, 2020 WL 2571074, at *2 (S.D.N.Y. May 21, 2020), but even in conjunction with Gunn's medical status discussed below, the circumstances do not qualify for the high bar required for compassionate release.

8

### C. COVID-19 & Gunn's Medical Conditions

Serious as the COVID-19 pandemic is, Gunn's situation does not constitute an extraordinary and compelling circumstance. Specifically, Gunn claims he suffers from multiple medical conditions—including hypertension and glaucoma—that justify his release. Although the Government does not downplay the severity of the pandemic, it points out that Gunn has already contracted COVID-19 and received a vaccination. Additionally, the Government represents that USP Atwater has taken significant steps to control COVID-19. Op. Br. at 19.

I agree with other courts in this circuit that have found "the risk of COVID-19 for a vaccinated individual"—even one with Gunn's medical history—"is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons after he has been vaccinated." *United States v. Jones*, 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021); *see also United States v. Fernandez*, 2021 WL 5304320, at *3 (Nov. 15, 2021) (finding vaccination sufficient to guard against risk of COVID, even in light of the Delta variant); *United States v. Santana*, 2021 WL 1819683, at *2 (S.D.N.Y. May 6, 2021) (no extraordinary circumstances due to COVID because of the efficacy of vaccines). Notably, only one of the medical conditions Gunn identifies—high blood pressure—is included in the CDC's list of conditions that may lead to a severe COVID case. *See* People at Increased Risk, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited May 31, 2022).

I consider that Gunn had been diagnosed with a number of serious medical conditions, including hypertension and Glaucoma. Given that Gunn has already contracted COVID and received a vaccine, the risk to his health is sufficiently limited. While "[t]he current COVID-19 pandemic is an unprecedented worldwide catastrophe . . . it does not warrant the

9

early release of sentenced inmates in federal prisons convicted of serious, dangerous offenses, like [Gunn], whose medical conditions and risk of contracting the virus cannot be deemed 'extraordinary and compelling.'" *United States v. Mood*, 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) (denying release to 53-year-old with diabetes, hypertension, and obesity where "[t]here is no question that [the defendant] has health issues, but his condition is stable and has been effectively managed by routine monitoring and medication"). In any case, the Government represents that the Atwater facility has made significant progress in its response to the virus,[2] which cuts against any potential finding that Gunn's medial conditions in the context of the pandemic constitute an extraordinary and compelling reason for release.

### D. Consideration of the Section 3553(a) Factors

Even assuming Gunn had demonstrated extraordinary and compelling circumstances, I cannot conclude that release is proper. *See United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021) (weighing of Section 3553(a) factors can constitute independent reason for denying motion pursuant to 18 U.S.C. § 3582(c)(1)(A)). Weighing the Section 3553(a) factors, I find that reducing Gunn's sentence would fail to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment," or "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).

Strongly weighing against release is the fact that the crimes here—a series of robberies, directly aiding in the murder of Gary Grey, and trafficking in controlled substances— were most serious. In particular, Gunn helped plan and carry out an attempted robbery knowing that co-defendant Davis intended to commit murder. That is exactly what transpired, and Gunn

---

[2] The Government represents that conditions at USP Atwater have improved. At the time of the Government's submission, there were only two active COVID cases at USP Atwater. *See* Opp. Br. at 19. As of this writing, USP Atwater does not appear to have any active cases. *See* COVID-19, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited June 8, 2022).

continued to work with Davis to carry out the robbery when Davis shot the victim at point-blank range. At sentencing, Judge Pauley described the circumstances of the murder and noted that Gunn had exhibited "lack of respect for the value of human life." Sentencing Tr. at 39–40. Moreover, Gunn's robberies and related crimes spanned multiple years, and he was instrumental in facilitating many of those crimes.

Additionally, even if I ignored that life sentence imposed on Gunn, the fact that he has served less than half his total sentence for Counts One, Three, and Eight further persuades me that release at this time would be unfaithful to Section 3553(a). *See, e.g., United States v. Seshan*, 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020) (denying motion for compassionate release where defendant had served a relatively small portion of the overall sentence). For the same reasons that necessitated Gunn's lengthy sentence, which Judge Pauley articulated and I incorporate by reference herein, I find that modifying his term of incarceration would disserve the above important sentencing factors.

## CONCLUSION

In sum, Gunn's motion to reduce his sentence is denied. Additionally, Petitioner's motion for a certificate of appealability (ECF No. 289) is marked as pending. However, ECF No. 280 already denied such a request. The specific request made in ECF No. 289 was also denied in 14-cv-3228, ECF No. 32. Accordingly, the Clerk shall terminate ECF Nos. 289, 330, and 339 in 06 Cr. 911 and mail a copy of this order to Defendant.

SO ORDERED.

Dated: June 9, 2022
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge